United States Courts
Southern District of Texas
FILED
NOV 0 8 2004
Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Crim. No. H-04-25 (Lake, J.) |
| RICHARD A. CAUSEY, JEFFREY K. SKILLING, and KENNETH LAY, | ) ) ) ) | |
| Defendants. | ) ) | |

# DEFENDANT RICHARD A. CAUSEY'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF JOINT MOTION TO TRANSFER VENUE

I. **INTRODUCTION**

Houston is Richard Causey's home. He was born here; he went to high school here; he has attended church here; he has participated in charitable activities here; he has coached youth sports here; and he has raised his family here. He has spent 36 of his 44 years in the community. However, in facing the most difficult and trying event of his life, we have reluctantly concluded that the toxic atmosphere regarding the collapse of Enron, incredible media attention surrounding the resulting criminal investigation, and the predisposition of the jury pool to find Mr. Causey and his co-defendants guilty, will obviate any chance he has of receiving a fair trial before an unbiased jury in Houston. A venue change is, therefore, necessary and appropriate in this case.

Our conclusion that a transfer of venue is Constitutionally required to protect Mr. Causey's right to a fair trial is based both on scientific and unscientific observations. As to the scientific, because of financial constraints we rely on the exhaustive polling and research conducted by Mr. Skilling. We find both the data gathered by his experts and the conclusions that follow therefrom compelling and, quite frankly, scary in their implications for Mr. Causey's ability to receive a fair trial. These conclusions bear out our own experientially-based assessment derived from a review of press coverage and the opinions and attitudes reflected therein, that to receive a fair trial, Mr. Causey must reluctantly leave his home and seek trial elsewhere. Mr. Causey thus respectfully requests that the Court transfer trial of this case to another major city of comparable demographics, such as Phoenix,[1] Denver, Atlanta or New

---

[1] Phoenix would be a particularly appropriate venue, when considering Mr. Causey's limited financial resources. Although it is not a specifically identified factor in the venue determination, we note that this law firm, Steptoe & Johnson LLP, has an office in Phoenix, which would, in turn, help Mr. Causey conserve scarce resources in defending this matter.

1

Orleans,[2] where public attention has been less focused on Enron and the impact of the Enron bankruptcy has not been felt in the local economy.

In an effort to conserve judicial and personal resources, Mr. Causey adopts and agrees with the legal, factual, and scientific analysis set forth in Mr. Skilling's submission, and does not repeat those contentions herein. However, Mr. Causey respectfully submits this short supplement to Mr. Skilling's submission in order to highlight for the Court certain *Houston Chronicle* articles specifically addressing Mr. Causey and impacting on his ability to receive a fair trial. These articles support the conclusion that, absent a change of venue, Mr. Causey and his co-defendants will be unable to receive a fair trial.

## II.     DISCUSSION

The Sixth Amendment and Due Process Clause of the United States Constitution, Federal Rule of Criminal Procedure 21(a) and the Court's inherent supervisory powers all provide this Court with the authority to transfer venue in this case. In fact, as set forth in detail in Mr. Skilling's memorandum, the Constitution and Rule 21 *mandate* a venue change where outside influences, such as publicity, economic impact, or deeply held public perceptions, will prejudice a defendant and prevent him from obtaining a fair trial. See Skilling Mem. at 7, n. 16 (citing Fed. R. Crim. P. 21(a) ("Upon defendant's motion the court *must* transfer the proceeding against defendant to another district if the court is satisfied that so great a prejudice against defendant exists in the transferring district that the defendant *cannot obtain a fair and impartial trial there*.") (emphasis added); Sheppard v. Maxwell, 384 U.S. 333, 363 (1966) (holding that right to due process violated where there was a "reasonable likelihood" that publicity and other outside

---

[2] While Mr. Skilling's expert did not conduct jury polling in New Orleans, Mr. Causey submits that New Orleans may be another appropriate alternative venue.

influences prevented a fair trial in the venue in which a crime occurred)). Based on the argument set forth in Mr. Skilling's memorandum, this is a textbook case requiring a transfer of venue.

\*   \*   \*

There have been countless articles and reports in the local news media discussing generally the collapse of Enron and this case in particular. Mr. Skilling has quantified and cataloged these reports in precise detail in his memorandum and supporting materials. While Mr. Causey has not been subjected to the same barrage of scorn and animosity as his more well-known co-defendants, he has nonetheless been singled out by the news media on a number of occasions. Specifically, Mr. Causey has been mentioned by name in no fewer than 105 articles in the *Houston Chronicle* since problems arose at Enron in late-2001.[3] To illustrate this, Mr. Causey identifies for the Court three of the most prejudicial articles from the *Chronicle* reflecting the type of publicity Mr. Causey has received -- publicity that will make it impossible to impanel a fair and impartial jury.

**Exhibit A:**   **"Friends: Causey nice, but pliable; 'Boy Scout' type willing to please" --** ***Houston Chronicle*, January 25, 2004**

This *Chronicle* article paints a misleading and prejudicial portrait of Mr. Causey as a "pliable" chief accountant at Enron, whose "very desire to please others, particularly bosses, [] led Causey to sign off on dubious accounting practices that caused the company's downfall." [Exhibit A] The article presents a detailed account of Mr. Causey's background and personality that falsely and prejudicially characterizes him as someone capable of engaging in the criminal conduct alleged in the indictment. Id. While the article does provide some faint praise of Mr.

---

[3] By contrast, a Lexis/Nexis search reveals that the primary newspapers in the alternative venues proposed in this motion included only sporadic, if any mention of Mr. Causey: Denver -- 1 article (*Rocky Mountain News* and *The Denver Post*); Atlanta -- 4 articles (*Atlanta Journal and Constitution*); Phoenix -- 0 articles (*Arizona Republic*); New Orleans -- 0 articles (*New Orleans Times-Picayune*) [Search results attached at Exhibit D].

3

Causey, describing him as a "patient and gentle" individual, it nonetheless characterizes him as a "Pillsbury Doughboy" who could be manipulated by higher-ups, and "would probably go along" with the deals outlined in the Indictment. Id.

**Exhibit B:** **"Enron memo could be big problem for Causey; Handwritten note sets out secret deals he and Fastow made" -- *Houston Chronicle*, July 24, 2004**

In addition to attacking Mr. Causey's character, the *Chronicle* has also repeatedly focused on evidence which may well be inadmissible and inaccurate. See Skilling Mem. at 52-58. These reports have created distorted or even false impressions of the evidence that may be presented at trial. When news media presents pretrial coverage of potentially inadmissible, prejudicial, or otherwise objectionable evidence, a change of venue is appropriate. See, e.g., Nevers v. Killinger, 990 F. Supp. 844, 863 (E.D. Mich. 1997) (finding trial court's refusal to change venue was "manifest error" due to countless detailed news reports about the case and because "many of the widely publicized facts were not admissible at petitioner's trial"); United States v. Handy, 489 F. Supp. 48, 51 (E.D. Mo. 1980) (holding that "the right to a fair trial may be substantially endangered by reporting prior to trial" particularly when the media engages in "speculation as to testimony or other matters to be introduced at the trial").

One of the best examples of media coverage of prejudicial and potentially inadmissible evidence in this case is the *Chronicle* first section article headlined above. [Exhibit B] In this piece, the *Chronicle* published a detailed summary of a purported "global galactic" agreement, an unauthenticated document of questionable admissibility that was apparently leaked to the press by some unknown source. The article describes a purported "handwritten memo detailing secret side deals between ex-Enron Chief Accounting Officer Rick Causey and ex-Chief Financial Officer Andrew Fastow." Id. The article describes the document in detail, characterizing it as a "neatly handwritten" document "initialed on all three pages by Causey and

4

Fastow." Id. Without providing any context whatsoever, let alone allowing for alternative interpretations, the article jumped to a conclusion that "the agreement stands out because it blatantly documents promises of profits for the Fastow partnerships [on various deals with Enron]." Id. Most significantly, the article misleadingly speculates that the document places Mr. Causey "under greater pressure to seek a deal with the government." Id. This inaccurate and prejudicial assessment of the viability of Mr. Causey's defense sends an incredibly misleading and dangerous message to potential jurors with respect to Mr. Causey's case. This document will be subject to many objections as to its admissibility, and it is far from certain that it will ever be used at trial.[4] Mr. Causey is entitled to a trial by a jury which has not been polluted with prejudicial characterizations of this or other questionable evidence outside of the courtroom.[5]

**Exhibit C:** **"The Fall of Enron: Club fees are out of bounds" -- *Houston Chronicle*, April 1, 2004**

In a third, highly prejudicial article about Mr. Causey, the reporting reached new lows in discussing Mr. Causey's unopposed order to unfreeze funds for living expenses. On April 1, 2004, the *Chronicle* published an article with the following lead sentence: "So you're an indicted ex-Enron exec asking a judge to unfreeze a couple hundred thousand dollars for your living expenses. Do you ask that your country club membership be covered? It appears ex-Enron Chief Accounting Officer Rick Causey did just that." [Exhibit C] The article, quoting a lawyer with no involvement in the case, suggests that Mr. Causey *asked* to have funds unfrozen for his country club dues and was denied in this request. In fact, Mr. Causey did not request that such

---

[4] The *Chronicle* has subsequently featured this document in six additional articles and the *Chronicle's* Website even maintains a link to a transcript of the three-page, handwritten document for public viewing.

[5] As noted in Mr. Skilling's memorandum, this purported "global galactic" agreement has not even been mentioned in the primary newspapers in the alternative venues. See Skilling Mem. at 53.

5

unfrozen funds be used for that purpose and the *Chronicle* was so advised.[6] Nonetheless, this inaccurate report was never corrected or retracted and wrongfully portrayed Mr. Causey as a greedy, arrogant, and selfish former corporate executive with no scruples.[7] As reflected in Mr. Skilling's memorandum and expert reports, this perception of Mr. Causey and a similar perception of his co-defendants has indelibly impressed itself upon the Houston community, rendering a fair and impartial trial in this District impossible.

## III. CONCLUSION

For the reasons set forth above, as well as those in Mr. Skilling's Memorandum of Law in Support of Joint Motion for Transfer of Venue and supporting materials, Mr. Causey respectfully requests that the Court order a transfer of venue in this case.

Respectfully submitted,

Reid H. Weingarten
Mark J. Hulkower
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. NW
Washington, DC 20036

Dated: November 8, 2004

*Counsel for Defendant Richard A. Causey*

---

[6] The language in the Order was requested by the government only because Mr. Causey's budget for the previous year identified such expenses. He did not request that such fees be covered.

[7] In fact, a reference to Mr. Causey's "request" for country club dues is still included in the "Enron Quiz" on the *Chronicle* website [attached at Exhibit E].

## CERTIFICATE OF SERVICE

I hereby affirm that true and correct copies of Defendant Richard A. Causey's Supplemental Memorandum in Support of Joint Motion to Transfer Venue has been served by electronic copy on this 8th day of November, 2004 on counsel listed below:

**Counsel for United States of America:**

Sean Berkowitz
Linda Lacewell
John Hueston
Kathy Ruemmler
Special Attorneys
Enron Task Force
United States Department of Justice
1400 New York Avenue, NW, 10th Floor
Washington, DC 20530
(202) 305-2634
(202) 353-3165 (fax)
Sean.Berkowitz2@usdoj.gov

**Counsel for Defendant Jeffrey K. Skilling:**

| | |
|---|---|
| Mark C. Holscher | Matthew W. Holder |
| O'Melveny & Myers LLP | O'Melveny & Myers LLP |
| 400 S. Hope Street | 1999 Avenue of the Stars |
| Los Angeles, CA 90071-2899 | 7th Floor |
| Office: 213-430-6000 | Los Angeles, CA 90067 |
| Facsimile: 213-430-6407 | Office: (310) 246-6840 |
| mholscher@omm.com | mholder@omm.com |

**Counsel for Defendant Kenneth L. Lay:**

Michael Ramsey
2120 Welch
Houston, TX 77019
mramsey@mramsey-lawyer.com

/s/ Matthew L. Stennes
Matthew L. Stennes
*Counsel for Defendant Richard A. Causey*