United States Courts
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEB 1 0 2005

Michael N. Milby, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>RICHARD A. CAUSEY, JEFFREY K. SKILLING, and KENNETH L. LAY,<br><br>        Defendants. | Crim. No. H-04-25 (Lake, J.) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT JEFFREY SKILLING'S SUPPLEMENTAL BILL OF PARTICULARS MEMORANDUM

The Court's February 2 ruling on defendants' *Brady* motions underscores the need to clarify numerous ambiguities remaining in the Indictment. In rejecting defendants' request that the Task Force specifically disclose all *Brady* material to which it has access, the ruling places the burden on defendants to find the exculpatory material among the Task Force's "hot documents" and the tens of millions of pages of documents contained in the "open files" of both the Task Force and SEC. To meaningfully review this vast amount of material, consistent with preparing for a trial this year, we need to know with *certainty, now*, which conduct is at issue in this case, and which is not.

Despite our most recent requests for clarification, the Task Force still has not given us a final and definitive list identifying precisely:

- which "business ventures" Skilling allegedly kept afloat by "masking" their failures;
- which "losses," "write downs," and "other negative information" Skilling concealed;
- which "reserve accounts" Skilling used fraudulently;
- which "omissions of material fact" Skilling made in speaking to the public;
- which material, non-public information Skilling relied upon when trading Enron stock;
- and which of the three defendants and 114 co-conspirators were party to the numerous "side-deals" that, according to the Task Force, invalidated the accounting for more than 30 multi-million dollar deals.

Instead, the Task Force asserts that its "hot document" production is a fair substitute for clear particulars; the requests are evidentiary in nature; and Skilling is guilty and thus fully aware of the facts underlying the charges against him.

I.   **SKILLING IS ENTITLED TO FURTHER PARTICULARS.**

Skilling's motion identified 15 areas where we need further particulars, in addition to those provided by the Task Force in its November 2004 Statement in Compliance. Although each of these areas embraces critical issues in the case, the Task Force refused to address several

1

of them. For example, the Task Force's Statement in Compliance finally—after some 10 months—identified the many side-deals the Task Force intends to target. *See* Statement at 36. The Task Force relies on these alleged side-deals more than any other allegation to prove criminal wrongdoing.[1] Yet, the Task Force will not disclose who among the three defendants or their alleged 114 co-conspirators was a party to *each* alleged deal. *See* Supp. Mem. at 4-5.

This information is essential to preparing our defense. Skilling is entitled to know exactly what he is accused of doing or knowing that was fraudulent.[2] Moreover, unless we are told who allegedly participated in these deals, we cannot gather the evidence to show they did not exist, were legitimate, or were hidden from Skilling. By withholding this essential information, the Task Force has frustrated our ability to run meaningful document searches, identify and interview key witnesses, and otherwise collect evidence to refute these allegations.

## II. THE TASK FORCE'S HOT DOCUMENTS ARE NOT A FAIR SUBSTITUTE FOR THE REQUESTED PARTICULARS.

Voluntary discovery does not replace a bill of particulars if the discovery fails to provide the requested information in a "satisfactory form." *United States v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989). The Task Force's 300,000-page hot document production and massively larger FBI and SEC open files fail to meet this test. Indeed, they serve precisely the opposite function of a bill of particulars: they do not narrow the focus of the case, but indiscriminately broaden it.

For example, Skilling seeks particulars regarding the "steps" allegedly taken to conceal EBS's business failures, the "costs" shifted off EBS's books, and the EBS "assets" for which depreciation schedules were altered. Supp. Mem. at 5. Similarly, Skilling seeks specificity as to which EES "contracts" were "overvalued" and which "reserve accounts" were fraudulently

---

[1] *See, e.g.*, Opp. at 10-11 (discussing FAS 125/140 transactions); Govt. Mem. in Response to Skilling's Mot. for a Case Management Order at 7 (discussing Raptor transactions).
[2] *See United States v. Smith*, 523 F.2d 771, 779 (5th Cir. 1975).

manipulated. *Id.* at 3, 7-8. Although the Task Force has provided over 30 boxes of hot documents related to EBS and EES (and even greater numbers of documents are available in the open files), these hot documents include reams of general business records and financial data spanning some three years. Virtually every "cost" or "asset" ever held by EBS, every "contract" into which EES entered, and every "reserve account" used by Enron is reflected in these hot documents. Likewise, the hot documents reflect innumerable "steps" taken by EBS in executing its business plans. Skilling "should not be left to [his] own devices and a sifting of [these] voluminous materials . . . in order to divine" the specific steps, costs, assets, contracts, and reserve accounts the Task Force will allege at trial were fraudulently manipulated.[3]

There are many other ways the hot documents raise more questions than they answer. In June 2004, for example, the Task Force provided defendants with hot documents regarding the alleged overvaluation of Enron's Mariner Energy investment. Included was a draft "Report on Certain Accounting Issues," which—in addition to analyzing Enron's valuation of Mariner—discussed (and raised questions regarding) Enron's valuation of "Sithe" and "Houston Pipeline." Neither Sithe nor Houston Pipeline was identified as an overvalued asset in the Indictment. However, accepting the Task Force's logic that the hot documents fill in the gaps in the Indictment and provide the particulars we need, one could only conclude the valuations of Sithe and Houston Pipeline would be challenged at trial. Yet, when finally compelled to further particularize its Indictment in November 2004, the Task Force indicated that Sithe and Houston Pipeline were *not* at issue. *See* Statement at 35. There are countless other examples of this problem presented just by the hot documents. Absent further particulars, Skilling will be forced

---

[3] *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (ordering bill of particulars in medical fraud case where indictment identified "a wide variety of types of allegedly unnecessary tests that defendant ordered" but described them "only in generic terms" and did not specify "the particular tests claimed to be unnecessary"); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y 2000) ("sometimes the large volume of material disclosed is precisely what necessitates a bill of particulars").

3

to wait until opening statements to know which contracts, transactions, and steps he will have to defend. By then, it will be too late to adequately prepare.[4]

### III. DEFENDANTS DO NOT SEEK EVIDENTIARY DETAIL, BUT ESSENTIAL PARTICULARS REGARDING THE TASK FORCE'S ALLEGATIONS.

The Task Force contends our particulars seek to expose their trial strategies and discrete pieces of evidence on which they will rely at trial. Not so. The law is clear that it is *not* "a legitimate objection to a motion for Bill of Particulars that it calls for an evidentiary response or a legal theory of the government, when the furnishing of this information *is necessary to prepare a defense* and to *avoid prejudicial surprise* at trial."[5] As we have shown, Skilling needs further particulars simply to understand the basic elemental facts of the crimes alleged.

To take one stark example, the Task Force asserts Skilling made 41 insider trades between April 2000 and September 2001. Save for repeating the language of the insider trading statute—that Skilling possessed "material, non-public information" when making these trades—the Task Force has not alleged what the information was, how it was non-public, or why it was material. In seeking further particulars, we do not ask the Task Force to tell us precisely what evidence it will rely upon to support its assertions or how the presentation of this part of its case fits into its broader trial strategy. We simply need to know what information Skilling is accused of "knowing" that was "material" and "non-public" when he made *each* trade, so that we can show he was unaware of such information, it was immaterial, or it was publicly disclosed. This information is the bare minimum required.[6] The Task Force's blanket assertions that Skilling

---

[4] *See, e.g., United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2nd Cir. 1987) (bill of particulars improperly denied where government refused to particularize indictment and instead provided defendants with 4,000 documents that implicated numerous insurance claims, any one of which the government might argue was fraudulent).

[5] *United States v. Thevis*, 474 F. Supp. 117, 123 (N.D. Ga. 1979) (emphasis added).

[6] *See United States v. Santoro*, 647 F. Supp. 153, 188 (E.D.N.Y. 1986) ("[A] defendant cannot be

knew Enron's stock was overvalued does not qualify, and would put the entire company on trial.[7]

## IV. BECAUSE HE IS INNOCENT, SKILLING IS NOT AWARE OF THE FACTS UNDERLYING THE ALLEGED CRIMES.

Many of the Task Force's arguments proceed from the untenable premise that Skilling is guilty and thus already aware of the facts supporting the prosecution's case. In response to Skilling's request for a final identification of all alleged co-conspirators, as well as a brief description of the role allegedly played by each, the Task Force argues defendants "were involved in the business transactions and therefore are familiar with most if not all of the conspirators," and thus "can readily ascertain [their] roles." Opp. at 9. Skilling vigorously maintains his innocence, and he may not be denied the particulars necessary to mount a defense simply because the Task Force says he is guilty.[8] Skilling cannot fairly defend against the sprawling conspiracy allegations at the center of the Task Force's case unless the Task Force specifies what the fraudulent acts were, who committed them, who conspired with Skilling, and how. These details are not merely "helpful," as the Task Force asserts. Opp. at 9 n.5. They are absolutely necessary to mounting a defense and avoiding surprise after surprise at trial.[9]

---

expected to defend against a charge of insider trading without knowing what the inside information is.").

[7] Causey's request that the Task Force identify all transactions through which defendants allegedly "disguised debt" similarly does not seek "evidentiary detail"; nor is it "sufficient that the government has informed defendants that . . . disguised debt [was a] method employed in furtherance of the conspiracy." Opp. at 7. Enron was the seventh largest company in the United States, and had billions of dollars of assets and liabilities. The Task Force must specify which debt was disguised and how; otherwise defendants cannot defend against this indecipherable charge.

[8] *See* CHARLES A. WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 129, at 657 (3d ed. 1999) ("Since the defendant is presumed to be innocent he must be presumed to be ignorant of the facts on which the charges are based").

[9] *See United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) ("Given the large number of acts attributed to co-conspirators in the indictment[] Ms. Hsia's preparation for trial will be unnecessarily complicated without knowing which acts were performed by which co-conspirators . . . . Ms. Hsia is entitled to a bill of particulars identifying, for each relevant paragraph of the indictment, which co-conspirator performed the specified acts."); WRIGHT & MILLER, *supra*, § 129, at 662-64 ("[F]or the defendant to know against what he must defend it will frequently be necessary to require the government to disclose the time and place of the alleged offense, and the names of the person present when the event took place."); *accord United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000).

5

Dated: February 10, 2005

Respectfully submitted,

By: /s/ Daniel M. Petrocelli by permission
Revised to W...

Daniel M. Petrocelli
M. Randall Oppenheimer
Mark Holscher
Carla J. Christofferson
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Office: (310) 553-6700
Facsimile: (310) 246-6779

Of Counsel:

Ronald G. Woods
Texas State Bar No. 21964000
Federal Bar No. 657
5300 Memorial, Suite 1000
Houston, TX 77007
Office: 713-862-9600
Facsimile: 713-864-8738

*Attorneys in Charge for Jeffrey K. Skilling*

## CERTIFICATE OF SERVICE

This is to verify that true and correct copies of the following documents (Reply Brief in Support of Defendant Jeffrey Skilling's Supplemental Bill of Particulars Memorandum) have been served on this 10th day of February, 2005, on counsel listed below.

*Ronald G. Woods*

Sean Berkowitz
Linda Lacewell
Kathy Ruemmler
Enron Task Force
DOJ Criminal Division
1400 New York Avenue, NW
10th Floor
Washington, D.C. 20530
Facsimile: (202) 353-3165
*Enron Task Force*

Reid Weingarten
Mark Hulkower
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington D.C. 20036
Facsimile: (202) 429-3902
*Counsel for Richard Causey*

Michael Ramsey
Chip Lewis
River Oaks/Welch Building
2120 Welch
Houston, Texas 77019
Facsimile: (713) 523-7887
*Counsel for Kenneth L. Lay*

CC1:692763.4