UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

JUL 0 1 2005

Michael N. Milby, Clerk

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| RICHARD A. CAUSEY, JEFFREY K. SKILLING, and KENNETH L. LAY, | ) |
| Defendants. | ) |

Crim. No. H-04-25 (Lake, J.)

### JEFFREY SKILLING'S MOTION TO DISMISS COUNTS 42 THROUGH 51 (INSIDER TRADING COUNTS); MEMORANDUM IN SUPPORT OF MOTION; PROPOSED ORDER

#### DEFENSE MOTION NO. 5

Defendant Jeffrey Skilling, through undersigned counsel, moves pursuant to the Fifth and

Sixth Amendments to the United States Constitution, Rules 7 and 12 of the Federal Rules of

Criminal Procedure, and *Hamling v. United States*, 418 U.S. 87, 117 (1974), to dismiss all the

insider trading charges alleged against him in Counts of 42 through 51 of the July 7, 2004

Superseding Indictment ("Indictment"). The insider trading counts alleged in the Indictment fail

to allege essential elements of the offenses charged and fail to give sufficient notice of the

charges Skilling faces. For these reasons, these 10 charges are fundamentally defective and must

be dismissed.

The grounds for this motion are set forth more fully in the accompanying memorandum; a proposed order is also submitted herewith. Pursuant to Local Rule 12.2, counsel for Skilling have met and conferred with the Enron Task Force, and it opposes the relief we seek.

Dated:  July 1, 2005

Respectfully submitted,

By: _David M. Petrocelli_
(by permission MB)

Of Counsel:

Ronald G. Woods
Texas State Bar No. 21964000
Federal Bar No. 657
5300 Memorial, Suite 1000
Houston, TX 77007
Office: 713-862-9600
Facsimile: 713-864-8738

Daniel M. Petrocelli
M. Randall Oppenheimer
Mark Holscher
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Office:  (310) 553-6700
Facsimile:  (310) 246-6779

*Attorneys in Charge for Jeffrey K. Skilling*

2

# TABLE OF CONTENTS

.

**Page**

I.      Summary Of Argument..................................................................................... 1

II.     Summary Of Indictment .................................................................................. 3

III.    Counts 42-51 Must Be Dismissed .................................................................. 4

    A.      Counts 42-51 Allege the Wrong *Mens Rea* Standard ........................... 5

        1.      Pre-October 23, 2000 Trades (Counts 42-46)............................ 5

        2.      Post-October 23, 2000 Trades (Counts 47-51) ......................... 9

    B.      The Indictment Provides Insufficient Notice of the Insider Trading
        Charges ................................................................................................ 12

    C.      Count 51 Fails to Allege the Duty Element ........................................ 14

IV.     Conclusion .................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aaron v. SEC,*
  446 U.S. 680 (1980)..................................................................................... 11

*Affiliated Ute Citizens v. United States,*
  406 U.S. 128 (1972)..................................................................................... 14

*Arthur Andersen LLP v. United States,*
  125 S. Ct. 2129 (2005).......................................................................... 7, 8, 11

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988)....................................................................................... 9

*Chiarella v. United States,*
  445 U.S. 222 (1980)....................................................................................... 6

*Clinton v. City of New York,*
  524 U.S. 417 (1998)..................................................................................... 10

*Colby v. Hologic, Inc.,*
  817 F. Supp. 204 (D. Mass. 1993) ............................................................... 14

*Crandon v. United States,*
  494 U.S. 152 (1990)....................................................................................... 8

*Dirks v. SEC,*
  463 U.S. 646 (1983)............................................................................... *passim*

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976)....................................................................... 5, 7, 10, 11

*Hamling v. United States,*
  418 U.S. 87 (1974)......................................................................................... 4

*Herman & MacLean v. Huddleston,*
  459 U.S. 375 (1983)..................................................................................... 10

*In re Enron Corp. Sec., Derivative, & Erisa Litig.,*
  258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................... 10, 12

*In re Investors Mgmt. Co.,*
  Fed. Sec. L. Rep. (CCH) ¶ 78,163, at 80,514 (July 29, 1971) .................... 6

*INS v. Chadha,*
  462 U.S. 919 (1983)..................................................................................... 10

*Morissette v. United States,*
  342 U.S. 246 (1952)....................................................................................... 7

*Ragsdale v. Wolverine World Wide, Inc.,*
  535 U.S. 81 (2002)....................................................................................... 10

*Russell v. United States,*
  369 U.S. 749 (1962)..................................................................................... 14

*Sandstrom v. Montana,*
  442 U.S. 510 (1979)................................................................................. 7, 12

# TABLE OF AUTHORITIES
(continued)

**Page**

*SEC v. Adler*,
137 F.3d 1325 (11th Cir. 1998) ............................................................. *passim*

*SEC v. Lipson*,
278 F.3d 656 (7th Cir. 2002) ..................................................................... 10, 12

*United States v. Davidoff*,
845 F.2d 1151 (2nd Cir. 1988)........................................................................ 13

*United States v. Falbo*,
No. 92-CR-0763, 1993 WL 147441 (S.D.N.Y. Apr. 6, 1993)............................ 13

*United States v. Gordon*,
780 F.2d 1165 (5th Cir. 1986) ............................................................. *passim*

*United States v. Kay*,
359 F.3d 738 (5th Cir. 2004) ...................................................................... 4, 8

*United States v. Kim*,
184 F. Supp. 2d 1006 (N.D. Cal. 2002) ...................................................... 4, 8, 12

*United States v. O'Hagan*,
521 U.S. 642 (1997)............................................................................ 6, 10, 15

*United States v. Salisbury*,
983 F.2d 1369 (6th Cir. 1993) ................................................................ 4, 13, 14

*United States v. Santoro*,
647 F. Supp. 153 (E.D.N.Y. 1986) ................................................................ 13

*United States v. Santos-Rivera*,
183 F.3d 367 (5th Cir. 1999) ........................................................................ 4

*United States v. Smith*,
155 F.3d 1051 (9th Cir. 1998) ............................................................. *passim*

*United States v. Teicher*,
987 F.2d 112 (2d Cir. 1993)....................................................................... 6, 12

*United States v. Trevino*,
491 F.2d 74 (5th Cir. 1974) .................................................................... 4, 8, 12

*United States v. United States Gypsum Co.*,
438 U.S. 422 (1978).................................................................................... 7

*United States v. Wilson*,
184 F.2d 74, 179 (5th Cir. 1989) .................................................................... 8

## OTHER AUTHORITIES

Barbara Bader Aldave, *Misappropriation: A General Theory of Liability for
Trading on Nonpublic Information*, 13 HOFSTRA L. REV. 101 (1984) ...................... 6

DONALD LANGEVOORT, INSIDER TRADING: REGULATION, ENFORCEMENT &
PREVENTION § 3:8, at 3-10 to 3-11 (2004)............................................................ 15

## TABLE OF AUTHORITIES
(continued)

                                                                                              **Page**

Harold S. Bloomenthal & Samuel Wolff, 3C SECURITIES & FEDERAL
    CORPORATE LAW § 19:25 (2d ed. 2005) ............................................................... 12

Selective Disclosures and Insider Trading, Securities Act, Release Nos. 7881,
    43154, 33-7881, 34-43154 & IC-24599 (Aug. 15, 2000), *available at* 2000
    WL 1201556 ......................................................................................................... 9, 10

Stuart Sinai, *A Challenge to the Validity of Rule 10b5-1,*
    30 SEC. REG. L.J. 261 (2002) ..................................................................... 7, 11, 12

### RULES

15 U.S.C. § 78 ................................................................................................................. 3, 7

17 C.F.R. § 240.10b5 ................................................................................................ *passim*

FED. R. CRIM. P. 7(c)(1), ............................................................................................... 12

CCl:710006.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Crim. No. H-04-25 (Lake, J.) |
| v. | ) ) | |
| RICHARD A. CAUSEY, JEFFREY K. SKILLING, and KENNETH L. LAY, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF JEFFREY SKILLING'S MOTION TO DISMISS COUNTS 42 THROUGH 51 (INSIDER TRADING COUNTS)**

**DEFENSE MOTION NO. 5**

**I.     Summary Of Argument**

The Task Force's insider trading counts suffer from two systemic defects and one defect specific to Count 51. All 10 counts, which target some 40 trades over a 18-month period, should be dismissed.

First, all 10 counts, but especially the first five—which target trades predating the October 23, 2000 effective date of SEC Rule 10b5-1—allege an erroneous *mens rea* standard. Like the *Arthur Andersen* case (in which the Supreme Court unanimously reversed the conviction), the Task Force posits a *mens rea* standard here (merely "possessing" material, non-public information, Indictment ¶ 120, rather than intentionally "using" such information to defraud) that is contrary to the intent of Congress and effectively eliminates the scienter element of the charged offense. Better reasoned appellate authorities, including the only case to address the "use" *versus* "possession" question in the criminal context, hold that "*use*" must be proven. The "possession" standard alleged in its Indictment is improper in that it "go[es] a long way toward making insider trading a strict liability crime." *United States v. Smith*, 155 F.3d 1051,

1068 n.25 (9th Cir. 1998) (O'Scannlain, J.).

As for Skilling's trades post-dating the October 23, 2000 effective date of SEC Rule 10b5-1, which was promulgated in response to cases like *Smith*, the Indictment's "possession" language still does not track the more demanding "awareness" standard set forth in the new rule. Any contention by the Task Force that "awareness" under the new rule is synonymous with "possession" would only serve to render Rule 10b5-1 defective. Like the improper jury instruction in *Arthur Andersen* and the "possession" standard rejected in *Smith*, such an "awareness" standard would drag innocent behavior into its net. A federal agency may not rewrite the securities statutes to contravene Congress' intent consistent with the separation of powers or, as *Smith* recognizes in criminal cases like this one, Skilling's due process rights.

Second, each of the 10 insider trading charges is hopelessly vague, does not identify the "material, non-public information" underlying each alleged insider trade, and fails to provide Skilling fair notice of the charges he must defend. Simply saying Skilling was "in possession of material non-public information" when he made the 40 trades at issue provides no notice. Indictment ¶ 120. Nor does merely adverting to all the allegations made elsewhere in meandering narrative of the Indictment. *See id.* ¶ 119. The Task Force concedes Skilling was not aware of each alleged criminal act underlying the alleged conspiracy.[1] Without notice of which material, non-public information he is charged with using in the 40 trades, Skilling has no ability to defend these 10 counts.

Last, Count 51 targets a trade Skilling made in September 2001, a month after he resigned from Enron. The Task Force fails to allege facts sufficient to show that Skilling owed the necessary fiduciary duty when making this trade. This mandates dismissal of Count 51.

---

[1] *See, e.g.*, Indictment *passim* (charging only Lay and Causey with knowledge of certain alleged criminal acts); Govt.'s Statement in Compliance with Court's Order Dated Nov. 2, 2004 at 38 n.5 (filed Nov. 18, 2004) (hereinafter "Statement in Compliance").

## II.   Summary Of Indictment

The Task Force's 10 insider trading counts are set forth in paragraphs 119 and 120 of the Indictment.   Paragraph 119 does nothing more than "reallege[]" the "allegations in paragraphs 1 through 85."   Paragraph 120 does three things.   First, it generally alleges the language of the governing statutes and rules:

> On or about the dates set forth below, each such date constituting a separate count of this Indictment, within the Southern District of Texas and elsewhere, defendant JEFFREY K. SKILLING knowingly and willfully used and employed manipulative and deceptive devices and contrivances, by use of means and instrumentalities of interstate commerce, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that he engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public in connection with the purchase or sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

Second, paragraph 120 lists both the dates and amounts of 40 separate trades that the Task Force alleges were unlawful, and asserts 10 counts of insider trading, Counts 42-51.[2]   Five of these 10 counts (Counts 42 through 46) allege trades predating October 23, 2000, when a important new rule, for purposes of this motion, was promulgated by the SEC, Rule 10b5-1.   *See infra* Part II.A.   The remaining five counts (Counts 47 through 51) post-date this new rule.

Third, paragraph 120 purports to state why the 40 trades at issue were unlawful: "Specifically, *while in possession of material non-public information*, SKILLING sold shares of Enron stock and generated total proceeds of $62,626,401.90."   (Emphasis added.)

The Task Force refused our requests and opposed our motion for further particulars

---

[2] Thirty-one of the 40 trades were made according to a pre-determined, written sales plan authorized under SEC Rule 10b5-1.   The plan called for the automatic sale of 10,000 shares per week, every week, of Skilling's Enron stock.   Rule 10b5-1(c) bars prosecution of such predetermined trades unless it is shown that the plan was entered into in bad faith and "as part of a plan or scheme to evade the prohibitions of this section."   17 C.F.R § 240.10b5-1(c)(ii).   The first trade made according to this plan occurred in November 2000, and the plan was terminated in the summer of 2001.   The Task Force treats all trades made pursuant to this weekly sales plan as one count of insider trading—Count 50.

regarding these charges, including what material, non-public information Skilling allegedly

possessed when he made each trade. In its Statement in Compliance, the Task Force provided no

further details. The Task Force also opposed our motion for a supplemental bill of particulars

seeking more specifics regarding these allegations. The Court summarily denied this motion.[3]

### III.    Counts 42-51 Must Be Dismissed.

A criminal indictment must (1) contain the elements of the offenses charged, (2) give

defendant fair notice of the charge he must meet, and (3) bar future prosecutions for the same

offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Gordon*, 780

F.2d 1165, 1169 (5th Cir. 1986). Counts in an indictment that misstate or omit elements of an

offense or fail to provide defendant sufficient notice should be dismissed. *See United States v.*

*Kay*, 359 F.3d 738, 742 (5th Cir. 2004); *United States v. Trevino*, 491 F.2d 74, 76 (5th Cir. 1974)

(dismissing an indictment that improperly charged, as an offense, conduct which was not

covered by the statute); *United States v. Salisbury*, 983 F.2d 1369, 1374-75 (6th Cir. 1993)

(reversing conviction where indictment provided defective notice); *United States v. Kim*, 184 F.

Supp. 2d 1006, 1009, 1015 (N.D. Cal. 2002) (dismissing insider trading count that failed to

allege essential element); *see also United States v. Santos-Rivera*, 183 F.3d 367, 369 (5th Cir.

1999) ("whether an indictment sufficiently alleges the elements of an offense is a question of

law"). Counts 42-51 should be dismissed because they fail to allege essential elements of the

crimes alleged and because they provide Skilling defective notice.

---

[3] *See* Jeffrey Skilling's Mot. for a Bill of Particulars at 1-2, 15-16 and Exs. A-E (filed Sept. 10, 2004); Govt.'s Mem. of Law in Response to All Defs.' Mots. for a Bill of Particulars and Def. Kenneth L. Lay's Mot. to Strike Surplusage (filed Oct. 1, 2004); Statement in Compliance *passim*; Def. Skilling's Supp. Mem. in Support of Mot. for Bill of Particulars at 7 (filed Jan. 7, 2005); Govt.'s Mem. of Law in Response to All Defs.' Supp. Mots. for Bill of Particulars (filed Jan. 28, 2005); Feb. 18, 2005 Order (Docket # 154) (denying supplemental particulars motion).

### A.    Counts 42-51 Allege the Wrong *Mens Rea* Standard.

Skilling is charged with violating SEC Rule 10b-5, a rule promulgated by the SEC to enforce § 10(b) of the Securities Exchange Act of 1934.  *See* Indictment ¶ 120; 17 C.F.R. § 240.10b-5 (1942).  As the Supreme Court held in *Ernst & Ernst v. Hochfelder*, Congress only intended § 10(b) liability to attach where a showing was of "scienter" was made, or it was shown that defendant acted with an "intent to deceive, manipulate, or defraud." 425 U.S. 185, 193, 202 (1976); *see also Dirks v. SEC*, 463 U.S. 646, 664 n.23 (1983) ("It is not enough that an insider's conduct results in harm to investors; rather, a violation [of Rule 10b-5] may be found only where there is 'intentional or willful conduct designed to deceive or defraud investors.'").  A showing of "negligence," or some mental state less than "scienter"—which the SEC in *Ernst & Ernst* argued was enough—is insufficient for liability to attach, and contrary to Congress's intent in enacting § 10(b).  *See Ernst & Ernst*, 425 U.S. at 197-99 & n.18, 214.

### 1.    Pre-October 23, 2000 Trades (Counts 42-46)

The SEC, Department of Justice, and civil plaintiffs have at times argued that the "scienter" element in a 10b-5 insider trading case can be satisfied merely by showing that the defendant "knowingly *possessed* material nonpublic information" when he made the trade in question.  *United States v. Smith*, 155 F.3d 1051, 1066 (9th Cir. 1998).  Proponents of the "knowing possession" standard "insist that there is no 'causation' element to an insider trading prosecution" and that one need not show that defendant "actually *used* the information in deciding to buy or sell." *Id.*  The Indictment employs this "knowing possession" standard.  It says: "Specifically, *while in possession of material non-public information*, SKILLING sold shares of Enron stock . . . ." Indictment ¶ 120 (emphases added).

The Task Force's reliance on the "knowing possession" standard is improper.  Although courts in this circuit have yet to address the question, the best-reasoned authorities addressing the

5

issue endorse the "use or causation" standard of proving scienter. Skilling argues that the "use" standard must apply here, especially for the five counts *pre*-dating the October 2000 issuance of Rule 10b5-1. *See infra* Section II.A.2 (discussing the new rule).

Judge O'Scannlain, writing for the panel in *Smith*, 155 F.3d at 1066, authored the leading and, to our knowledge, *only* criminal case resolving the "use-possession debate." Citing Eleventh Circuit authority in the civil enforcement context, dicta from several Supreme Court cases discussing § 10(b), the language of § 10(b) itself, conflicting SEC opinions, the works of commentators, and dicta in a Second Circuit civil case to the contrary, *Smith*:

> reject[ed] the [SEC and] government's proffered 'knowing possession' standard for insider trading violations as contrary the weight of existing authority. Rather, we hold that Rule 10b-5 requires that the government (or the SEC, as the case may be) demonstrate that the suspected inside trader *actually used material nonpublic information in consummating his transaction*.[4]

The Indictment fails to allege Skilling "actually *used* material nonpublic information in consummating" any one of the 40 trades at issues. It alleges "willfulness" generally, but the allegation explaining why the trades were unlawful employs the rejected "possession" test. *See*

---

[4] *Id.* at 1069 (emphasis added; footnote omitted); *see also id.* at 1066-69 (citing, *inter alia, SEC v. Adler*, 137 F.3d 1325, 1336-39 (11th Cir. 1998) (rejecting "possession" standard in civil enforcement action); *United States v. O'Hagan*, 521 U.S. 642, 656 (1997) ("[T]he fiduciary's fraud is consummated, *not when the fiduciary gains the confidential information*, but when, without disclosure to his principal, he *uses the information* to purchase or sell securities."); *Dirks*, 463 U.S. at 662 (observing that "a purpose of the securities laws was to eliminate '*use* of inside information for personal advantage'"); *Chiarella v. United States*, 445 U.S. 222, 229 (1980) ("federal courts have found violations of § 10(b) where corporate insiders *used* undisclosed information for their own benefit"); Barbara Bader Aldave, *Misappropriation: A General Theory of Liability for Trading on Nonpublic Information*, 13 HOFSTRA L. REV. 101, 101-02 (1984); *In re Investors Mgmt. Co.*, Fed. Sec. L. Rep. (CCH) ¶ 78,163, at 80,514 (July 29, 1971) (SEC concluding that an essential element of an insider trading violation was that the inside information "be a factor in [the insider's] decision to effect the transaction")); *id.* at 1066-67 (describing *United States v. Teicher*, 987 F.2d 112, 119 (2d Cir. 1993), as a civil case inapposite in the criminal context that, in "dictum," wrongly "suggested, without squarely deciding, that proof of 'knowing possession' is sufficient to sustain an insider trading prosecution"); *id.* at 1068 (siding with *Adler*, rejecting *Teicher*, and holding that the "'use' requirement [is] more consistent with the language of § 10(b) and Rule 10b-5, which emphasizes 'manipulat[ion],' 'decept [ion],' and 'fraud'"). (Emphases added.)

Indictment ¶ 120. Omitting this the "use" scienter/causation element from the charge, or at best

obscuring it, greatly prejudices Skilling. As the panel observed in *Smith*:

> Like our colleagues on the Eleventh Circuit, we are concerned that the SEC's
> "knowing possession" standard would not be—indeed, could not be—strictly
> limited to those situations actually involving intentional fraud. For instance, an
> investor who has a preexisting plan to trade, and who carries through with that
> plan after coming into possession of material nonpublic information, does not
> intend to defraud or deceive; he simply intends to implement his pre-possession
> financial strategy. . . .

155 F.3d at 1068 (citing *Adler*, 137 F.3d 1325); *see also* Stuart Sinai, *A Challenge to the Validity*

*of Rule 10b5-1*, 30 SEC. REG. L.J. 261, 282-83, 293, 295-96 (2002) (discussing innocent purposes

for making trades that wrongly are encompassed by the "knowing possession" standard).

One of Skilling's primary defenses to the insider trading charges will be that he made the

trades at issue for innocent reasons. The current Indictment, and the "possession" standard it

invokes, "impose[s] liability for [such] wholly faultless conduct." *Ernst & Ernst*, 425 U.S. at

198. *Smith* discussed the evils of this approach:

> In fact, a knowing-possession standard would, we think, go a long way
> toward making insider trading a strict liability crime. In view of the statutorily
> authorized ten-year prison sentence that may accompany an insider trading
> conviction, *see* 15 U.S.C. § 78ff(a), any construction of Rule 10b-5 that *de facto*
> eliminates the *mens rea* requirement should be disfavored, *see United States v.*
> *United States Gypsum Co.*, 438 U.S. 422, 436-38 (1978); *Morissette v. United*
> *States*, 342 U.S. 246, 250 (1952).

155 F.3d at 1068 n.25; *see also id.* at 1069 (explaining that a rebuttable presumption that one

"used" inside information he "possessed," which the *Adler* court espoused in the *civil* context,

could not be applied in the *criminal* context; citing *Sandstrom v. Montana*, 442 U.S. 510, 524

(1979) ("A presumption which, although not conclusive, had the effect of shifting the burden of

persuasion to the defendant, would have suffered from [constitutional] infirmities.")).

The Ninth Circuit's rejection of the knowing-possession standard in *Smith* is in keeping

with the United States Supreme Court's recent reversal of the obstruction of justice conviction in

the Arthur Andersen case. *See Arthur Andersen LLP v. United States*, 125 S. Ct. 2129 (2005).

In *Andersen*, Judge Harmon, at the Task Force's "insist[ence]," deviated from the Fifth Circuit

Pattern Jury Instructions and issued a jury charge that eliminated the "knowingly" element from

the crime and watered down "subvert or undermine" with the far more innocuous "or impede."

*Id.* at 2136.  The Court rejected this instruction because, like the "possession" standard rejected

by *Smith* and *Adler*, it swept innocent conduct into the net.  *Id.* ("[T]he jury instructions at issue

simply failed to convey the requisite consciousness of wrongdoing" and "diluted the meaning of

'corruptly' so that it covered innocent conduct.") *see id.* at 2134-35 (listing innocent and

legitimate ways one could "impede" an investigation).  Noting "[w]e have traditionally exercised

restraint in assessing the reach of a federal criminal statute," *id.* at 2134, the unanimous Court

criticized the Task Force's efforts to expand Congress's intended reach of the obstruction statute

to a point where it reached conduct that was not "necessarily corrupt," *id.* at 2135.  "Indeed, it is

striking how little culpability the instructions required." *Id.* at 2136.

The Indictment in this case is no less problematic than the jury charge in *Andersen*.  The

specific *mens rea* standard the Indictment invokes implicates innocent conduct, posits a intent

standard that Congress did not intend, and borders on imposing a "strict liability" standard when

the rule of lenity must be applied, not the Task Force's rule of over-reaching.  *Smith*, 155 F.3d at

1068 n.25; *Arthur Andersen*, 125 S. Ct. at 2134; *Crandon v. United States*, 494 U.S. 152, 158

(1990).  All the pre-October 23, 2000 insider-trading counts (Counts 42 through 46) allege this

erroneous standard.  These counts must be dismissed.  *See Kay*, 359 F.3d at 742; *Trevino*, 491

F.2d at 76 (dismissing an indictment that improperly charged, as an offense, conduct which was

not covered by the statute); *Kim*, 184 F. Supp. 2d at 1009, 1015 (dismissing insider trading count

for failure to allege essential element).[5]

---

[5] Although courts on appellate review, after a jury verdict has been returned, may at times
construe pleading defects forgivingly, *cf. United States v. Wilson*, 184 F.2d 74, 79 (5th Cir.
1989), there is no good reason to allow the Task Force to prosecute counts in this case—

2.    Post-October 23, 2000 Trades (Counts 47-51)

The five post-October 2000 counts (Counts 47 through 51) must also be dismissed, but for slightly different reasons.  On August 15, 2000, and in response to cases like *Smith* and *Adler*, which adopted the "use" test for scienter in insider trading cases, the SEC promulgated Rule 10b5-1.  *See* Selective Disclosures and Insider Trading, Securities Act, Release Nos. 7881, 43154, 33-7881, 34-43154 & IC-24599 (Aug. 15, 2000), *available at* 2000 WL 1201556 at *1, 21.  In making this new rule, the SEC purported to resolve the "use/possession" debate by choosing a third standard that "balance[d]" competing arguments advanced by proponents of both tests.  *Id.* at *21.  The SEC announced an "awareness" test that incorporated "several carefully enumerated affirmative defenses."  *Id.*  The SEC argued this new rule better served the "the goals of insider trading prohibitions" than did "the 'use' standard," and was not potentially "overbroad" like the "knowing possession" test.  *Id.*  Rule 10b5-1 took effect October 23, 2000, *id.* at *1, and only applies to the last five insider trading counts in the Indictment (Counts 47 through 51), *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law" and "administrative rules will not be construed to have retroactive effect unless their language requires this result.").

Counts 47 through 51 are deficient on their face.  In alleging them, the Indictment does not allege the "awareness" test espoused in Rule 10b5-1.  *See* 17 C.F.R. § 240.10b5-1.  Instead, it relies on the "possession" test that *Smith* and *Adler* rejected as insufficient to prove scienter. *Compare Smith*, 155 F.3d at 1065-69, *and Adler*, 137 F.3d at 1336-39, *with* Indictment ¶ 120 ("Specifically, *while in possession of material non-public information*, SKILLING sold shares of Enron stock . . . .") (emphasis added).  In enacting Rule 10b5-1, the SEC said it did *not* intend to

especially given the case's historical importance, the complexity and breadth of the Indictment, and the time left for the Task Force to supersede—that affirmatively misstate the critical element of at least 10 charged offenses.

9

alter § 10(b)'s scienter requirement. *See* SEC Release Nos. 7881, 43154, 33-7881, 34-43154, &

IC-24599, *available at* 2000 WL 1201556 at *22. If the SEC is to be taken at its word, the Task

Force cannot credibly argue its mere "possession" allegation meets the new "awareness" test.[6]

Were the Task Force to argue that the SEC intended "possession" to be the equivalent of

"awareness," Counts 47 through 51 still must be dismissed. Congress makes laws; the Executive

Branch merely enforces them. *See INS v. Chadha*, 462 U.S. 919, 945 (1983); *Clinton v. City of

New York*, 524 U.S. 417, 438-40 (1998). The SEC, like any executive agency, may not

promulgate rules that contravene the intent of the statute it purports to enforce. *See Ernst &

Ernst*, 425 U.S. at 213-14 ("The rulemaking power granted to an administrative agency charged

with the administration of a federal statute is not the power to make law. Rather, it is 'the power

to adopt regulations to carry into effect the will of Congress as expressed by statute.'").

For the SEC to equate its "awareness" test to the "possession" standard alleged in the

Indictment would be to exceed its legislative and constitutional mandate. The Supreme Court

has held time and again that Congress' intent in enacting § 10(b) was that "scienter" was a

necessary element. *See Ernst & Ernst*, 425 U.S. at 214; *Herman & MacLean v. Huddleston*, 459

U.S. 375, 382 (1983); *Dirks*, 463 U.S. at 663 n.23; *O'Hagan*, 521 U.S. at 665-66. The SEC may

not make a rule to resurrect a "possession" standard that is contrary to Congress's intent, because

to do so would strip any meaning from § 10(b)'s scienter element. *See Smith*, 155 F.3d at 1065-

69 (rejecting SEC and government arguments that § 10(b) liability may be imposed on a showing

of knowing possession); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 92, 96

(2002) (striking down Department of Labor regulation that "contravene[d] Congress' will" and

"impermissibl[y] alter[ed] the statutory framework").

---

[6] *Cf. In re Enron Corp. Sec., Derivative, & Erisa Litig.*, 258 F. Supp. 2d 576, 590-93 (S.D. Tex. 2003) (Rule 10b5-1 adopted elements of both the "knowing possession" and "use" tests); *SEC v. Lipson*, 278 F.3d 656, 660 (7th Cir. 2002) (same; Rule 10b5-1 "preserved a diminished requirement of causality," or "use").

The Supreme Court rejected a similar attempt by the SEC to water down § 10(b) in *Ernst & Ernst*, 425 U.S. at 212-14. As here, "[t]he logic of the [SEC] effect-oriented approach would impose liability for wholly faultless conduct" and "simply ignores the use of the words 'manipulative,' 'device,' and 'contrivance,' terms that make unmistakable a congressional intent to proscribe a type of conduct quite different from" the lesser *mens rea* standard the SEC was urging. *Id.* at 198-99; *see also Aaron v. SEC*, 446 U.S. 680, 690 (1980).

As commentators have argued, the logic of cases like *Smith*, *Adler*, and *Ernst & Ernst* prevent the SEC from reviving the "knowing-possession" test—whether it is called "possession" or "awareness"—absent Congressional intervention. *See generally* Stuart Sinai, *A Challenge to the Validity of Rule 10b5-1*, 30 SEC. REG. L.J. 261 (2002); *id.* at 264, 277 (citing other critics). Congress has *not* acted to eliminate the scienter element, to endorse the "possession" test, or to disavow cases like *Smith* that say "possession" is not enough. *Cf. Ernst & Ernst*, 425 U.S. at 218 (Blackmun, J. dissenting) ("it rests with Congress to rephrase and re-enact" § 10b for the statute to have the reach espoused by the SEC and rejected by the majority). Neither the Task Force nor the SEC may do what only Congress can do.[7]

At most, in promulgating Rule 10b5-1, the SEC posited an "awareness" test that is more demanding than the "possession" one alleged in the Indictment. At worst, the new rule is invalid and no less an act of improper over-reaching than was the Task Force's "insistence" that Judge Harmon deviate from the form jury instructions in *Andersen*. *Compare Arthur Andersen*, 125 S. Ct. at 2136 (discussed *supra*), *with* Sinai, *supra*, at 269 ("The SEC has confronted the rigors of

---

[7] *See* Sinai, *supra*, at 262 ("The SEC has in Rule 10b5-1 unilaterally changed (eliminated proof of) what a number of courts by holdings, dicta or implication, had included as a traditional element of the 'fraud' known as insider trading, i.e., 'use' of 'inside information' in the purchase or sale of a security. The SEC did not bother to seek prior approval of the Congress, its franchisor, before it made this remarkable change. It is clear the Commission is not satisfied with merely administrating, implementing, interpreting and enforcing, it now also wishes to legislate and has created with this rule a new definition of the crime.").

trial having to account to the trier of fact and has lost several cases, or had its 'mere possession'

standard rejected. No doubt these set-backs motivated the SEC to take its unilateral action.").

Either way, Counts 47 through 51 must be dismissed because they allege an improper and legally

insufficient *mens rea* standard. *See Trevino*, 491 F.2d at 76; *Kim*, 184 F. Supp. 2d at 1015.[8]

### B.     The Indictment Provides Insufficient Notice of the Insider Trading Charges.

The Sixth Amendment and Rule 7 of the Federal Rules of Criminal Procedure require

that an indictment apprise defendant with reasonable certainty of the nature of the accusation

against him, set forth all elements of the offense "fully, directly, and expressly, without any

uncertainty or ambiguity," and contain a statement of the facts constituting that offense. *United*

*States v. Gordon*, 780 F.2d 1165, 1169, 1171 (5th Cir. 1986). "Allegations made in one count

may be incorporated by reference in another count," FED. R. CRIM. P. 7(c)(1), and the Indictment

need not delve into evidentiary details or establish the government's case, but must simply

contain a "plain concise statement of the essential facts constituting the offenses charged."

---

[8] Very few courts have had the opportunity to address Rule 10b5-1. Judge Harmon discussed the
new rule in *Newby*. *See In re Enron Corp. Sec., Derivative, & Erisa Litig.*, 258 F. Supp. 2d 576,
590-93 (S.D. Tex. 2003) ("*Newby*"). She observed that Rule 10b5-1 adopted elements of both
the "knowing possession" test set forth in *Teicher*, and the "use" test in *Adler*, which included
the rebuttable presumption that one could presume "use" from "possession." *Id.* at 592-93; *see
also SEC v. Lipson*, 278 F.3d 656, 660 (7th Cir. 2002) (Rule 10b5-1 "is in the spirit of the
*Teicher* dictum and also follows a suggestion in *SEC v. Adler*," thereby "preserv[ing] a
diminished requirement of causality."); *Adler*, 137 F.3d at 1335 n.25 (arguing that even *Teicher*,
when read closely, applied a "use/causal connection" test). That the SEC adopted this mixed
use-possession-causation test shows that the Task Force's mere "possession" allegation—which
omits any mention of use or causation—is insufficient.

*Smith* also, of course, holds that *Adler*'s rebuttable "use-possession" presumption (and by
implication Rule 10b5-1, which adopts it) may *not* apply in the criminal context consistent with
due process. *See Smith*, 155 F.3d at 1069 ("Of course, we deal here with a criminal prosecution,
not a civil enforcement proceeding, as was the situation in *Adler* [*Teicher*, and *Newby*.] We are
therefore not at liberty, as was the *Adler* court, to establish an evidentiary presumption that gives
rise to an inference of use. *See Sandstrom v. Montana*, 442 U.S. 510, 524 (1979)."); *see also
Lipson*, 278 F.3d at 661 (citing *Smith* favorably; noting its rule's application in the criminal
context); Harold S. Bloomenthal & Samuel Wolff, 3C SECURITIES & FEDERAL CORPORATE LAW
§ 19:25 (2d ed. 2005), *available on Westlaw at* SECFEDCORP § 19:25 ("It is highly unlikely the
[SEC] could by rule change the burden of proof in a criminal proceeding."); Sinai, *supra*, at 280.

*Gordon*, 780 F.2d at 1172. The federal pleading standards are lax, but where an indictment consists of a "litany of actions," from which it is hard to discern which acts are alleged to be criminal, the indictment is deficient. *United States v. Salisbury*, 983 F.2d 1369, 1374-75 (6th Cir. 1993).

As noted above, paragraph 119 of the Indictment does nothing more than "reallege[]" the "allegations in paragraphs 1 through 85." Paragraph 120 tracks the elements of the relevant statutes and rules (except where indicated *supra* and *infra* in Sections II.A and C); identifies the trades alleged to be fraudulent by amount and date; and says these trades were made fraudulently and while Skilling was "in possession of material non-public information." The Indictment, however, fails to identify *any* specific "material non-public information" upon which Skilling relied in making each of the 40 trades.

As *United States v. Santoro* held, "a defendant cannot be expected to defend against a charge of insider trading without knowing what the inside information is." 647 F. Supp. 153, 188 (E.D.N.Y. 1986), *rev'd on other grounds sub nom, United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2nd Cir. 1988); *see also United States v. Falbo*, No. 92-CR-0763, 1993 WL 147441, at *1 (S.D.N.Y. Apr. 6, 1993) (granting motion for bill of particulars as to "the material nonpublic information the government will contend that defendant(s) learned").

In paragraphs 3 through 85 of the Indictment and its 45-page Statement in Compliance, the Task Force alleges a wide variety of corporate malfeasance (*e.g.*, the Count One conspiracy, Raptors, Cuiaba, Nigerian Barges, Global Galactic, prepays, EBS and EES business failures, Project Braveheart, McGarret transactions A through V, etc.). Yet *nowhere* does the Task Force identify what information was material and/or non-public for purposes of its insider trading counts. Indeed, the Indictment continually references Enron's debt, its use of special purpose entities, its hedging activities, and its transactions with related-parties. *See, e.g.*, Indictment ¶¶ 5-

13

21, 27-46. But all of these topics were the subject of extensive disclosures in Enron's public

filings, *see, e.g.*, Statement in Compliance at 1-18, thereby begging the questions: what

information was non-public, and what information was material?

Complicating matters, the 40 trades at issue took place on different dates over a 17-month

period, and the Indictment does not specify what information Skilling knew at each point in time.

This lack of specificity is prejudicial. To defend each insider trading count would require us to

defend against *every* aspect of the Task Force's case, whether alleged in its Indictment,

particularized in its Statement of Compliance, or identified for the first time at trial. Forcing

defendant to defend against such a "litany of actions"—only some of which the Task Force could

plausibly claim justify insider trading charges—is impermissible. *Salisbury*, 983 F.2d 1369,

1374-75. Given that our bill of particulars motions on these charges were denied, *see supra* note

3, there is no way the Indictment's failings may be excused. *Cf. Gordon*, 780 F.2d at 1172;

*Russell v. United States*, 369 U.S. 749, 770 (1962) (even "a bill of particulars cannot save an

invalid indictment").

### C.     Count 51 Fails to Allege the Duty Element.

An essential element of an insider trading charge is a duty on the defendant's part not to

trade on the inside information absent disclosure of that information. *See Colby v. Hologic, Inc.*,

817 F. Supp. 204, 215 (D. Mass. 1993) (citing *Affiliated Ute Citizens v. United States*, 406 U.S.

128 (1972)); *Dirks v. SEC*, 463 U.S. 646, 653-54 (duty to abstain or disclose "arises . . . from the

existence of a fiduciary relationship").

Count 51 fails sufficiently to allege that duty element. Skilling resigned from Enron on

August 14, 2001. *See* Indictment ¶ 6. Count 51 targets a trade he made one month later, on

September 17, 2001. *See id.* ¶ 120. The Indictment alleges that Skilling served as an employee

or consultant of Enron's from the late 1980s to December 2001. *See id.* ¶ 7. However, it says

nothing to describe Skilling's consultancy or explain how it exposed Skilling to insider information or gave rise to the duty necessary to assert a criminal charge of insider trading. Counts 42 through 50 encompass trades Skilling made when President, Chief Operating Officer, or Chief Executive Officer of Enron, *see id.* ¶ 7, and thus arguably establish such a duty. *See United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (officers and directors qualify as insiders owing a duty to disclose). Consultants can be "insiders" for purposes of the insider trading statute, but there is no *per se* duty inherent to all consulting relationships. *See Dirks*, 463 U.S. at 655 n.14 ("Under certain circumstances," consultants "may" become fiduciaries.); DONALD LANGEVOORT, INSIDER TRADING: REGULATION, ENFORCEMENT & PREVENTION § 3:8, at 3-10 to 3-11 (2004) (whether consultant is fiduciary is "question of fact"; must be "affirmative expectation that the information will be used for the benefit of the [company], and some sort of assent to that duty by the recipient"). The Indictment fails to allege facts sufficient to establish that Skilling had such a duty after his resignation based on a consultancy or any other cognizable theory. Count 51 should be dismissed.

## IV.    Conclusion

Skilling's motion should be granted, and Counts 42 through 51 of the Indictment

dismissed.

Dated:  July 1, 2005

Respectfully submitted,

By: _Daniel M. Petrocelli_
(by permission (MD))

Of Counsel:

Ronald G. Woods
Texas State Bar No. 21964000
Federal Bar No. 657
5300 Memorial, Suite 1000
Houston, TX 77007
Office: 713-862-9600
Facsimile: 713-864-8738

Daniel M. Petrocelli
M. Randall Oppenheimer
Mark Holscher
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Office:  (310) 553-6700
Facsimile:  (310) 246-6779

*Attorneys in Charge for Jeffrey K. Skilling*

## CERTIFICATE OF SERVICE

This is to verify that true and correct copies of the following documents (Jeffrey Skilling's Motion To Dismiss Counts 42 Through 51 (Insider Trading Counts)—Defense Motion No. 5; Memorandum In Support Of Motion; Proposed Order) have been served on this 1st day of July, 2005 on counsel listed below.

Margarita Salazar

Sean Berkowitz
John Hueston
Matthew Friedrich
Linda Lacewell
Kathy Ruemmler
Enron Task Force
DOJ Criminal Division
1400 New York Avenue, NW
10th Floor
Washington, D.C.  20530
Facsimile:  (202) 353-3165
*Enron Task Force*

Reid Weingarten
Mark Hulkower
Matthew Stennes
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington D.C.  20036
Facsimile:  (202) 429-3902
*Counsel for Richard Causey*

Michael Ramsey
Chip Lewis
River Oaks/Welch Building
2120 Welch
Houston, Texas 77019
Facsimile:  (713) 523-7887
*Counsel for Kenneth L. Lay*