United States Courts
Southern District of Texas
ENTERED

JAN 1 2 2006

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-04-25 |
| | § | |
| RICHARD A. CAUSEY, JEFFERY K. | § | |
| SKILLING, and KENNETH L. LAY, | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Joint Motion in Limine to Exclude All Evidence Concerning Allegations on Unlawful Trading Strategies and Market Manipulation in California (Defense Motion in Limine No. 6, Docket Entry No. 591).  This motion asks the court

> to preclude the Task Force from making any argument or introducing any testimony, exhibits (including Government Exhibits 3567, 3568, and 3890), or other evidence concerning the allegedly fraudulent trading strategies or market manipulation in California[, because s]uch evidence and argument are irrelevant under Rules 401 and 402, unfairly prejudicial, confusing, and wasteful under Rule 403.[1]

## I. Standard of Review

Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Rule 402 provides that "[a]ll relevant evidence is

---

[1]Defendants' Joint Motion In Limine to Exclude All Evidence Concerning Allegations of Unlawful Trading Strategies and Market Manipulation in California (Defense Motion in Limine No. 6), Docket Entry No. 591, p. 11.

admissible . . . [and that e]vidence which is not relevant is not

admissible."  Fed. R. Evid. 402.   Rule 403 provides that

> [a]lthough relevant, evidence may be excluded if its
> probative value is substantially outweighed by the danger
> of unfair prejudice, confusion of the issues, or
> misleading the jury, or by consideration of undue delay,
> waste of time, or needless presentation of cumulative
> evidence.

Fed. R. Evid. 403.   Rule 403 "authorizes exclusion of relevant

evidence when its probative value is substantially outweighed by

the danger of unfair prejudice."  Old Chief v. United States, 117

S.Ct. 644, 650 (1997).  "'Unfair prejudice' as to a criminal

defendant, speaks to the capacity of some concededly relevant

evidence to lure the factfinder into declaring guilt on a ground

different from proof specific to the offense charged."  Id.


## II. Analysis

The Task Force argues that evidence of Enron's California

trading strategies is relevant to the government's allegations

regarding false and misleading statements made by the defendants

about Enron's business.   Asserting that Skilling received a

briefing on Enron's California energy trading strategies and their

code names from in-house attorney Richard Sanders on June 20,

2001,[2] the Task Force argues that "there is a fair inference to be

_____

[2]United States' Opposition to Defendants' Motion in Limine
Regarding Unlawful Trading Strategies and Market Manipulation in
California (Defendants' Motion in Limine No. 6), Docket Entry
(continued...)

2

drawn that [Skilling] was put on notice that there were problems in Enron's California trading business <u>at least</u> as of June 2001."[3] The Task Force has not argued that Lay was apprized of these trading strategies before making any of the statements attributed to him in the Second Superceding Indictment (SSI).

## A.    Government Exhibits 3567 and 3568

Government exhibits 3567 and 3568 are drafts of a legal memorandum written in December of 2000 by Christian Yoder and Stephen Hall to Richard Sanders, an in-house attorney for Enron.[4] The drafts describe strategies used by Enron traders in California's wholesale energy markets, which are referred to by code names such as "Death Star," "Load Shift," "Get Shorty," "Wheel Out," "Fat Boy," and "Ricochet." Defendants argue that these drafts should be excluded because they are irrelevant and prejudicial.

---

[2](...continued)
No. 634, p. 4. (United States' Opposition to Defendants' Motion in Limine No. 6)   See also Defense Motion in Limine No. 6, Docket Entry No. 591, p. 5 & n.4 describing Sanders' testimony before the Commodities Futures Trading Commission and his FBI 302s.

[3]<u>Id.</u> at p. 18.  Although the Task Force "does not concede that defendants did not know about these strategies prior to June 2001," it has neither argued nor suggested that it has any evidence that they did.

[4]See Exhibits 9 and 10 included in Table of Exhibits attached to Defendants' Motion in Limine No. 6.

1.   <u>Relevance</u>

The Task Force argues that these drafts, together with other evidence of Enron's California energy trading practices, are relevant because they provide probative evidence that Skilling "intended his July 2001 statements (See Indictment, ¶72) to mislead investors about the true nature of Enron's trading business."[5] The Task Force also argues that this evidence shows that on September 17, 2001, when Skilling sold the 500,000 shares of Enron stock alleged in Count 51 to constitute insider trading, he possessed material nonpublic information "of potential issues associated with market manipulation strategies that Enron had employed in California."[6]

Paragraph 72 of the SSI underlies the securities fraud charge asserted against Skilling in Count 26 based on statements he allegedly made during an analyst call on July 12, 2001. Skilling is alleged to have stated that Enron Energy Services (EES) was "firmly on track to achieve [its] 2001 target of $225 million" in earnings.[7] The SSI alleges that this statement was false and misleading because Skilling knew that "EES was facing hundreds of millions of dollars in concealed losses and was a year or more away

_____

[5]United States' Opposition to Defendants' Motion in Limine No. 6, Docket Entry No. 634, p. 15.

[6]<u>Id.</u> at p. 16.

[7]SSI, Docket Entry No. 97, p. 31 ¶72.

4

from any prospect of success."[8]   Since, however, neither ¶¶72-73 of
the SSI nor other statements attributed to Skilling on July 12,
2001, in the Government's Statement in Compliance contain any
reference to energy trading in California and do not allege either
that EES' losses were attributable to California trading or that
Skilling knew that the losses were attributable to such trading,[9]
the court is not persuaded that the memorandum drafts detailing
Enron's California energy trading strategies constitute evidence
having any tendency to make the allegations made in ¶¶ 72 and 73 of
the SSI "more probable or less probable than [they] would be
without the evidence."   Fed. R. Evid. 401.   Accordingly the court
is not persuaded that Government Exhibits 3567 and 3568 are
relevant to the statements attributed to Skilling in ¶72.
Moreover, since, the only other California-related statements
attributed to Skilling in either the SSI or the Government's
Statement in Compliance are statements made in January, March, and
April of 2001,[10] and since these statements are alleged to have been
made BEFORE June 20, 2001, the date on which the Task Force says

---

[8]<u>Id.</u> at ¶73.

[9]See United States' Opposition to Defendants' Motion in Limine
No. 6, Docket Entry No. 634, pp. 7-8, and Government's Revised
Statement in Compliance with Court's Order Dated Novembr 2, 2004,
Docket Entry No. 512, p. 14.

[10]See United States' Opposition to Defendants' Motion in Limine
No. 6, Docket Entry No. 634, pp. 7-8 (citing ¶¶ 64, 66-68, and 70),
and Government's Revised Statement in Compliance with Court's Order
Dated Novembr 2, 2004, Docket Entry No. 512, pp. 10, 13-16.

that Sanders briefed Skilling about Enron's California energy trading strategies, the court is not persuaded that Government Exhibits 3567 and 3568 are relevant to any of the statements attributed to Skilling in either the SSI or the Statement in Compliance.

2.  Prejudice

The Task Force argues that the danger of unfair prejudice posed by evidence of Enron's California trading strategies, including the statements contained in Government Exhibits 3567 and 3568, does not outweigh its probative value.  Since these drafts describe in great detail the provocatively named trading strategies that Enron's traders used in California and suggest that on at least one occasion Enron's trading practices may have contributed to the declaration of state of emergency,[11] the court is persuaded that the danger of unfair prejudice posed by the admission of these exhibits substantially outweighs any probative value they could have for proving any of the allegations in the SSI based on statements made by Skilling or Lay.  Accordingly, the court concludes that defendants motion in limine regarding Government Exhibits 3567 and 3568 should be granted.

_____

[11]See United States' Opposition to Defendants' Motion in Limine No. 6, Docket Entry No. 634, pp. 3-4.

**B.   Government Exhibit 3890**

Government exhibit 3890 is an audio recording of a conversation between Enron traders Timothy Belden and John Lavorato on August 8, 2000.[12]   The conversation characterizes Enron as "stealing" from California, includes profanity, and references Enron's use of "Special C" reserves to book trading profits. Defendants argue that the tape should be excluded because it is irrelevant and prejudicial.

1.   Relevance

The Task Force argues that the audio tape "is relevant and admissible as corroborative testimony of a coconspirator under Federal Rule of Evidence 804(d)(2)(E),"[13] and that "to the extent that there are portions of the tape that are either irrelevant or cumulative those portions could be redacted."[14]   Defendants argue that

> all evidence concerning the allegedly fraudulent trading
> schemes and market manipulation in California must be
> excluded as irrelevant . . . [but that] this does not
> mean (and defendants do not contend) that all evidence
> related to the California energy crisis is irrelevant.
> There are California-related issues that will be relevant
> at trial, such as the factors underlying Enron's

---

[12]See Exhibit 11 included in Table of Exhibits attached to Defendants' Motion in Limine No. 6, Docket Entry No. 591.

[13]See United States' Opposition to Defendants' Motion in Limine No. 6, Docket Entry No. 634, p. 19.

[14]Id. at n.11.

reserves, Enron's risk exposures in California, the financial problems suffered by utilities like Pacific Gas & Electric and Southern California Edison, the heated political climate in California, and the impact of the California energy on Enron's business. All of these relate to allegations in the Indictment and Statement of Compliance about Schedule C reserves, the CTC receivables and the financial condition of EES, certain allegedly false statements made by the defendants, and the causes of Enron's bankruptcy.[15]

The audio tape records a conversation made on August 8, 2000. The Task Force does not argue that Skilling was briefed on Enron's California trading practices until almost a year later on June 20, 2001, when Sanders apprized him of those practices in a brief meeting. Nor does the Task Force argue that either Skilling or Lay were aware of this audio tape or its contents when making any of the statements alleged in the SSI. The court is therefore not persuaded that the parts of the audio tape that concern California trading practices constitute evidence having any tendency to make the statements attributed to Skilling and/or Lay in the SSI "more probable or less probable than [they] would be without the evidence." Fed. R. Evid. 401. Since, however, the SSI contains specific allegations regarding Skilling's use of Schedule C reserves, the court is persuaded that the parts of the tape that concern Schedule C may be relevant to allegations made in the SSI.[16]

_____

[15]Defendants' Motion in Limine No. 6, Docket Entry No. 591, pp. 5-6.

[16]See Docket Entry No. 97, ¶56 (alleging that "Skilling and Causey fraudulently reserved trading profits in accounts maintained
(continued...)

2.  Prejudice

The Task Force argues that the danger of unfair prejudice posed by evidence of Enron's California trading strategies, including that contained in Government Exhibit 3890, does not outweigh its probative value.   Since this tape contains inflammatory language in the form of profanity, and prejudicial statements that characterize Enron's trading practices as "stealing" from California, the court is persuaded that the danger of unfair prejudice posed by its admission substantially outweighs any probative value it may have for proving that any statements attributed to Skilling and/or Lay alleged in the SSI were intentionally false and/or misleading when made.  Accordingly, the court concludes that defendants' motion in limine regarding Government Exhibit 3890 should be granted.

**C.  Witness Testimony**

1.  Timothy Belden

Timothy Belden led Enron's West Coast energy trading desk in the summer of 2000 and is one of two participants in the conversation recorded on the audio tape offered as Government Exhibit 3890.  For the same reasons that the court has concluded that the defendants' motion in limine regarding that audio tape

------

[16](...continued)
on an internal Enron ledger designated as 'Schedule C'").

should be granted, the court concludes that the defendants' motion in limine regarding the testimony of Timothy Belden about the conversation contained on that audio tape should be granted. Because the Task Force also argues that Belden's testimony will be relevant to statements that Skilling made about Enron's wholesale business and Enron's use of Schedule C reserves, the court is not persuaded that Belden's testimony on those issues should be excluded.

2. Richard Sanders

Richard Sanders was the Enron in-house attorney to whom the memorandum drafts offered as Government Exhibits 3567 and 3568 describing Enron's California trading strategies were presented. For the same reasons that the court has concluded that the defendants' motion in limine regarding that those drafts should be granted, the court concludes that the defendants' motion in limine regarding Sanders' testimony about those drafts should be granted. Because the Task Force also argues that Sanders' testimony regarding the meeting that he had with Skilling in June of 2001 will be relevant to show that Skilling possessed material, nonpublic knowledge about Enron's California energy trading when he sold 500,000 shares of Enron stock on September 17, 2001, charged

as insider trading in Count 51,[17] the court is not persuaded that Sanders' testimony about the meeting should be excluded.

## III. Conclusions and Order

Defendants' motion in limine is GRANTED as to (1) Government Exhibits 3567, 3568, and 3890, (2) the testimony of Timothy Belden regarding the August 8, 2000, conversation contained on Government Exhibit 3890, and (3) the testimony of Richard Sanders regarding the memorandum drafts offered as Government Exhibits 3567 and 3568, and is DENIED as to (1) the testimony of Timothy Belden regarding Enron's wholesale business and use of Schedule C reserves, and (2) the testimony of Richard Sanders regarding his meeting with Skilling in June of 2001. Accordingly, Defendants' Joint Motion in Limine to Exclude All Evidence Concerning Allegations on Unlawful Trading Strategies and Market Manipulation in California (Defense Motion in Limine No. 6, Docket Entry No. 591), is **GRANTED in part** and **DENIED in part**.

SIGNED at Houston, Texas, this __12__th day of January, 2006.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[17]See SSI, Docket Entry No. 97, pp. 58-60, ¶¶ 119-120,