

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAN 1 9 2006

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Crim. No. H-04-25 (Lake, J.) |
| v. | ) |
| JEFFREY K. SKILLING, and KENNETH L. LAY, | ) |
| Defendants. | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED
MOTION FOR CHANGE OF VENUE AND RELATED RELIEF**

The Task Force's opposition to defendants' venue motion suffers from four major

defects—each of which we briefly address in this reply.

*First*, it proceeds from the mistaken premise that defendants must prove actual prejudice,

prejudice to a certainty, or even overwhelming prejudice to obtain relief.  All the law requires is

that a "reasonable likelihood" of prejudice be shown.  *Sheppard v. Maxwell*, 384 U.S. 333, 363

(1966); *Pamplin v. Mason*, 364 F.2d 1, 5-6 (5th Cir. 1966).  As one court explained:

> [R]ule [21] is preventative.  It is anticipatory.  It is not solely curative as is a post-
> conviction constitutional attack.  Thus, the rule evokes foresight, always a more
> precious gift than hindsight, and for this reason the same certainty which warrants
> the reversal of a conviction will not always accompany the change of venue.
> Succinctly, then, it is the well-grounded fear that the defendant will not receive a
> fair and impartial trial which warrants the application of the rule.  *Singer v. United
> States*, 380 U.S. 24, 35 (1965).  As the Supreme Court recently stated in *Sheppard
> v. Maxwell*, 384 U.S. at 363, venue should be changed "where there is a
> reasonable likelihood that prejudicial news prior to trial will prevent a fair trial."

*United States v. Marcello*, 280 F. Supp. 510, 513-14 (E.D. La. 1968) (citations altered).

Prejudice is *reasonably likely* where (1) "inflammatory pretrial publicity [has] literally

saturated the community," *Mayola v. Alabama*, 62 F.2d 992, 997 (5th Cir. 1980), "outside

influences affecting the community's climate of opinion as to a defendant are inherently suspect," *Pamplin*, 364 F.2d at 5, or "the repetition of emotionally intense stories of loss and grief and the valiant efforts to overcome the consequences" have engendered the "common belief" that "only a guilty verdict" and harsh punishment will make the community whole, *McVeigh*, 918 F. Supp. at 1470.

Here, of course, all three measures are met, no matter how phrased: the community has been "saturated," the "climate of opinion" is decidedly against defendants, and convicting and punishing Skilling and Lay have been oft-repeated goals. One need go no further than the jury questionnaires, the piles of media excerpts collected in this and prior submissions, or even this week's *Houston Chronicle* to see this point made again and again, in the most venomous of prose. *See* Ex. A (collection of recent media).[1]

*Second*, the Task Force isolates discrete pieces of evidence (such as recent publicity surrounding Mr. Causey's guilty plea or recent examples of incendiary news coverage) that militate in favor of the relief defendants requested, and argues that these pieces of evidence, in and of themselves, do not justify the relief defendants seek. Not only are such specific criticisms of the evidence misguided, they miss the far larger point. Venue transfer motions are to be decided based on the "totality" of the evidence. *See Marshall v. United States*, 360 U.S. 310, 312 (1959); *Murphy v. Florida*, 421 U.S. 794, 799 (1975) 2 CHARLES A. WRIGHT, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 342, at 380-82 (3d ed. 1999). They may not be denied or readily dismissed because one piece of evidence in and of itself does not carry the day. Under

---

[1] The argument has been made that news coverage of this trial is as intense elsewhere around the country as it is in Houston. Not so, as defendants have repeatedly demonstrated in their venue submissions. To take one recent, typical example, earlier this week the *Chronicle*, on one day, ran a news story about the case and a column attacking defendants and their lawyers, and ran on its website a profile on the director of the Enron "documentary" and the release this week of the DVD for the movie. *See* Ex. A. That same day, the *USA Today* ran no Enron stories. *See id.*

the Task Force's approach, venue could never be changed.

*Third*, the Task Force mostly overlooks (except for two brief paragraphs and two footnotes, *see* Opp. at 6-7) the one fact that can and should carry the day on this issue—the overwhelmingly and singularly hostile jury questionnaire responses returned by jurors in the current jury pool. The best the Task Force can argue is that the expert declaration defendants submitted should be ignored because courts do not rely on public opinion "polls" as good proxies for real juror attitudes. Opp. at 5. This, of course, ignores that defendants' expert was opining not on a "poll" he commissioned, but the *actual responses of potential jurors in this case.*

The Task Force next argues that, of the 286 jurors who filled out the questionnaire, 70 jurors did not admit or indicate conscious bias. As we explained, however, there is little doubt that many of the 70 jurors will harbor unconscious or hidden biases, will fear returning to their communities with a "not guilty" verdict, or will have been unduly influenced by incendiary media. The Task Force says these fears are "rank speculation." Opp. at 6 n.2. Other than this *ad hominem*, the Task Force has no response to the large body of case law, decades worth of social science research, and defendants' expert declarations filed in connection with their original venue motion and this renewed motion (which went completely unrebutted by any expert testimony submitted by the Task Force)—all of which prove these points. *See, e.g., Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor, J., concurring) ("Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it"); *United States v. Tokars*, 839 F. Supp. 1578, 1584 (N.D. Ga. 1993) ("Where the negative publicity has been so intense, the court's task would be made more difficult by prospective jurors' subconscious recollection of news coverage."); *United States v. McVeigh*, 918 F. Supp. 1467, 1473 (W.D.

Okla. 1996) ("Trust in [juror's] ability to [remain fair despite extensive publicity before trial] diminishes . . . . when there is such identification with a community point of view that jurors feel a sense of obligation to reach a result which will find general acceptance in the relevant audience.").

*Finally*, the Task Force offers no meaningful response to our request for more participation in the jury selection process, other than to say the Court is fully capable of picking the jury. This, of course, is not the issue. The issue is the necessity and propriety of affording all parties a full opportunity to select a fair jury. Based on the questionnaires, of the 164 remaining members of the venire, all but a handful admit to pretrial media exposure. More importantly, more than half admit they harbor negative attitudes toward defendants or have said they are angry about what happened at Enron or have expressed deep sympathy for Enron's former employees. Given the unassailable importance of ferreting out pervasive bias among prospective jurors in this case, there is no good, conceivable reason for the Task Force's resistance to more individualized voir dire.

Dated:  January 19, 2006

Respectfully submitted,

By:_____

Of Counsel:
Ronald G. Woods
Texas State Bar No. 21964000
Federal Bar No. 657
5300 Memorial, Suite 1000
Houston, TX 77007
Office: 713-862-9600
Facsimile: 713-864-8738

Daniel M. Petrocelli
M. Randall Oppenheimer
Mark Holscher
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Office:  (310) 553-6700
Facsimile:  (310) 246-6779
*Attorneys in Charge for Jeffrey K. Skilling*

4

By: _Michael Ramsey /By Dr_

Michael Ramsey
Chip Lewis
River Oaks/Welch Building
2120 Welch
Houston, TX 77019
Office: (713) 227-0275
Facsimile:  (713) 523-7887
*Attorneys in Charge for Kenneth L. Lay*

## <u>CERTIFICATE OF SERVICE</u>

This is to verify that true and correct copies of the following documents (Reply Memorandum In Support Of Defendants' Renewed Motion For Change Of Venue And Related Relief) have been served on this 19th day of January, 2006 on counsel listed below.

Matthew T. Kline

Sean Berkowitz
John Hueston
Kathy Ruemmler
Enron Task Force
DOJ Criminal Division
1400 New York Avenue, NW
10th Floor
Washington, D.C.  20530
Facsimile:  (202) 353-3165
*Enron Task Force*

Michael Ramsey
Chip Lewis
River Oaks/Welch Building
2120 Welch
Houston, Texas 77019
Facsimile:  (713) 523-7887
*Counsel for Kenneth L. Lay*

CC1:731305.1

# EXHIBIT A

ADVERTISING

SEARCH                                    IN   Chron.com          . [ Go ]



Full Disclosure
A business blog with Loren Steffy

« Better service from bankrupt airlines? | Main | SEC takes first step in improving exec pay disclosure »

January 17, 2006

## Just call me 'Exhibit A'

Some columnists have to wait years for compilations of their work. Not me. I have the Ken Lay-Jeff Skilling defense team **doing it for me**. Their latest effort, filed in court this morning, is the most comprehensive assemblage of my work to date. Under `Exhibit A' (page 26) you'll find reproductions of this blog -- including some of your comments -- as well as some of my recent columns.

I may write more about this in my column tomorrow, which means I'll be writing about them writing about me writing about them. It's a relationship that's growing more convoluted than an Enron SPE diagram. Maybe I should switch this blog to PDF format to make it easier for them to reproduce it in court. It looks like some of the words got cut off....

**Trackback Pings**

Full Disclosure: Just call me 'Exhibit A'

TrackBack URL for this entry:
http://blogs.chron.com/MT/mt-tb.cgi/4895

Listed below are links to weblogs that reference Just call me 'Exhibit A':

» Missing the point from Houston's Clear Thinkers
Chronicle business columnist Loren Steffy has been a harsh critic of Enron and its former key executives, Ken Lay and Jeff Skilling. In their motion to transfer venue of their upcoming criminal trial, Lay and Skilling have used Steffy's past... [Read More]

Tracked on January 18, 2006 07:50 AM

**Comments**

On behalf of the Chronicle, you should host a small gathering at a nice restaurant and provide supper for those of us who thus have been permanently exempted from jury duty in any Enron-related case -- including you -- thanks to your web work.

i would think, the egos that contribute to mr. steffy's blog, would love the limelight of jury duty in the enron case. larry king show, book deals, cnbc
with maria b.
alas, i must not have shot my mouth off for an opinion of the case on mr. steffy's blog , but the trial would have to move to montgomery county for me to be elegible.
unless this comment disqualifies me. "We are going to have a trial, then we are going to hang 'em".

In an unrelated note. Did the second in command of the Al quada, invite four of his enemies to dinner, only to fawn a minor illness, but leave enough evidence to draw a unmanned drone to the area and vaporize the dinner party and wham, bam,

thank you US military for taking care of four suiters who want the number one job at Al Quada. Sorta sounds like a Mob way of doing things, but it always works in the movies.

This is amazing!

Our blog comments may be included in the Enron trials!

Pathetic. Really Pathetic. I noticed where the exhibit "A" was poorly scanned and shows a lack of tech knowledge amongst Skilling and Lay's support staff. Like children. They can't be serious.

Also, thanks to the attorneys on both sides. Now, 'Taylor' is included in the record. You fools, why don't you just print out every comment I've made this year. What a pathetic piece of support staff and defense.

Loren, I support the Chronicle and the Blogs. Lay/Skilling are desperate to resort to the blog argument that they can't get a fair trial. We know they are reading this blog. Loren, you are a star, now. And I remember last year when you started this blog and didn't think it was worth the effort. Man, do times change. Exhibit 'A' rocks!

**Post a comment**

Name:

Email Address:

Full Disclosure: Just call me 'Exhibit A'

URL:

Remember Me?  ○Yes  ○No

Comments: (you may use HTML tags for style)

Preview    Post

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Video & DVD

*Jan. 17, 2006, 1:09PM*

# A timely debut for *Enron* DVD

**By BRUCE WESTBROOK**
**Copyright 2006 Houston Chronicle**

Today's DVD debut of *Enron: The Smartest Guys in the Room*, just two weeks before the start of the Enron trial, is no coincidence. In fact, the dates would have matched precisely if the trial hadn't been postponed to Jan. 30.

Most films released in April reached DVD before         ADVERTISEMENT
summer's end, "but Magnolia (*Smartest Guys'*
distributor) felt the DVD is the ultimate viewer's guide to the trial," said director Alex Gibney.

A darkly comic dig into one of America's biggest corporate scandals, the film earned $4 million in theaters.

*Smartest Guys* was also a huge hit with critics, scoring 97 percent favorable reviews on review tracking site rottentomatoes.com. It's also on the short list of documentaries vying for an Academy Award nomination Jan. 31.

Gibney has moved on to other projects, including a documentary on gonzo journalist Hunter S. Thompson. But he also helped hone *Smartest Guys'* DVD, whose extras include his commentary track, a making-of featurette, deleted scenes, a look at Enron's in-house skits and a "Where Are They Now?" update on major players.

He and some colleagues even have "kind of an Enron self-help group. We get together and talk about how we can't get this story out of our heads. It's the story that will not die."

A New Yorker, Gibney approached his film after reading Bethany McLean and Peter Elkind's book of the same name. Like them, he sees Enron as "less of a business story than a human story."

With that in mind, he defends using a re-enacted scene at the film's start to show the suicide of former Enron exec Cliff Baxter.

"It wasn't like we faked archival footage," he said. "We carefully reconstructed it, and it is clearly a re-creation, a scene that puts you there for a sense of empathy.

"We're not just looking at this from afar and pointing a finger at 'bad men.' We wanted to enhance the humanity of the story, which is a morality tale of how good people can go bad."

Gibney sees Enron as a downside to Houston's "can-do spirit — the sense that anything is possible. It's what happens when the idea of succeeding becomes so important that nothing else matters."

Enron's in-house skits, shown in the film and among its DVD extra features, underscore what he calls the company's "fiction-making" and what McLean calls "a tale of self-delusion."

"Enron was almost like Hollywood, creating myths we wanted to believe in," Gibney said. "The danger is when that becomes a pervasive policy where no fact goes untwisted, and you suddenly become untethered."

He disputes the contention of former Enron executives and now trial defendants Ken Lay and Jeff Skilling that they can't get a fair trial in Houston.

"I've always thought you're supposed to be tried by a jury of your peers," Gibney said. "Ken Lay has a Ph.D in economics, so you'd presume his peers would be very intelligent people, and why can't they find them in Houston as well as anywhere?"

He didn't make his film to weigh evidence but rather the ethics and personalities behind Enron's rise and fall. In doing so, Gibney said, he often relied on the Chronicle, which is why the DVD directs viewers to www.chron.com/enron.

"If you're an Enron junkie and want to follow the trial, that's a pretty good place to start," he said. "Journalists and TV people and filmmakers all look at that Web site as the authoritative account of what happened at Enron. Early on, the Chronicle got a bad rap for not covering it properly but then made an aggressive decision to cover it better than anybody."

Deleted scenes on the DVD expand the film's look at Enron's predatory part in California's energy crisis. Gibney feels many Californians still have an "antipathy" toward Texans but feels the two states aren't dissimilar.

"They both have a spirit that anything is possible," he said, "and I think Houston and L.A. are sister cities in some ways."

He hopes to get to Houston for the trial, "if I can get into the courtroom." Gibney said he got a subpoena for materials from Skilling's attorneys, "but I've resisted it. He asked for everything but my boxer shorts."

He wishes he could have returned to Houston during the film's run, when he heard some audiences were "jumping up and down, throwing stuff, like it was *Rocky Horror.*

"I really didn't take much heat," Gibney said. "There probably aren't a lot of people who stand up and say, 'I'm for Enron.' "

Besides entertaining, he hopes his film helps people find truth in the debacle.

"I think we've lost our capacity to be truth-seekers," Gibney said. "Truth is a many-splendored thing. When the truth doesn't mean anything anymore — when any ends can justify means — it's a dangerous world."

*bruce.westbrook@chron.com*

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Video & DVD
This article is: http://www.chron.com/disp/story.mpl/ent/3590614.html

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business

*Jan. 17, 2006, 4:14PM*

# Lay, Skilling press effort to have trial moved

**By MARY FLOOD**
**Copyright 2006 Houston Chronicle**

Continuing their cry that their trial be moved or they get more time to ask potential jurors questions, ex-Enron executives Ken Lay and Jeff Skilling today filed more court papers pushing their position.

They provided U.S. District Judge Sim Lake, who                    ADVERTISEMENT
has ruled against moving the trial in the past and
does not appear to be ready to move it now, with affidavits from three local criminal defense attorneys and a California political science professor. All said publicity about the case and the answers of potential jurors on questionnaires warrant that the case now be moved.

An alternative remedy of allowing the trial lawyers to question potential jurors when the case begins Jan. 30 is suggested as well, as it was in the papers filed by Lay and Skilling.

The affidavits focused on jury responses from 280 potential jurors, though more than 100 of them have been knocked off the panel.

The response from the Enron Task Force has not yet been filed.

Prosecutor John Hueston asked Lake at the last hearing if the government even had to file anything in response. The judge said they should do so if they thought there was anything new in the motions that warranted a reply.

Lake has said in the past that since Lay, Skilling and the Enron story are known so well around the country that moving the trial made little sense to him.

Today, defense attorneys also asked that they be allowed to have a specialist review handwritten documents that the government has, including notes from people who are cooperating with the government and the so-called "Global Galactic" agreement -- a list of side deals allegedly initialed by ex-CFO Andrew Fastow and ex-top accountant Rick Causey and found in a Fastow-owned safe deposit box. Defendants also ask for the safety deposit box records.

Lay and Skilling face multiple charges of fraud and conspiracy.

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business
This article is: http://www.chron.com/disp/story.mpl/business/3592638.html

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business: Loren Steffy

*Jan. 17, 2006, 11:04PM*

# A fair trial doesn't mean a shut-off of all opinions

**By LOREN STEFFY**
**Copyright 2006 Houston Chronicle**

IT'S my fault. That's what the attorneys for Ken Lay and Jeff Skilling would have you believe. If the toppled Enron kingpins don't get a fair trial here, it's in part because I keep referring to them with terms like that.

That's one of the arguments defense attorneys made in yet another motion filed Tuesday with U.S. District Judge Sim Lake.

ADVERTISEMENT

In the filing I am, quite literally, "Exhibit A," the chief tainter of potential jurors.

In the Enron case, my writings have been cited several times by defense attorneys when raising questions of jury bias and begging for a venue change. I write about them, and they, in turn, write about me. Now I am writing about them writing about me writing about them. And when *this* column ends up in the next motion — well, you get the idea.

It is a circuitous exercise signifying nothing.

I want Ken Lay and Jeff Skilling to get a fair trial, and I believe in the presumption of innocence — that Lay and Skilling aren't guilty unless a jury decides otherwise.

That may seem surprising because I have written some rather harsh words — OK, even mocking words — about Houston's most famous codefendants. I make no apology for that.

This column does not exist to defend Lay and Skilling. They have their lawyers for that. Lay even has his own Web site to spin his views.

This column is for the others.

They are the people who lost everything and for whom "everything" is literal — homes, jobs, life savings, dreams. That's different from a tear-sodden wife bemoaning the loss of "everything" on national television. In that case, "losing everything" meant opening a storefront and selling off antiques.

This column is for people like Charles Prestwood, who called last week to remind me that he's still waiting. Prestwood is an Enron retiree I first wrote about last year. He was a year into retirement when Enron imploded and took his life savings with it. Prestwood joined a class-action lawsuit, but the case can't go to trial until the Lay-Skilling criminal proceeding is over.

He wanted to remind me that he's been waiting for his day in court, too, his shot at justice. That won't happen before at least October, when his case is scheduled to go to trial. By then, he will have been waiting for almost five years to put his life back together.

It's important that Lay and Skilling are judged fairly by a jury of their peers. Nowhere, though, does the law say the rest of us must stifle our outrage over Enron's collapse until that justice is served.

Jurors are simply asked to set aside their biases and preconceptions and make a fair decision based on the evidence. People do that every day, in a host of jobs, from pastor to police officer.

The rest of the world doesn't abdicate its freedom of expression simply because the wealthy and powerful go on trial.

I believe justice will be served in Lay-Skilling case. Media coverage has been intense for big trials going back to Bruno Hauptmann and the Lindbergh kidnapping, which journalist H.L. Mencken called "the greatest story since the Resurrection."

Yet media coverage didn't convict O.J. Simpson or Michael Jackson. Here in Houston, one Enron defendant, Sheila Kahanek, was acquitted last year. By acquitting her while convicting others, jurors obviously set aside any Enron-related biases that they may have had and weighed the evidence.

In Birmingham, Ala., a jury last year acquitted Richard Scrushy, the former chief executive of HealthSouth, on charges that he orchestrated a $2.7 billion fraud at the company. Scrushy was a hometown business hero, much as Lay was in Houston, and Scrushy used, just as Lay plans to, the doofus defense, that catch-all veil of convenient executive ignorance.

But Scrushy serves as a reminder that innocence doesn't absolve accountability.

Fair trial or not, guilty or not, Lay and Skilling presided over one of the greatest business failures in history. Blaming them for that, questioning their attempts to spin their poor management into victimization, doesn't convict them.

Lay and Skilling are entitled to their day in court, and the rest of us are entitled to express our opinions. You can find mine under "Exhibit A."

*Loren Steffy is the Chronicle's business columnist. His commentary appears Sundays, Wednesdays and Fridays. Contact him at loren.steffy@chron.com. His blog, Full Disclosure, is at blogs.chron.com/fulldisclosure.*

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business: Loren Steffy
This article is: http://www.chron.com/disp/story.mpl/business/steffy/3594316.html

Full Disclosure: What's really missing?

ADVERTISING

SEARCH **IN** Chron.com [ Go ]

« SEC takes first step in improving exec pay disclosure | Main | All it needs is a halftime show »

January 18, 2006

## What's really missing?

Tom Kirkendall over at Houston's Clear Thinkers says **I'm missing the point** in my **column today** on the latest attempt by Ken Lay and Jeff Skilling to move their upcoming trial. Tom again talks about how I and others in the media promote a "certain point of view."

In my case, I can't argue with that. As a columnist, that is, after all, my job. Kirkendall has his own point of view, which on this issue is different than mine. That's fine, too. But his views aren't exactly balanced, either.

Kirkendall represents three former Enron executives -- Jeff McMahon, Greg Whalley and Richard Buy -- in civil actions pending in federal court in Houston. That's not something that's mentioned in most of his posts on the subject. So when he **accuses journalists** of promoting a certain point of view for financial gain, it's worth noting that he is doing the same thing.

Full Disclosure: What's really missing?

**Trackback Pings**

TrackBack URL for this entry:
http://blogs.chron.com/MT/mt-tb.cgi/4932

**Comments**

I find Tom Kirkendalls' view of Loren Steffy and his job description laughable (LOL)!.
Thank God Mr.Steffy calls it as he sees it.As one of those families directly affected by the slimy games those execs played with all of our lives,it's no wonder the public opinion is so negative.There is a biblical law:you reap what you sew.I wonder if it ever occurs to Mr. Kirkendall that these people are about to embark on the journey of seeing the repurcussions of their actions?.I also point out that Mr.Kirkendall should have read Mr.Steffy's column on Rick Causey-it was more than fair.
Lisa A.

Loren writes for the general public. He is the first financial guy I have ever stayed with (reading his articles and posts)I would imagine Kirkendall is sucking up some major greenbacks for his efforts on his clients behalf. I wish Loren success in his career. Im rreally glad Loren doesn't suck up to the big money boy's.

Regarding "presumption of innocence": The only entity in the USA required to presume the innocence of the accused is the government; every private citizen is free to draw reasonable** conclusions based upon known information, and editorialize his or her heart out. (And, if we were to carry to absurdity the presumption of innocence, no one could ever be held in jail before being tried in court.) And, to be fair, most of us should re-think our feelings about criminal defense lawyers, who are generally regarded as sleazy hired guns who will use any machination in the world to "get the defendant off." Criminal defense attorneys as a group would be considered far more honorable if they would portray themselves as champions of justice who are merely insuring that the government fully does its job before depriving someone of liberty or life -- which truly IS what they do. Yes, their tactics often reek, with their own stinking arrogance not helping public perception for their

Full Disclosure: What's really missing?

cause, but the reality is that our government definitely must not convict anyone without convincingly making its case according to well-established rules of evidence, and in spite of any diversionary obstacles constructed by some slick, greasy, bottom-dwelling mealy-mouthed money-hungry jug-derriered shyster. I would just as soon see Ken Lay, and especially that hoity-toity Jeff Skilling, manufacturing license plates in the Big House for the rest of their lives -- we can be certain that Jeff would garner additional prison commissary privileges by "monetizing" one of his brilliant ideas for stamping out license plates more efficiently than has ever been done before. [** A "reasonable" conclusion does not consist of an emotional response formed, for example, from repeatedly watching an entertainingly inflammatory snippet of videotape without knowing more about the underlying circumstances.] Let's get the trial underway, and send the Duke and the Dauphin right up the river as soon as possible. P.S. No, I never worked for Enron.

I don't know where these guys could get a fair trial defined as an area with a jury pool free of negative media influence.

But haven't they earned all the negative press?

**Post a comment**

Name:

Email Address:

URL:

Remember Me? ◯Yes ◉No

Full Disclosure: What's really missing?

Comments: (you may use HTML tags for style)

Preview    Post

## THE FALL OF ENRON

# Defense again seeks time to question jurors

■ **Otherwise, lawyers request moving the trial**

By **MARY FLOOD**
HOUSTON CHRONICLE

Continuing to ask that they get more time to ask potential jurors questions or their trial be moved, former Enron executives Ken Lay and Jeff Skilling filed more court papers pushing their position Tuesday.

They provided U.S. District Judge Sim Lake, who has ruled against moving the trial in the past and does not appear to be ready to move it now, with affidavits from three local criminal defense attorneys and a California political science professor. All said publicity about the case and the answers of potential jurors on questionnaires warrant moving the case.

An alternative remedy of allowing the trial lawyers to question potential jurors when the case begins Jan. 30 is suggested as well, as it was in the papers filed by Lay and Skilling.

The affidavits focused on responses from 280 potential jurors, although more than 100 of them have been knocked off the panel.

The response from the Enron Task Force has not been filed.

Prosecutor John Hueston asked Lake at the last hearing if the government even had to file anything in response. The judge said they should do so if they thought there was anything new in the motions that warranted a reply.

Lake has said in the past that because Lay, Skilling and the Enron story are known so well around the country, moving the trial made little sense to him.

Tuesday, defense attorneys filed many motions, asking among other things:

■ That the case be put off another week because prosecutors went past the day they were expected to say how they might pare down the charges now that former chief accountant Rick Causey has pleaded guilty.

■ That a specialist review handwritten documents the government has, including notes from people who are cooperating with prosecutors and the so-called Global Galactic agreement — a list of side deals allegedly initialed by former finance chief Andrew Fastow and Causey.

■ That the judge reconsider a ruling allowing testimony Skilling gave to the Securities and Exchange Commission about stock sales near the time of the World Trade Center tragedy.

*mary.flood@chron.com*

## BUSINESS

# Lawyers argue over who gets best seat in house

It could come down to a coin flip, but not if Ken Lay's lawyer Mike Ramsey is successful. U.S. District Judge Sim Lake has decided to use a coin toss to determine which team of lawyers gets the coveted table with a direct view of the witness stand and closest to the jury box. Objection: Ramsey contends former Enron Chairman Lay and co-defendant and former Enron CEO Jeff Skilling have a constitutional right to "face-to-face" confrontation with the witnesses against them when their trial begins Jan. 30. **PAGE A1**

**THE ENRON TRIAL**

# This is one motion that's really on the table

■ Lawyers for Lay, Skilling ask judge to skip coin flip, give them coveted spot near the jury

**By MARY FLOOD**
HOUSTON CHRONICLE

Enron's former corporate chieftains Ken Lay and Jeff Skilling do not want to call it heads or tails.

On Tuesday, they asked their judge to forgo a coin toss to see who gets the best courtroom table for their Jan. 30 fraud and conspiracy trial. They argue they have a right to the coveted table next to the jury because it offers the best view of the witness stand.

In a letter to U.S. District Judge Sim Lake, Lay's lawyer Mike Ramsey argued Lay and Skilling have a claim on the table to meet their constitutional right to "face-to-face" confrontation with the witnesses against them.

*Please see ENRON, Page A6*



BRETT COOMER CHRONICLE
**CHOICE SEATS?:** Ken Lay's lawyer wrote that the defendants have a claim on the table at left to meet their right to face witnesses.

# ENRON: Courtroom table once led to a fight

**CONTINUED FROM PAGE A1**

Ramsey argued that computer monitors, lawyers, clerks, case agents and the podium can get in the way from the other table where "by stretching and craning, the defendants might occasionally make eye contact with the witnesses."

This is about sitting at one table or at another — a few feet away.

**Humanizing clients?**

When Ramsey told Lake last week that he planned to ask for a halt to the coin flip, Lake kind of rolled his eyes and said he couldn't stop him from filing a motion.

But the prize here, in lawyer thinking, is the possibility that because you sit closer to the jury you are more humanized and they like you better and it gives you an edge. Trial lawyers love edges.

This table is so valued that young legal associates are frequently dispatched with piles of books to get dibs on this table hours before a jury arrives in civil cases.

David Berg, a Houston trial lawyer, once got in a physical fight trying to get the table.

"We get to court at 6 a.m. to stake out that table. It's one of the reasons why there's not much longevity for trial lawyers," Berg said.

He said he and Ramsey were schooled at a time when a local prosecutor, when sitting near the jury, was known to write scatological phrases on paper and show them to nearby cohorts when the defense made points.

He did so, Berg said, in a way nearby jurors might see also.

But Ramsey didn't argue that he wanted to humanize his client or that he fears jury tampering, though he does note a case he had in which a government agent "was caught, among other sins, slipping candy mints to the jury."

Instead, he argues, and is joined by Skilling's lawyer, that putting Skilling and Lay at the farther table "immerses them in a sea of blue suits and diminishes the nonverbal aspect of confrontation" mentioned in two U.S. Supreme Court cases about children having to testify in front of people accused of sexually abusing them.

The cases Ramsey cited split on whether the child witnesses can be screened or on closed-circuit TV to shield them from defendants. But both cases solidly confirm a defendant's right to face-to-face confrontation.

In the case denying a screen to shield a 13-year-old girl, Justice Antonin Scalia noted the phrase "Look me in the eye and say that" persists.

**'It's just the way it is'**

Though Lake, in the federal courthouse, offered a coin flip when both sides wanted the same table, in state court prosecutors automatically get to sit next to the jury.

Terry Wilson, a consultant to the Harris County District Attorney's Office, recalls in 1973 when he was a defense attorney just out of law school and sat down at the table closest to the jury. He was told by the prosecutor he had to move.

"I asked what made it his. He said, 'It's just the way it is.' The judge popped up and said the same thing," Wilson recalls.

State District Judge Caprice Cosper said in the Harris County Criminal Courthouse she could not find anyone who knew why.

She said people who had been around the courthouse for years figured that it might be because prosecutors were present more often and they got their books on the table first. Another possibility is that because the government usually presents the most witnesses in criminal cases, the prosecutors sat closer to the witness box and thus closer to the jury.

One lawyer surmised that some defendants in custody are considered physically dangerous and might be purposefully seated farthest away from jurors for safety concerns.

Kent Schaffer, a Houston criminal defense attorney, said it is perceived as an advantage. He agrees that if the jurors can see a defendant up close and personal, and in a likely four-month trial like Lay and Skilling's that could be especially important, they might have a harder time convicting them.

"The coin flip is pretty fair. I doubt the judge will back away from that. But if you don't ask, you don't get it," Schaffer said.

But as Wilson noted, there can be a drawback to being too close.

"A jury can sometimes be so close it can overhear co-counsel talking, that's not always what you want," Wilson said.

*mary.flood@chron.com*

# A fair trial doesn't mean a shut-off of all opinions

I

T'S my fault. That's what the attorneys for Ken Lay and Jeff Skilling would have you believe. If the toppled Enron kingpins don't get a fair trial here, it's in part because I keep referring to them with terms like that.

That's one of the arguments defense attorneys made in yet another motion filed Tuesday with U.S.



District Judge Sim Lake.

In the filing I am, quite literally, "Exhibit A," the chief tainter of potential jurors.

CONTINUED FROM PAGE D1

and selling of antiques.

This column is for people like Charles Prestwood, who called last week to remind me that he's still waiting. Prestwood is an Enron retiree I first wrote about last year. He was a year into retirement when Enron imploded and took his life savings with it. Prestwood joined a class-action lawsuit, but the case can't go to trial until the Lay-Skilling criminal proceeding is over.

He wanted to remind me that he's been waiting for his day in court, too; his shot at justice. That won't happen before at least October, when his case is scheduled to go to trial. By then, he will have been waiting for almost five years to put his life back together.

In the Enron case, my writings have been cited several times by defense attorneys when raising questions of jury bias and begging for a venue change. I write about them, and they, in turn, write about me. Now I

am writing about them writing about me writing about them. And, when *this* column ends up in the next motion — well, *you* get the idea.

It is a circuitous exercise signifying nothing.

I want Ken Lay and Jeff Skilling to get a fair trial, and I believe in the presumption of innocence — that Lay and Skilling aren't guilty unless a jury decides otherwise.

That may seem surprising because I have written some rather harsh words — OK, even mocking words — about Houston's most famous codefendants. I make no

apology for that.

This column does not exist to defend Lay and Skilling. They have their lawyers for that. Lay even has his own Web site to spin his views.

This column is for the others.

They are the people who lost everything and for whom "everything" is literal — homes, jobs, life savings, dreams. That's different from a tear-sodden wife bemoaning the loss of "everything" on national television. In that case, "losing everything" meant opening a storefront

*Please see* STEFFY, *Page D2*

It's important that Lay and Skilling are judged fairly by a jury of their peers. Nowhere, though, does the law say the rest of us must stifle our outrage over Enron's collapse until that justice is served. Jurors are simply asked to

set aside their biases and preconceptions and make a fair decision based on the evidence. People do that every day, in a host of jobs, from pastor to police officer.

The rest of the world doesn't abdicate its freedom of expression simply because the wealthy and powerful go on trial.

I believe justice will be served in Lay-Skilling case. Media coverage has been intense for big trials going back to Bruno Hauptmann and the Lindbergh kidnapping, which journalist H.L. Mencken called "the greatest story since the Resurrection."

Yet media coverage didn't convict O.J. Simpson or Michael Jackson. Here in Houston, one Enron defendant, Sheila Kahanek, was acquitted last year. By acquitting her while convicting others, jurors obviously set aside any Enron-related biases that they may have had and weighed the evidence.

In Birmingham, Ala., a jury last year acquitted Richard Scrushy, the former chief executive of HealthSouth, on

charges that he orchestrated a $2.7 billion fraud at the company. Scrushy was a hometown business hero, much as Lay was in Houston, and Scrushy used, just as Lay plans to, the doofus defense, that catch-all veil of convenient executive ignorance.

But Scrushy serves as a reminder that innocence doesn't absolve accountability.

Fair trial or not, guilty or not, Lay and Skilling presided over one of the greatest business failures in history. Blaming them for that, questioning their attempts to spin their poor management into victimization, doesn't convict them.

Lay and Skilling are entitled to their day in court, and the rest of us are entitled to express our opinions. You can find mine under "Exhibit A."

*Loren Steffy is the Chronicle's business columnist. His commentary appears Sundays, Wednesdays and Fridays. Contact him at loren.steffy @chron.com. His blog, Full Disclosure, is at blogs.chron .com/fulldisclosure.*

## STEFFY: Ex-employees still waiting for their day in court

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Enron

*Jan. 18, 2006, 12:53AM*

## THE FALL OF ENRON

# Defense again seeks time to question jurors

### Otherwise, lawyers request moving the trial

**By MARY FLOOD**
**Copyright 2006 Houston Chronicle**

Continuing to ask that they get more time to ask potential jurors questions or their trial be moved, former Enron executives Ken Lay and Jeff Skilling filed more court papers pushing their position Tuesday.

They provided U.S. District Judge Sim Lake, who                    ADVERTISEMENT
has ruled against moving the trial in the past and
does not appear to be ready to move it now, with affidavits from three local criminal defense attorneys and a California political science professor. All said publicity about the case and the answers of potential jurors on questionnaires warrant moving the case.

An alternative remedy of allowing the trial lawyers to question potential jurors when the case begins Jan. 30 is suggested as well, as it was in the papers filed by Lay and Skilling.

The affidavits focused on responses from 280 potential jurors, although more than 100 of them have been knocked off the panel.

The response from the Enron Task Force has not been filed. Prosecutor John Hueston asked Lake at the last hearing if the government even had to file anything in response. The judge said they should do so if they thought there was anything new in the motions that warranted a reply.

Lake has said in the past that because Lay, Skilling and the Enron story are known so well around the country, moving the trial made little sense to him.

Tuesday, defense attorneys filed many motions, asking among other things:

•That the case be put off another week because prosecutors went past the day they were expected to say how they might pare down the charges now that former chief accountant Rick Causey has pleaded guilty.
•That a specialist review handwritten documents the government has, including notes from people who are cooperating with prosecutors and the so-called Global Galactic agreement — a list of side deals allegedly initialed by former finance chief Andrew Fastow and Causey.
•That the judge reconsider a ruling allowing testimony Skilling gave to the Securities and Exchange Commission about stock sales near the time of the World Trade Center tragedy.

*mary.flood@chron.com*

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Enron
This article is: http://www.chron.com/disp/story.mpl/special/enron/3594324.html

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business

*Jan. 18, 2006, 1:43PM*

## THE ENRON TRIAL

# This is one motion that's really on the table

## Lawyers for Lay, Skilling ask judge to skip coin flip, give them coveted spot near the jury

**By MARY FLOOD**
**Copyright 2006 Houston Chronicle**

Enron's former corporate chieftains Ken Lay and Jeff Skilling do not want to call it heads or tails.

On Tuesday, they asked their judge to forgo a coin toss to see who gets the best courtroom table for their Jan. 30 fraud and conspiracy trial. They argue they have a right to the coveted table next to the jury because it offers the best view of the witness stand.

ADVERTISEMENT

In a letter to U.S. District Judge Sim Lake, Lay's lawyer Mike Ramsey argued Lay and Skilling have a claim on the table to meet their constitutional right to "face-to-face" confrontation with the witnesses against them.

Ramsey argued that computer monitors, lawyers, clerks, case agents and the podium can get in the way from the other table where "by stretching and craning, the defendants might occasionally make eye contact with the witnesses."

This is about sitting at one table or at another — a few feet away.

## Humanizing clients?

When Ramsey told Lake last week that he planned to ask for a halt to the coin flip, Lake kind of rolled his eyes and said he couldn't stop him from filing a motion.

But the prize here, in lawyer thinking, is the possibility that because you sit closer to the jury you are more humanized and they like you better and it gives you an edge. Trial lawyers love edges.

This table is so valued that young legal associates are frequently dispatched with piles of books to get dibs on this table hours before a jury arrives in civil cases.

David Berg, a Houston trial lawyer, once got in a physical fight trying to get the table.

"We get to court at 6 a.m. to stake out that table. It's one of the reasons why there's not much longevity for trial lawyers," Berg said.

He said he and Ramsey were schooled at a time when a local prosecutor, when sitting near the jury, was known to write scatological phrases on paper and show them to nearby cohorts when the defense made points.

He did so, Berg said, in a way nearby jurors might see also.

But Ramsey didn't argue that he wanted to humanize his client or that he fears jury tampering, though he does note a case he had in which a government agent "was caught, among other sins, slipping candy mints to the jury."

Instead, he argues, and is joined by Skilling's lawyer, that putting Skilling and Lay at the farther table "immerses them in a sea of blue suits and diminishes the nonverbal aspect of confrontation" mentioned in two U.S. Supreme Court cases about children having to testify in front of people accused of sexually abusing them.

The cases Ramsey cited split on whether the child witnesses can be screened or on closed-circuit TV to shield them from defendants. But both cases solidly confirm a defendant's right to face-to-face confrontation.

In the case denying a screen to shield a 13-year-old girl, Justice Antonin Scalia noted the phrase "Look me in the eye and say that" persists.

## 'It's just the way it is'

Though Lake, in the federal courthouse, offered a coin flip when both sides wanted the same table, in state court prosecutors automatically get to sit next to the jury.

Terry Wilson, a consultant to the Harris County District Attorney's Office, recalls in 1973 when he was a defense attorney just out of law school and sat down at the table closest to the jury. He was told by the prosecutor he had to move.

"I asked what made it his. He said, 'It's just the way it is.' The judge popped up and said the same thing," Wilson recalls.

State District Judge Caprice Cosper said in the Harris County Criminal Courthouse she could not find anyone who knew why.

She said people who had been around the courthouse for years figured that it might be because prosecutors were present more often and they got their books on the table first. Another possibility is that because the government usually presents the most witnesses in criminal cases, the prosecutors sat closer to the witness box and thus closer to the jury.

One lawyer surmised that some defendants in custody are considered physically dangerous and might be purposefully seated farthest away from jurors for safety concerns.

Kent Schaffer, a Houston criminal defense attorney, said it is perceived as an advantage. He agrees that if the jurors can see a defendant up close and personal, and in a likely four-month trial like Lay and Skilling's that could be especially important, they might have a harder time convicting them.

"The coin flip is pretty fair. I doubt the judge will back away from that. But if you don't ask, you don't

get it," Schaffer said.

But as Wilson noted, there can be a drawback to being too close.

"A jury can sometimes be so close it can overhear co-counsel talking, that's not always what you want," Wilson said.

*mary.flood@chron.com*

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Business
This article is: http://www.chron.com/disp/story.mpl/business/3594287.html

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Enron

*Jan. 18, 2006, 10:26PM*

# Prosecutors say Enron trial should stay put

**By MARY FLOOD**
**Copyright 2006 Houston Chronicle**

Enron prosecutors told a judge Wednesday that even Ken Lay and Jeff Skilling acknowledge there are "70 or so" potential jurors who have not shown any bias and thus there is no reason to move the Jan. 30 trial away from Houston.

It is highly unlikely that U.S. District Judge Sim Lake would move the trial at this point. Prosecutors argue that nothing has changed since the judge last told the defendants the case would not be moved.

ADVERTISEMENT

Lay and Skilling, facing charges of conspiracy and fraud, have said negative comments on jury questionnaires and the plea of codefendant Rick Causey mean the case should be moved or potential jurors individually questioned.

Prosecutors oppose both notions. They note there are enough unbiased jurors to find 12 jurors and four alternates.

"The defendants are entitled to a fair jury, not one that has been unexposed to media coverage or that comes to the case with no preconceived impression of the merits," the government response stated.

Prosecutors say the judge can be fair in questioning the potential jurors, and that no individual questioning of the entire panel, especially by lawyers, is necessary.

Prosecutors also told the court Wednesday that the government will take about nine weeks to present its case. That is assuming that cross-examination is equal in time to the government questioning of each witness.

That equal-time assumption is likely wrong. Defense attorneys usually present most of their case through cross-examination.

A witness like former finance chief Andrew Fastow is likely to be on the stand for days in cross-examination, no matter how few hours the government asks him questions.

Prosecutors also filed opposition to a defense request to have a specialist review handwritten documents the government has. The documents have been available for years and this is not a timely request, they argue.

*mary.flood@chron.com*

HoustonChronicle.com -- http://www.HoustonChronicle.com | Section: Enron
This article is: http://www.chron.com/disp/story.mpl/special/enron/3596647.html

.

# Full Disclosure
### A business blog with Loren Steffy

SEARCH                    IN   Chron.com                    · [ Go ]

ADVERTISING

« What's really missing? | Main

**January 18, 2006**

## All it needs is a halftime show

The closer we get to the Enron trial, the more it seems like another Super Bowl. First, there's the **massive influx** of reporters from around the world to offer up day-by-day coverage. Now, we find out the whole event starts with a **coin toss** to determine field position. Maybe Judge Sim Lake has a whistle and a robe with white stripes....

**Trackback Pings**

TrackBack URL for this entry:
http://blogs.chron.com/MT/mt-tb.cgi/4937

**Comments**

The Rolling Stones will be the half-time show at the SuperBowl. They could still perform this classic at the Enron trial;

Sympathy For The Devil (Jagger/Richards)

Please allow me to introduce myself,
I'm a man of wealth and taste.
I've been around for a long long year stolen many man's soul and faith...

...So if you meet me, have some courtesy have some sympathy and some taste.

Pleased to meet you hope you guess my name.
But what's puzzling you is the nature of my game.

(some songs are timeless) I dedicate this to Ken Lay and Jeff Skilling. Enjoy the half-time show guys, it's the last one you will see outside of prison for the rest of your lives.

Who knows what the judge is wearing under his robes!

Taylor, great observation!

Concerning another good theme song, how about Thirty Days in the Hole by Humble Pie?

BTW, if the trial gets moved, will they send you to cover it? :^D

Full Disclosure: All it needs is a halftime show

Well, in keeping with the Stones theme:
"Wild horses couldn't drag me a-waaay."

**Post a comment**

Name:

Email Address:

URL:

Remember Me? ○ Yes ○ No

Comments: (you may use HTML tags for style)

Preview   **Post**

http://blogs.chron.com/fulldisclosure/archives/2006/01/all_it_needs_is.html

**UNITED STATES DISTRICT COURT**          **SOUTHERN DISTRICT OF TEXAS**

|  |  |  |
|---|---|---|
| **United States of America** | § | |
| | § | |
| **v.** | § | **CASE NUMBER**   <u>CR H 04-25</u> |
| | § | |
| **Jeffery Skilling and Ken Lay** | § | |
| | § | |

**REPLY MEMORANDUM IN SUPPORT OF DEFDENDANTS'**

**RENEWED MOTION FOR CHANGE OF VENUE AND RELATED BRIEF**

**ATTACHMENT TO EXHIBIT A 1/18/06 EDITION OF USA TODAY**

**DOCUMENT CAN NOT BE SCANNED AND IS**

**ON FILE FOR VIEW IN THE CLERK'S OFFICE**

**DOCUMENT IS:**

[✓] **LOOSE IN FILE**

[ ] **IN VAULT SEALED**

[ ] **IN BROWN EXPANDABLE FOLDER**

**INSTRUMENT #_____**