```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


UNITED STATES OF AMERICA         §
                                 §
v.                               §   CRIMINAL NUMBER H-04-025-SS
                                 §
JEFFERY K. SKILLING and          §
KENNETH L. LAY                   §
```

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants' Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance (Docket Entry No. 643) filed on January 17, 2006, and Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence (Docket Entry No. 664) filed on January 23, 2006.

Defendants' January 17 filing seeks an order requiring the Task Force to produce a final revised Statement in Compliance, a revised version of the Indictment, and

> [s]o that . . . [they] may adequately respond to this filing and prepare their case, [defendants] . . . further request a one-week continuance of . . . [their] obligation to produce a revised exhibit list, a one-week continuance of . . . [their] January 23 deadline to meet and confer with the Task Force regarding exhibit list objections . . . and a one-week continuance of the trial. . . [Defendants also] ask that the Task Force still be required to identify its first five witnesses on January 27, 2005.[1]

---

[1] Defendants' Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance, Docket Entry No. 643, pp. 3-4.

By letter dated January 17, 2006, the Task Force provided defendants' counsel a redacted version of the Second Superseding Indictment (SSI).[2]  On January 20, 2006, the Task Force filed a Second Revised Statement in Compliance with Court's Order Dated November 2, 2004 (Docket Entry No. 659).  Defendants' motion to compel the production of these documents is therefore moot.  On January 19, 2006, defendants acknowledged that they timely produced a revised exhibit list to the Task Force,[3] and on January 23, 2006, counsel for the defendants met with members of the Task Force to confer about exhibit lists in the court's jury room.  Defendants' request for a one-week continuance to complete these tasks is therefore also moot.

In a filing made on January 23, 2006, defendants reurged their request for a continuance of the January 30, 2006, trial and they seek three additional forms of relief:[4]

> First, defendants . . . seek a new indictment returned by a grand jury that makes clear what charges defendants face and confirms that a grand jury would actually indict defendants on the case the Task Force now wishes to

---

[2]See Exhibit A attached to Defendants' Further Submission in Support of Their Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance (Docket Entry No. 654).

[3]See Defendants' Further Submission in Support of Their Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance (Docket Entry No. 654), p. 1.

[4]See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence (Docket Entry No. 664).

> try. . . .  In the alternative, defendants request an order barring the Task Force from proceeding to trial on the 13 new alleged false statements added to the Statement in Compliance, as well as the transactions struck in its proposed revised indictment and the Global Galactic agreement. . . .  Third, if the [c]ourt allows the new charges to stand, defendants require <u>at least</u> a 30-day continuance to defend against them. . . .  Even if the new charges are not allowed, defendants still require an additional week to prepare for trial.[5]

### I. **Defendants' Request for a New Indictment**

Asserting that their "right to be indicted by a grand jury cannot be abridged or circumscribed,"[6] defendants argue that they "seek a new indictment returned by a grand jury that makes clear what charges defendants face and confirms that a grand jury would actually indict defendants on the case the Task Force now wishes to try."[7]  The Task Force argues that the "defendants may protect their Fifth Amendment right to be tried on an indictment returned by the grand jury by objecting to evidence that, in their view, would constructively amend the Superseding Indictment or by filing an appropriate motion at the close of the government's evidence,"[8] but they cannot force the government to seek a superseding indictment.  The court agrees.

---

[5] <u>Id.</u> at pp. 1-2.

[6] <u>Id.</u>

[7] <u>Id.</u>

[8] Government's Opposition to Defendants' Further Supplement to Their Emergency Motions and Request to Strike Matters and Evidence, Docket Entry No. 675, p. 1.

The Fifth Amendment to the United States Constitution allows criminal prosecutions only on the basis of an indictment returned by a grand jury. U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ."). Consequently, only a grand jury can amend an indictment. See United States v. Gonzales, ___ F.3d ___ 2006 WL 118276, *10 (5th Cir. January 17, 2006) (citing Stirone v. United States, 80 S.Ct. 270 (1960)). Although in Gonzales the Fifth Circuit recognized that a constructive amendment to an indictment can occur when an action of the judge or prosecutor allows the jury "to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged," id., in United States v. Miller, 105 S.Ct. 1811, 1820 (1985), the Supreme Court held that a variance between the indictment and the proof offered at trial that does not broaden the possible bases of conviction beyond what is alleged in the indictment does not constitute an impermissible constructive amendment. See id. (citing Miller). Since the redacted indictment seeks to narrow and not broaden the bases for conviction, the court is not persuaded that it constitutes an impermissible constructive amendment.

Moreover, since the indictment is not evidence, see United States v. Sutherland, 656 F.2d 1181, 1202 (5th Cir. Unit A 1981), the jury only needs to receive a summary of the charges

-4-

alleged in it at the beginning of trial and instructions on the elements of the charged offenses at the end of trial. See United States v. Anderson, 174 F.3d 515, 524 (5th Cir. 1999) (recognizing that the jury need not hear or see the indictment). In its response to the defendants' recent filings, the Task Force "requests that the court not read the Superseding Indictment to the jury or give the indictment to the jury during deliberations."[9] The court will not read the indictment to the jury at the beginning of trial; and if the court decides either to read or to provide the redacted indictment to the jury, the court will provide counsel for all parties an opportunity to address the form of the redacted indictment to be presented to the jury.

## II.  Request to Strike

Defendants request an order barring the Task Force from proceeding to trial on the 13 new allegedly false statements added to the Statement in Compliance, as well as the transactions abandoned in its redacted indictment, and the Global Galactic agreement.[10] Defendants argue that eliminating these new and abandoned allegations will shorten the trial and protect their due process rights to a fair trial.

---

[9] Id. at p. 4.

[10] Id. at p. 2.

### A.   Thirteen New Allegedly False Statements

Defendants argue that the government's revised Statement in Compliance prejudices them by adding 13 new allegedly false statements attributed to Skilling and Lay.  Defendants concede, however, that only "[t]hree of the new false statements come from brand new conference calls," i.e., conference calls that have not been alleged in the SSI, and admit that "[t]he remainder come out of analyst calls [that have] previously [been] identified in [either] the indictment or [the] Statement in Compliance."[11]  For the reasons explained below the court is not persuaded that any of the newly identified statements should be stricken because they "introduce new areas to the case."[12]

#### 1.   Skilling

Eight of the newly disclosed false statements are attributed to Skilling.[13]  As demonstrated by the Task Force,[14] all but one of the newly alleged statements attributed to Skilling were made during calls that are not only alleged in the SSI but form the

---

[11] See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence (Docket Entry No. 664), at p. 5.

[12] Id.

[13] Id. at pp. 5-6.

[14] See Government's Opposition to Defendants' Further Supplement to Their Emergency Motions and Request to Strike Matters and Evidence, Docket Entry No. 675, pp. 6-8.

basis of separate counts and/or overt acts alleged in furtherance of the conspiracy charged in count 1: i.e., Statements 1 and 2 were allegedly made during the March 23, 2001, analyst call described in ¶¶ 68-69 of the SSI and separately charged as count 24 and overt act i; Statements 3 and 4 were allegedly made during the April 17, 2001, analyst call described in ¶¶ 70-71 of the SSI and separately charged as count 25 and overt act k; Statements 6 and 7 were allegedly made during the July 12, 2001, analyst call described in ¶¶ 72-73 and separately charged as count 26 and overt act m; and Statement 8 was allegedly made during the January 25, 2001, annual analyst call described in ¶¶ 66-67 and separately charged as count 23 and overt act h.  Defendants cannot be surprised by statements that were made during analyst calls that are alleged both as separate counts of the indictment and as overt acts done in furtherance of the conspiracy charged in count 1.

Statement 5, however, was allegedly made during an April 17, 2001, CNBC "CEO" call that the government admits is not alleged anywhere in the SSI.[15]  Although the government asserts that this statement "falls squarely into the indictment's allegations that Enron tried to conceal from the public the true source of its earnings, as alleged in paragraph 56 of the indictment,"[16] unless

---

[15] Id. at p. 7.

[16] Id.

and until the government demonstrates that this statement relates to conduct that is charged in the SSI, the government is **ORDERED** to approach the bench before referring to the April 17, 2001, CNBC "CEO" call, or eliciting testimony about it.

2.  Lay

Five of the newly disclosed false statements are alleged against Lay.[17] As demonstrated by the Task Force, Statements 12 and 13 attributed to Lay were made during the October 23, 2001, all employee meeting described in ¶ 84 of the SSI and separately charged as overt act t made in furtherance of the conspiracy charged in count 1.  See SSI ¶ 88t.  The remaining three newly alleged false statements attributed to Lay are alleged to have been made during events that are not described in the SSI, i.e., an August 14, 2001, conference call (Statements 9 and 10), and an August 16, 2001, employee meeting (Statement 11).  However, since the content of each of these three statements is substantially similar to statements that are either alleged in the SSI or set forth in an earlier version of the Government's Statement in Compliance, the court is not persuaded that defendants can reasonably claim to be surprised at being called upon to defend against them.

---

[17]See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence, Docket Entry No. 664, pp. 6-7.

Statement 9 alleges that following Skilling's departure from Enron, Lay stated that there were no accounting issues, no trading issues, no reserve issues, and no unknown issues.  Lay cannot reasonably be surprised at being called upon to defend this statement because the Task Force attributed a virtually identical statement to Lay in the Revised Statement of Compliance filed on November 4, 2005.[18]  Statements 10 and 11 allege that Lay lied about the success and profitability of Enron Energy Services (EES) during an August 14, 2001, conference call and an August 16, 2001, all-employee meeting.  Although neither the August 14, 2001, conference call nor the August 16, 2001, all-employee meeting are alleged in the SSI, Lay cannot reasonably be surprised at being called upon to defend these statements because ¶ 81 of the SSI alleges that "immediately after the announcement of Enron's third quarter earnings results, Lay and other senior Enron executives held a series of meetings, or roadshows, with analysts and large institutional investors" at which they falsely touted EES's success.  See SSI ¶ 81.

3.  Amendments to the Indictment

Although defendants argue that by including new statements in the Task Force's Second Revised Statement in Compliance "[t]he Task

---

[18] See Revised Statement of Compliance with Court's Order Dated November 2, 2004, Docket Entry No. 512, p. 16.

-9-

Force is eviscerating the defendants' constitutional right to proceed to trial solely on charges alleged by the grand jury," and attempting to "amend the indictment unencumbered by the grand jury to which defendants are constitutionally entitled,"[19] defendants' argument fails to acknowledge that the statements included in the Statement(s) in Compliance are not charges that the defendants are required to answer but evidence that the Task Force intends to use to prove the charges that are alleged in the indictment.  While the Fifth Circuit has recognized that an indictment can be impermissibly amended when an action of the judge or prosecutor allows the jury "to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged," id., the Supreme Court has held that a variance between the indictment and the proof offered at trial that does not broaden the possible bases of conviction beyond what is alleged in the indictment does not constitute an impermissible constructive amendment.  See Miller, 105 S.Ct. at 1820.  Although the Revised Statement in Compliance has broadened (slightly) the proof that the government intends to offer at trial, the court is not persuaded that the Revised Statement in Compliance has constructively amended the indictment because defendants have not shown that proof of the

---

[19]Defendants' Reply to Government's Opposition to Defendants' Further Supplement to Their Emergency Motions and Request to Strike Matters and Evidence, as yet undocketed instrument filed January 26, 2006, p. 3.

newly alleged statements will allow the jury to convict the defendants upon a factual basis that effectively modifies an essential element of the offenses charged.

**B.     Global Galactic and Other Transactions**

Defendants argue that they are not prepared to defend the alleged Global Galactic Agreement and/or a number of transactions because they were only alleged as to Causey.[20]  Accordingly, defendants complain that government abandoned part, but not all, of ¶ 43 of the SSI, which mentions not only Global Galactic but also side deals between Enron and LJM concerning the Nigerian Barges, Cuiaba, and the "put" in Raptor I.  The government argues that the Global Galactic Agreement "remains relevant because as indicated in discovery and Jencks material provided to defendants, it encompasses deals involving defendant Skilling."[21]  The Global Galactic Agreement is expressly alleged in the SSI at ¶ 43. Although ¶ 43 only alleges that the Global Galactic Agreement was initialed by Causey and Fastow, under the heading "Principal Conspirators and Their Roles at Enron" the SSI identifies Causey and Fastow as co-conspirators of Skilling and Lay.  See SSI ¶¶ 9,

---

[20]See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence, Docket Entry No. 664, pp. 11-12.

[21]See Government's Opposition to Defendants' Further Supplement to Their Emergency Motions and Request to Strike Matters and Evidence, Docket Entry No. 675, pp. 6-8.

12-13. Since the SSI identifies Causey and Fastow as Skilling and Lay's co-conspirators, neither Skilling nor Lay should be surprised by the potential of having to defend themselves against statements made in furtherance of the conspiracy by these alleged co-conspirators.  Indeed, defendants do not argue that they were previously unaware of the Global Galactic Agreement or that they did not know that it could be admitted to prove, for example, the existence of a conspiracy, but instead argue that it will prejudice them because Causey's counsel was to have prepared the defense for it and because their forensic experts have been denied access to the original document(s).[22]  Since defendants fail to cite any persuasive authority that would support their motion to strike the Global Galactic Agreement, the court is not persuaded that it should be stricken.

### III.  Motion to Continue

Citing <u>United States v. Correa-Ventura</u>, 6 F.3d 1070, 1074 (5th Cir. 1993), defendants assert that "if the [c]ourt allows the new

---

[22]Defendants' Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance, Docket Entry No. 643, p. 1 (stating that "Mr. Causey and his legal team had agreed to take the laboring oar preparing significant areas of the case, including . . . the alleged Global Galactic agreement for which only Causey had been charged"); and Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of Request to Strike Matters and Evidence, Docket Entry No. 664, p. 12 (asserting that "the Task Force will not give us access to the document to enable our forensic expert to examine it").

charges to stand . . . [they] require at least a 30-day continuance to defend against them."[23] Defendants also argue that even if the new charges are not allowed, they will require an additional week to prepare for trial because a number of issues still need to be resolved.[24]

### A. Standard of Review

Trial judges have broad discretion in ruling on motions to continue. See Correa-Ventura, 6 F.3d at 1074. Denial of a defendant's motion for continuance will be reversed only when the district court abuses its discretion and the defendant suffers serious prejudice. Id. (citing United States v. Kelly, 973 F.2d 1145, 1147-1148 (5th Cir. 1992)). See also United States v. Pollani, 146 F.3d 269, 272 (5th Cir. 1998) (citing Avery v. Alabama, 60 S.Ct. 321, 322 (1940)). Factors that courts consider in determining whether to grant requests for continuance for additional time to prepare for trial are (1) the amount of preparation time available, (2) whether the defendant took advantage of the time available, (3) the likelihood of prejudice from a denial, (4) the availability of discovery from the prosecution, and (5) the complexity of the case. See United States

---

[23] See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence, Docket Entry No. 664, pp. 8-9.

[24] Id.

v. Messervey, 317 F.3d 457, 461-462 (5th Cir. 2002) (citing United States v. Uptain, 531 F.2d at 1281, 1286-1287 (5th Cir. 1976)).  Each situation is to be evaluated on a case-by-case basis in light of all the circumstances.  Id. (citing Kelly, 973 F.2d at 1147-1148).  See also Ungar v. Sarafite, 84 S.Ct. 841, 850 (1964) ("The answer must be found in the circumstances present in every case, particularly the reasons presented to the trial judge at the time of the request.").

**B.   Analysis**

Defendants argue that "without additional time, it is manifestly unfair to require . . . [them] to prepare to defend these new charges" made by the 13 new allegedly false statements included in the Government's Second Revised Statement in Compliance.[25]

Defendants concede that only "[t]hree of the new false statements come from new [i.e., not previously alleged] conference calls.[26]  Moreover, defendants admit that "[t]he remainder come out of analyst calls previously identified in the indictment or Statement in Compliance."[27]  Since the court has already concluded

---

[25] Id. at p. 7.

[26] Id.

[27] See Defendants' Further Supplement in Support of Their Emergency Motions of Last Week and in Support of a Request to Strike Matters and Evidence, Docket Entry No. 664, p. 5.

that only one of these newly alleged statements lacks any obvious connection to charges alleged in the SSI, i.e., the statement attributed to Skilling in the April 17, 2001, CNBC "CEO" call, and since the court has already ordered the government to approach the bench before referring to this call or eliciting testimony about it, the court is not persuaded that it is manifestly unfair to deny defendants' motion for a 30-day continuance to prepare defenses to this newly identified statement.

By filing two supplemental statements in compliance the government has consistently narrowed the case. Now, by means of the redacted indictment, the government has narrowed the case even further by agreeing to dismiss certain counts alleged against Skilling and agreeing not to offer evidence of certain transactions in support of the remaining counts. Before the government's filing of the redacted indictment and the Second Revised Statement in Compliance, the defendants' trial preparation necessarily included a greater number of allegedly false statements than they now face at trial. Since the defendants were previously ready to start trial on a larger number of statements than will now be at issue, the court is not persuaded that defendants need a 30-day continuance to prepare defenses to the newly alleged false statements, or that they will be prejudiced by the court's failure to grant them a continuance. Nor is the court persuaded that the defendants' previous reliance on Causey's counsel to defend the

Global Galactic Agreement or the Task Force's refusal to allow defendants' forensic expert the ability to examine that agreement cause to continue the trial.

### IV.  Conclusions and Order

For the reasons explained above, defendants' motion to compel the production of a revised statement in compliance and a redacted second superceding indictment is **MOOT**, defendants' motion for a one-week continuance to produce a revised exhibit list and to meet and confer with the Task Force about exhibit lists is **MOOT,** defendants' motion for a new indictment is **DENIED**, Defendants' Motion to Strike is **DENIED,** but the government shall not elicit testimony regarding the April 17, 2001, CNBC "CEO" call without first approaching the bench to obtain a ruling from the court, and defendants' motion for continuance is **DENIED**.  Accordingly, Defendants' Motion to Compel Production of Revised Statement in Compliance and One-Week Continuance (Docket Entry No. 643) is **MOOT in part** and **DENIED in part.**

**SIGNED** at Houston, Texas, on this 26th day of January, 2006.

SIM LAKE
UNITED STATES DISTRICT JUDGE