```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


UNITED STATES OF AMERICA,       §
                                §
            Plaintiff,           §
                                §
v.                              §    CRIMINAL NUMBER H-04-025
                                §
JEFFERY K. SKILLING and         §
KENNETH L. LAY,                 §
                                §
            Defendants.          §
```

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Arthur Andersen, LLP's Motion to Quash Subpoena (Docket Entry No. 836). For the following reasons the motion will be granted.

## I. Introduction

On March 28, 2006, defendants issued a subpoena under Fed. R. Civ. P. 17(c) to "Custodian of Records, Arthur Andersen LLP" commanding him or her "to appear" in this court to testify in this case and to bring

> [t]he <u>original</u> documents relating to Arthur Andersen's work for Enron Corporation and its related companies and affiliates described in Attachment B. For identification purposes, the specific documents sought are described in Attachment B by the Bates Numbers used by Arthur Andersen in related litigation. To the extent that a Bates Number range included as an identifier for any document sought in Attachment B describes only a portion of an original work paper or document, that specific request should be

>    treated as a request for the entire original document
>    containing that particular Bates Number range.[1]

Asserting that defendants already have copies of the documents sought in the subpoena, Arthur Andersen seeks to quash the subpoena.  Arthur Andersen argues that "[d]efendants' document subpoena — for documents that [d]efendants already have — is simply an attempt to circumvent the Rules of Evidence and admit into evidence a massive quantity of material concerning scores of transactions that are far beyond the matters at issue in this case."[2]

## II.  Applicable Law

Federal Rule of Criminal Procedure 17(c) "governs the issuance of subpoenas <u>duces tecum</u> in federal criminal proceedings." <u>United States v. Nixon</u>, 94 S.Ct. 3090, 3102 (1974).  Rule 17(c) provides:

>    (1)  **In General**.  A subpoena may order the witness to
>         produce any books, papers, documents, data, or
>         other objects the subpoena designates.  The court
>         may direct the witness to produce the designated
>         items in court before trial or before they are to
>         be offered in evidence.  When the items arrive, the
>         court may permit the parties and their attorneys to
>         inspect all or part of them.
>
>    (2)  **Quashing or Modifying the Subpoena**.  On motion made
>         promptly, the court may quash or modify the

---

[1] Exhibit G attached to Arthur Andersen, LLP's Motion to Quash Subpoena, Docket Entry No. 836, Attachment A.

[2] Arthur Andersen, LLP's Motion to Quash Subpoena, Docket Entry No. 836, p. 1.

>     subpoena if compliance would be unreasonable or
>     oppressive.

Every Rule 17(c) subpoena must be a "good faith effort . . . to obtain evidence," and the court's power to quash or modify subpoenas may be used to ensure that Rule 17(c) is used only for that purpose. United States v. Arditti, 955 F.2d 331 (5th Cir.), cert. denied, 113 S.Ct. 597 (1992) (quoting Bowman Dairy Co. v. United States, 71 S.Ct. 675, 678-679 (1951)). The party seeking access to materials under a Rule 17(c) subpoena bears the burden of showing that (1) the subpoenaed document is relevant, (2) admissible, and (3) has been requested with adequate specificity. Id. (citing Nixon, 94 S.Ct. at 3103). "The relevance and specificity elements require more than the title of a document and conjecture as to its contents." Id.

### III.  Analysis

Arthur Andersen argues that the defendants' Rule 17(c) subpoena should be quashed because it fails to identify specific, relevant, admissible evidentiary documents.

**A.  Specificity**

Specificity serves to prevent a subpoena from being converted into a license for what the Supreme Court in Bowman Dairy, 71 S.Ct. at 679, decried as a "fishing expedition to see what may turn up." United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997). The specificity requirement is intended to provide the subpoenaed

-3-

party with enough knowledge about the documents being requested to lodge objections based on relevancy and admissibility. Id. (citing Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977)).

Asserting that defendants "have requested not one file — but over 120 different files, reflecting work performed over several years across 7 different Enron affiliated businesses [and that d]efendants have even requested hundreds of pages of Andersen's internal procedures — which are not specific to Enron and solely relate to Andersen's operations,"[3] Arthur Andersen argues that defendants' Rule 17(c) subpoena is a "fishing expedition that fails to identify specific evidential documents."[4]  Defendants respond that by issuing their Rule 17(c) subpoena they have not embarked upon a "fishing expedition" but, instead,

> have identified 180 specific files by bates number that correspond to audit and review activities for specific business units for the years 1999, 2000, and 2001.  This is but a small percentage of the over 2,000 working paper files (constituting hundreds of thousands of pages) that Andersen produced in related litigation, and there is no question about the identity of the files being sought. The files may contain a lot of pages, but that is because they document the extensive work Andersen did to investigate and verify Enron's accounting for the transactions and events at issue in this case.[5]

---

[3] Id. at p. 8.

[4] Id.

[5] Defendants' Joint Opposition to Arthur Andersen's Motion to Quash Subpoena, Docket Entry No. 851, p. 5.

The work papers that defendants' subpoena seeks are identified by title of the resulting document, e.g., Enron Corp-Earnings Release & 10Q-1st Qtr 2001, by exhibit number, and by Arthur Andersen Bates Stamp numbers. These descriptions of the work papers sought by the subpoena are not limited to document titles and conjecture about their contents but expressly identify specific sets of documents by individual page numbers. The court concludes that defendants' subpoena does not fail for lack of specificity because its page-by-page description of the documents sought provides Arthur Andersen enough information to lodge objections based on relevancy and admissibility. See Ruedlinger, 172 F.R.D. at 456.

**B.  Relevancy**

Relevancy requires the moving party to show a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment." Arditti, 955 F.2d at 345 (citing Nixon, 94 S.Ct. at 3103). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Absent detailed information about the documents sought in a Rule 17(c) subpoena, a court is only left "to speculate as to the specific nature of their contents and its relevance." Id. at 346. Conclusory allegations of relevance are insufficient. Ruedlinger, 172 F.R.D. at 456.

Defendants assert that

> the documents at issue are relevant and important to defendants' case because they show the scope of the work Andersen did for Enron and the information Andersen possessed about Enron. Both of these points are critical to showing defendants' good faith reliance on Andersen's advice and for proving a lack of criminal intent. For example, the working papers for the EES, ENA, and Corporate business units for the first and second quarters of 2001 demonstrate unequivocally that Andersen was fully aware of the alleged EES losses that the Task Force and its witnesses have sought to portray as being "hidden" in a giant accounting fraud. These particular files demonstrate that Andersen reviewed and approved the accounting and disclosures for Enron with full knowledge of such information — making them relevant and admissible both as business records and under the completion doctrine to give the jury a "complete understanding" of what information went into preparation of the financial statements the Task Force alleges are false and misleading. *See* Redacted Superseding Indictment at ¶¶ 83-84; *Phoenix Assocs. v. Stone*, 60 F.3d 95, 102-03 (2d Cir. 1995)(working papers admissible as business records and under Fed. R. Evid. 106). Other examples too numerous to cite in this response cover the myriad subjects the Task Force has portrayed as fraudulent in this trial. They include Andersen's review of the accounting and disclosures related to subjects such as the formation, restructuring and unwind of the Raptors, Enron's reserves, gains recognized in EES and EBS due to monetizations, impairment analysis for Enron's international assets, and Andersen's GAAS review of Enron's third quarter 2001 press release and 10-Q (on which Andersen claims not to have signed off, but for which Andersen undisputedly did significant work that is documented in its working papers).[6]

Defendants do not dispute Arthur Andersen's assertion that they already have copies of the documents that they seek, and at the close of trial of Monday, April 10, 2006, defendants confirmed that they possess copies of the documents sought in their

---

[6] *Id.* at p. 7.

Rule 17(c) subpoena.  Defendants' conclusory description of the evidence contained in the original documents that they seek from Arthur Andersen and their failure to explain why that evidence is relevant to the charges for which they are being prosecuted are insufficient to satisfy Rule 17(c)'s relevancy requirement.  See Adritti, 955 F.2d at 346 (without detailed information on the documents sought in the Rule 17(c) subpoena, a court is only left "to speculate as to the specific nature of their contents and its relevance").

**C.   Admissibility**

Admissibility requires a movant to make a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged in the indictment." Nixon, 94 S.Ct. at 3104.  Conclusory allegations of admissibility are insufficient.  Ruedlinger, 172 F.R.D. at 456.

Asserting that "given the extensive evidence of fraud and concealment by Enron personnel" it cannot testify that the source of the information for its documents has the required indicia of reliability to meet the business record exception to the hearsay rule, Arthur Andersen argues that the documents defendants seek are inadmissible because they lack trustworthiness.[7]  Asserting that they

---

[7] Id. at pp. 10-11.

>  merely seek an affidavit or testimony from a custodian to
>  establish the work Andersen performed and the information
>  Andersen got from Enron, *regardless of the truth of that
>  underlying information*[, and that a]n Andersen custodian
>  would testify to the trustworthiness of the methods by
>  which information was gathered for Andersen's records —
>  that is, Andersen's audit, review, and record-keeping
>  procedures — not the accuracy of what Andersen was told,[8]

defendants respond that "[i]f there is actual *evidence* of untrue or unreliable facts being provided to Andersen by Enron (which defendants dispute), then the Task Force can argue to the jury that Andersen's records should be given less weight in deliberations."[9] Arguing that "these documents should be produced by a custodian who can testify to the procedures by which the information in the files [was] obtained and the files themselves created, and admitted into evidence as the regularly maintained business records they so obviously are,"[10] defendants

> respectfully ask the Court to order Andersen to present
> a knowledgeable custodian or other person(s) to establish
> through affidavit or testimony the elements of the
> business records exception under Federal Rule of Evidence
> 803(6) for the specific documents defendants have
> identified in their subpoena. Alternatively, Defendants
> ask the Court to undertake a review of these documents
> and to find on the basis of circumstantial evidence that
> these documents are facially and obviously business
> records documenting Andersen's work at Enron and to admit
> them into evidence under Federal Rules of Evidence 106,
> 803(6), or 807.[11]

---

[8] Defendants' Joint Opposition to Arthur Andersen's Motion to Quash Subpoena, Docket Entry No. 851, p. 4.

[9] Id.

[10] Id. at p. 12.

[11] Id. at pp. 12-13.

1.  Rule 803(6)

803(6) of the Federal Rules of Evidence states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

6) Records of Regularly Conducted Activity. -- A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Whether evidence is admissible under Rule 803(6) is "chiefly a matter of trustworthiness." Mississippi River Grain Elevator, Inc. v. Bartlett & Co. Grain, 659 F.2d 1314, 1319 (5th Cir. 1981). See also United States v. Morrow, 177 F.3d 272, 295 (5th Cir.) (per curiam), cert. denied, 120 S.Ct. 333 (1999); United States v. Box, 50 F.3d 345, 355-356 (5th Cir. 1995); United States v. Veytia-Bravo, 603 F.2d 1187, 1188-1189 (5th Cir. 1979), cert. denied, 100 S.Ct. 686 (1980). In Box the court explained that

> [t]he trial court has broad discretion to determine the admissibility of the documents. . . . A qualified witness is one who can explain the system of record keeping and vouch that the requirements of Rule 803(6) are met; the witness need not have personal knowledge of

      the record keeping practice or the circumstances under which the objected to records were kept.

50 F.3d at 356 (citing <u>United States v. Iredia</u>, 866 F.2d 114, 119-20 (5th Cir.), <u>cert. denied</u>, 109 S.Ct. 3250 (1989).[12] Nevertheless, Rule 803(6) expressly states that a document cannot be a business record if "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

     Asserting that the documents defendants seek are inadmissible under Rule 803(6) because evidence adduced at this trial demonstrates that those documents are untrustworthy because Enron concealed material information from its auditors, Arthur Andersen argues that the subpoenaed documents should not be admitted under an exception to the hearsay rule for the truth of the matter stated. Responding that they "merely seek an affidavit or testimony from a custodian to establish the work Andersen performed and the information Andersen got from Enron, *regardless of the truth of that underlying information*,"[13] defendants argue that "[a]n Andersen custodian would testify to the trustworthiness of the

---

[12] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The parties have stipulated that Arthur Andersen's work papers are authentic. See Stipulation Regarding Evidentiary Matters, Docket Entry No. 700.

[13] Defendants' Joint Opposition to Arthur Andersen's Motion to Quash Subpoena, Docket Entry No. 851, p. 4.

methods by which information was gathered for Andersen's records — that is, Andersen's audit, review, and record-keeping procedures — not the accuracy of what Andersen was told."[14]  Defendants also argue that "[i]f there is actual *evidence* of untrue or unreliable facts being provided to Andersen by Enron (which defendants dispute), then the Task Force can argue to the jury that Andersen's records should be given less weight in deliberations."[15]

Defendants cite no authority in support of their argument that documents are admissible under Rule 803(6) "regardless of the truth of th[e] underlying information,"[16] and the court concludes that this argument contradicts Rule 803(6)'s express provision that records maintained in the course of a regularly conducted business activity are excepted from the hearsay rule "unless the <u>source of information</u> . . . indicate[s] lack of trustworthiness."  Fed. R. Evid. 803(6).

The Note to Paragraph (6) following Rule 803 explains

> [s]ources of information presented no substantial problem with ordinary business records.  All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, "in the regular course of business."  If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information

---

[14]<u>Id.</u>

[15]<u>Id.</u>

[16]<u>Id.</u>

> itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.

Although Arthur Andersen does not dispute that the method and circumstances under which Andersen prepared the records was trustworthy, defendants' acknowledgment that the truthfulness of the information used to compile some if not all of the documents at issue is in dispute is sufficient to indicate a lack of trustworthiness that demands individual — as opposed to group — consideration of records said to number approximately 40,000 pages.

### 2. Rules 106 and 807

Defendants ask the court to "undertake a review" of the documents they seek via the Rule 17(c) subpoena "and to find on the basis of circumstantial evidence that these documents are facially and obviously business records documenting Andersen's work at Enron and to admit them into evidence under [Rule 807]."[17] Rule 106 provides

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Rule 807 provides

> [a] statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more

---

[17] Id. at pp. 12-13.

> probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . .

Since defendants have neither offered any argument nor cited any authority in support of their suggestion that the documents they seek are admissible under either of these two rules, the court concludes that they are not admissible under either of them.

## IV.  Conclusions and Order

Defendants bear the burden of showing that the documents they seek are specifically identified, relevant to the charges being prosecuted against the defendants, and are admissible as evidence in this case.  Although the court is persuaded that defendants have specifically identified the documents they seek, for the reasons explained above the court is not persuaded that defendants have carried their burden of showing that the documents are relevant or admissible.  Accordingly, Arthur Andersen, LLP's Motion to Quash Subpoena (Docket Entry No. 836) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 13th day of April, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE