IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA     §
    §
v.     §
    §      CRIMINAL NUMBER H-04-025
JEFFERY K. SKILLING and     §
KENNETH L. LAY,     §
    §
         Defendants.     §

## MEMORANDUM OPINION

During the government's case-in-chief the defendants informed the court that they intended to call witnesses who would invoke their Fifth Amendment privilege against self-incrimination. On May 4, 2006, the court ordered the parties to submit briefing on the issue. On May 5, 2006, the government submitted the United States' Response to Motion Establishing Protocol for Witnesses to Assert Fifth Amendment Privilege (Docket Entry No. 934), and the defendants submitted Defendants' Motion Requesting Court-Ordered Defense Witness Immunity (Docket Entry No. 953). The defendants sought to have immunized proposed witnesses Greg Whalley, Lou Pai, Jeff McMahon, Georgeanne Hodges, Janet Dietrich, Rick Buy, Dave Duncan, and Joe Hirko. On May 8, 2006, the court announced that the defendants' motions were denied (Docket Entry Nos. 938 and 940) and stated that the reasons for the denial would be explained in a subsequently issued Memorandum Opinion, which the court now issues.

## I.  <u>Introduction</u>

Prior to filing their motion for court-ordered defense witness immunity defendants subpoenaed each of the individuals they intended to call as witnesses.  Acting through their attorneys, each of these individuals notified defendants' counsel that they would exercise their Fifth Amendment privilege against self-incrimination.[1]  Asserting that "the bulk of the Task Force's 'percipient witnesses' — testified pursuant to plea or cooperation agreements or, in the case of former Enron Treasurer Ben Glisan, under government-requested and court-ordered immunity,"[2] defendants argue that they "seek to level the playing field by calling their own witnesses, including five former Enron executives and the former Enron engagement partner at Arthur Andersen,"[3] but that "[f]earing Task Force reprisal and possible indictment, none will testify voluntarily."[4]  Defendants thus "request immunity for seven witnesses who they, in good faith believe, would provide exculpatory testimony."[5]  Since "*none of the seven witnesses . . .*

---

[1]See Exhibit 3 attached to Defendants' Motion Requesting Court-Ordered Defense Witness Immunity (Defendants' Motion).

[2]Defendants' Motion Requesting Court-Ordered Defense Witness Immunity (Defendants' Motion), p. 2.

[3]<u>Id.</u>

[4]<u>Id.</u> at p. 3.

[5]<u>Id.</u> at p. 4.  Defendants also request immunity for an eighth witness, former Broadband CEO Joe Hirko, but apparently conceding
(continued...)

is under indictment, [f]ive have never been indicted and one, David Duncan, previously pled guilty to crimes unrelated to Enron (Andersen shredding), but *with the Task Force's concurrence*, has already been permitted to withdraw his guilty plea,"[6] defendants argue that by refusing to immunize these witnesses the government "is exercising its immunity power not for legitimate prosecutorial purposes but to deny defendants a level playing field of evidence."[7]

## II.  Analysis

Citing <u>United States v. Follin</u>, 979 F.2d 374 (5th Cir. 1992), <u>cert. denied</u>, 113 S.Ct. 3004 (1993); <u>United States v. Chagra</u>, 669 F.2d 241 (5th Cir. Unit B), <u>cert. denied</u>, 103 S.Ct. 102 (1982); <u>United States v. Thevis</u>, 665 F.2d 616 (5th Cir.), <u>cert. denied</u>, 102 S.Ct. 2300 and 3489 (1982) and 103 S.Ct. 57 (1983), and <u>United States v. Garcia Abrego</u>, 141 F.3d 142 (5th Cir.), <u>cert. denied</u>, 119 S.Ct. 182 (1998), the government argues that the defendants' motion for defense witness immunity should be denied because in this circuit the court "lacks authority to grant immunity to a witness whom the government declines to immunize, and

---

[5](...continued)
that the government's refusal to immunize Hirko is not unreasonable acknowledging "that unlike the other witnesses Mr. Hirko is currently under indictment, has gone to trial that ended in a hung jury, and is scheduled to be tried again." <u>Id.</u> at p. 3 & n.2.

[6]<u>Id.</u> at p. 3.

[7]<u>Id.</u> at p. 4.

defendants cannot advance any ground that would allow departure from that rule."[8]

## A.   Applicable Law

The immunity sought for defendants' proposed witnesses is "use immunity," which is "[i]mmunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness."  Black's Law Dictionary, 754 (7th ed. 1999).  "Use immunity" is a statutory creation, and Congress has delegated the authority to grant "use immunity" solely to the executive branch of government.  18 U.S.C. §§ 6001-6004, esp. § 6002.  See United States v. Smith, 436 F.2d 787 (5th Cir.), cert. denied, 91 S.Ct. 1680 (1971).  In exercising this authority, the executive branch must balance "the public need for the particular testimony or documentary information in question against the social cost of granting immunity and thereby precluding the possibility of criminally prosecuting an individual who has violated the criminal law."  In re Daley, 549 F.2d 469, 478-479 (7th Cir.), cert. denied, 98 S.Ct. 110 (1977).  The exclusive nature of Congress's delegation and the fact that the balancing process is wholly within the expertise of the executive branch foreclose federal courts from taking more than a ministerial role

---

[8]United States' Response to Motion Establishing Protocol for Witnesses to Assert Fifth Amendment Privilege, Docket Entry No. 934, p. 1.

in prosecutorial immunity decisions that are properly made under 18 U.S.C. § 6003. Id. at 479. See also Thevis, 665 F.2d at 639-640 ("the immunity decision requires a balancing of public interests which should be left to the executive branch").

The Sixth Amendment right to compulsory process does not require a different result. The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." This clause ensures that a defendant has subpoena power to summon witnesses so that the jury may hear the defendant's version of the facts. See Washington v. Texas, 87 S.Ct. 1920, 1923 (1967). The Fifth Circuit has held that the right to compulsory process "does not suggest a right to supercede a witness' invocation of his own fifth amendment privilege or the right to demand that the government shield a witness from the consequences of his own testimony." Chagra, 669 F.2d at 260. See also Washington, 87 S.Ct. at 1925 n.21 (although the Sixth Amendment invalidated Texas statutes that prohibited persons charged or convicted as co-participants in the same crime from testifying for one another, the Court noted that "[n]othing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination").

The Supreme Court has not decided whether courts have inherent authority, derived from the defendant's due process right to

present exculpatory evidence, to grant non-statutory immunity to defense witnesses, and the circuit courts that have addressed the issue have produced divergent opinions. See Autry v. McKaskle, 104 S.Ct. 1458, 1460 & n.3 (1984) (Marshall, J., dissenting). The Seventh, Eighth, and District of Columbia Circuits have ruled that such immunity is not available. See, e.g., Daley, 549 F.2d at 479; United States v. Graham, 548 F.2d 1302, 1315 (8th Cir. 1976); Earl v. United States, 361 F.2d 531, 534-535 (D.C. Cir. 1966), cert. denied, 87 S.Ct. 2121 (1967).

The Third Circuit has recognized a Sixth Amendment-rooted right to immunization of a witness whose testimony would be exculpatory and essential to his defense. See United States v. Morrison, 535 F.2d 223 (3d Cir. 1976); United States v. Herman, 589 F.2d 1191 (3d Cir. 1978), cert. denied, 99 S.Ct. 2014 (1979); Government of Virgin Islands v. Smith, 615 F.2d 964 (3d Cir. 1980). In Herman the Third Circuit concluded:

> The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process. Where such a showing is made, the Court has inherent remedial power to require that the distortion be redressed by requiring a grant of use immunity to defense witnesses as an alternative to dismissal.

589 F.2d at 1204. In Smith the Third Circuit continued to define its Morrison ruling, holding the need for "judicial immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant

is prevented from presenting exculpatory evidence which is crucial to his case."  615 F.2d at 969.  The Third Circuit thus holds that where a witness has essential exculpatory evidence, a defendant is entitled to his immunized testimony by judicially conferred immunity unless outweighed by strong government interests.

The remaining circuits, including the Fifth Circuit, have denied immunity in specific cases, but left open the question whether judicial immunity would ever be available.  See Thevis, 665 F.2d at 639 (citing United States v. Turkish, 623 F.2d 769, 771-779 (2d Cir. 1980), cert. denied, 101 S.Ct. 856 (1981); United States v. Lenz, 616 F.2d 960, 962-964 (6th Cir.), cert. denied, 100 S.Ct. 3028 (1980); United States v. Klauber, 611 F.2d 512, 517-520 (4th Cir. 1979), cert. denied, 100 S.Ct. 1835 (1980); United States v. Alessio, 528 F.2d 1079, 1081-1082 (9th Cir.), cert. denied, 96 S.Ct. 3167 (1976)).

In Thevis the defendants advanced two due-process-based arguments:  (1) that when testimony is "exculpatory and unavailable from any other source, due process requires immunity to preserve the integrity of the truth-finding function," 665 F.2d at 639; and (2) "that the government's granting immunity to its witnesses while denying immunity to [the defendants' prospective witness] skewed the evidence against [the defendants] and denied them a fair trial." 665 F.2d at 639.  Before holding that the defendant had no federal constitutional right to defense witness immunity under the

Due Process Clause of the Fifth Amendment simply because the testimony the defendant sought to immunize was both exculpatory and unavailable from any other source, id. at 639, the Fifth Circuit considered — and rejected — the Third Circuit's holdings on the availability of judicial immunity.  Id. at 638-640.  See also Chagra, 669 F.2d at 259.  Agreeing with the Second Circuit's conclusion that the role of dispensing immunity is not "a task congenial to the judicial function," Turkish, 623 F.2d at 776, the Fifth Circuit concluded that absent a showing of governmental abuse, "the immunity decision requires a balancing of public interests which should be left to the executive branch." Thevis, 665 F.2d at 639-640.

Since Thevis the Fifth Circuit has "consistently held that a district court does not possess the statutory, common law, or inherent authority either to grant use immunity to a defense witness over the government's objection or to order the government to do so." Chagra, 669 F.2d at 258 (citing Thevis, 665 F.2d at 638).  See also Follin, 979 F.2d at 374 ("District Courts have no inherent power to grant immunity.  A district court may not grant immunity simply because a witness has essential exculpatory evidence unavailable from other sources.").  Nevertheless, the Fifth Circuit has "suggested without deciding that the federal constitution may in some extraordinary circumstances require either defense witness immunity or some remedial action by a district

-8-

court to protect a defendant's right to a fair trial." <u>Chagra</u>, 669 F.2d at 258 (citing <u>United States v. Herbst</u>, 641 F.2d 1161, 1169 (5th Cir.), <u>cert. denied</u>, 102 S.Ct. 292 (1981)).  But the Fifth Circuit has never required a district court to grant judicial immunity or reversed a district court's denial of a defendant's request for court-ordered immunity, and the court's decisions "illuminate the underlying principle that a defendant only has grounds to complain about the treatment of a witness's immunity when the government is using its immunity privilege to unfairly skew the facts presented to the jury, thereby breaching the defendant's right to due process of law."  <u>United States v. Bustamante</u>, 45 F.3d 933, 943 (5th Cir.), <u>cert. denied</u>, 116 S.Ct. 473 (1995) (citing <u>Follin</u>, 979 F.2d at 374, and <u>Thevis</u>, 665 F.2d at 638-641).

## B.   Application of Law to Facts

Asserting that "[t]he government may refuse to immunize defense witnesses it legitimately intends to prosecute, but it may not selectively apply its immunity authority to skew the evidence,"[9] defendants argue "that is exactly what is happening here."[10]  Defendants' assertions that "the bulk of the Task Force's 'percipient witnesses' — testified pursuant to plea or cooperation

---

[9]Defendants' Motion Requesting Court-Ordered Defense Witness Immunity (Defendants' Motion), p. 1.

[10]<u>Id.</u>

agreements or, in the case of former Enron Treasurer Ben Glisan, under government-requested and court-ordered immunity,"[11] that "[f]earing Task Force reprisal and possible indictment, none [of the witnesses they seek to immunize] will testify voluntarily,"[12] and that the government has refused to immunize their witnesses "not for legitimate prosecutorial purposes but to deny defendants a level playing field of evidence,"[13] raise arguments that the government has abused its immunity power to unfairly skew the facts presented to the jury in three ways:  (1) by refusing to grant immunity to the defendants' proposed witnesses for illegitimate reasons; (2) by relying on a large number of witnesses whose testimony was induced by government incentives, including the immunized testimony of Ben Glisan, to prove its case against the defendants; and (3) by threatening reprisal and possible indictment to witnesses who agreed to testify for the defendants.

    1.  <u>Refusal to Immunize</u>

    Defendants argue that by refusing to immunize their proposed witnesses the government "is exercising its immunity power not for legitimate prosecutorial purposes but to deny defendants a level playing field of evidence,"[14] because "*none* of the seven witnesses

---

[11]<u>Id.</u> at p. 2.

[12]<u>Id.</u> at p. 3.

[13]<u>Id.</u> at p. 4.

[14]<u>Id.</u>

. . . is under indictment, [f]ive have never been indicted and one, David Duncan, previously pled guilty to crimes unrelated to Enron (Andersen shredding), but *with the Task Force's concurrence*, has already been permitted to withdraw his guilty plea."[15] Citing <u>Autry v. Estelle</u>, 706 F.2d 1394, 1402 (5th Cir. 1983), defendants argue that the court should immunize their proposed witnesses because (1) the government has no legitimate purpose for refusing immunity and (2) the government's refusal is intended to deprive them of essential exculpatory testimony.[16]  The court disagrees.

    (a)  Legitimate Reason to Refuse Request to Immunize

Asserting that despite intense investigation none of their proposed witnesses have been indicted and that "the statute of limitations for many of the possible alleged crimes has run or almost run,"[17] defendants argue that the government has no legitimate reason to refuse their request to immunize their proposed witnesses.  Defendants acknowledge, however, that the government's investigation of Enron's collapse is on-going, and that the statute of limitations has not yet run on all charges that could be brought against potential witnesses.

---

[15]<u>Id.</u> at p. 3.  Defendants also request immunity for an eighth witness, former Broadband CEO Joe Hirko, but apparently conceding that the government's refusal to immunize Hirko is not unreasonable acknowledge "that unlike the other witnesses Mr. Hirko is currently under indictment, has gone to trial that ended in a hung jury, and is scheduled to be tried again."  <u>Id.</u> & n.3.

[16]<u>Id.</u> at pp. 5-6.

[17]<u>Id.</u> at p. 6.

The court is not persuaded that the absence of pending charges against the defendants' proposed witnesses provides any cause, much less sufficient cause, for the court to infer that the government's refusal to immunize the defendants' proposed witnesses is based on an intent to skew the evidence presented to the jury instead of a legitimate consideration of the government's interest in prosecuting individuals who perpetrated or aided the perpetration of fraud at Enron.  See Bustamante, 45 F.3d at 944 (government's disclosure that person defendant sought to have immunized as a defense witness was an unindicted co-conspirator supported government's refusal to immunize because the proposed witness could have "outstanding criminal liability").[18]  The court concludes that the defendants have failed to establish that the government has no legitimate reason for refusing to immunize their proposed witnesses.

(b)  Essential Exculpatory Testimony

Asserting that "[t]he most reasonable inference is that the Task Force refuses to immunize these witnesses for one reason and one reason only: to deprive defendants of essential exculpatory testimony that would undercut what the government's cooperators

---

[18]Thevis, 665 F.2d at 640 & n.26 ("In the common situation in which the investigation is continuing, however, immunity may significantly interfere with the presentation of crucial evidence obtained after the immunity grant unless the prosecution takes such extraordinary steps to arrange for a new team of prosecutors . . . to continue the investigation.").

said on the stand," defendants attach as Exhibit 2 to their motion a chart of the testimony elicited by the government cooperators and their estimation of how they expect that their proposed witnesses would contradict the testimony of the government's witnesses. Although defendants' chart is a long document that outlines the testimony expected from each proposed witness, in their motion, defendants address only testimony from certain potential witnesses that they predict would contradict testimony given by government witnesses. Defendants argue that they expect that Whalley's testimony would contradict inculpatory testimony given by Dave Delainey about resegmentation, by Kevin Hannon about an Off Wall Street article, and by Andrew Fastow about a road show to Boston. Defendants also argue that they expect that Whalley and McMahon's testimony would contradict inculpatory testimony given by Ben Glisan about the Nigerian Barge transaction.[19]

The testimony that defendants expect the proposed witnesses would provide may be relevant and exculpatory, but it falls far short of being essential exculpatory evidence for the simple reason that defendants do not — and cannot — argue that these are the only witnesses capable of providing exculpatory evidence on these issues. When defendants filed their motion to immunize the proposed witnesses both defendants had testified and their

---

[19]Defendants' Motion Requesting Court-Ordered Defense Witness Immunity (Defendants' Motion), pp. 7-9.

testimony contradicted the government's evidence on these issues. At best, the anticipated testimony of Whalley and McMahon would be cumulative of the testimony of defendants and of other evidence presented by defendants. Accordingly, the court concludes that the defendants have failed to establish that the testimony that defendants seek to immunize would constitute essential exculpatory evidence.

(c)   Conclusions

Since defendants have failed to present any evidence from which the court could conclude that the government lacked a legitimate reason to refuse the defendants' request to immunize their proposed witnesses, or that, if immunized, the proposed witnesses would offer essential exculpatory testimony, the court concludes that it lacks authority to grant the defendants' request for witness immunity.  See Thevis, 665 F.2d at 638-641.

2.   Incentivized Testimony

By asserting that "the bulk of the Task Force's 'percipient witnesses[] testified pursuant to plea or cooperation agreements or, in the case of former Enron Treasurer Ben Glisan, under government-requested and court-ordered immunity,"[20] defendants appear to argue that the number of witnesses who received some type of consideration from the government in exchange for their testimony rendered their trial fundamentally unfair.

_____

[20]Id. at p. 2.

-14-

(a)   Immunized Testimony of Ben Glisan

Citing <u>United States v. Westerdahl</u>, 945 F.2d 1083 (9th Cir. 1991), defendants argue that "the government's refusal to immunize any of the[ir] seven witnesses, after having elicited inculpatory testimony from cooperators and immunized witnesses, has 'distorted the fact-finding process.'"[21]   In <u>Westerdahl</u> the government called as witnesses one person who testified pursuant to a plea agreement and two people who testified after being immunized by the government.   The government refused to immunize a proposed defense witness who would contradict testimony elicited by the government, and the district court refused to immunize the witness. Acknowledging that a defendant is not entitled to compel the government to immunize a witness, the Ninth Circuit held that an exception exists "where the fact-finding process is intentionally distorted by prosecutorial misconduct and the defendant is thereby denied a fair trial." <u>Westerdahl</u>, 945 F.2d at 1086 (citing <u>United States v. Lord</u>, 711 F.2d 887, 892 (9th Cir. 1983)).   The court concluded that the defendant was entitled to an evidentiary hearing because he satisfied a two-prong test requiring him to "show that the evidence sought from the non-immunized witness was relevant and that the government distorted the judicial fact-finding process by denying immunity to the potential witness." <u>Id.</u>   The court explained that

---

[21]<u>Id.</u> at p. 10.

the government's case relied heavily on circumstantial evidence provided by the testimony of two witnesses who had been granted use immunity by the government, and one witness who testified as part of the plea bargain in which a host of felony charges pending against him were dropped.  The use of this testimony, while effectively denying Westerdahl the right to contradict it with Goldsberry's testimony, may have distorted the fact-finding process, and an evidentiary hearing should have been held to determine whether the denial of use immunity for Goldsberry denied Westerdahl his due process rights.

Previously, we noted in dicta that where two eyewitnesses tell conflicting stories, and only the witness testifying for the government is granted immunity, the defendant would be denied "any semblance of a fair trial." . . . [citation omitted]  The same situation is effectively presented here.  Tuck's testimony directly conflicts with the testimony Goldsberry would have provided.  For the government to grant immunity to a witness in order to obtain his testimony, while denying immunity to a defense witness whose testimony would directly contradict that of the government witness, is the type of fact-finding distortion we intended to prevent in <u>Lord</u>.

<u>Id.</u> at 1087.

The Fifth Circuit rejected this argument in <u>Chagra</u>, 669 F.2d

at 259.  During trial in <u>Chagra</u>

a government witness implicated John Quintoni, an associate of appellant's, in appellant's drug operations.  Appellant subsequently questioned Quintoni out of the jury's presence regarding his knowledge of or participation in drug trafficking.  Quintoni exercised his fifth amendment privilege against self-incrimination with respect to every question asked by appellant's counsel and refused to answer any of appellant's questions.  Appellant's counsel then asked the district court to offer Quintoni use immunity under 18 U.S.C. § 6002 et seq. so that Quintoni could testify without fear of incrimination.  The district court denied this request and the appellant claims that the district court's refusal to grant Quintoni use immunity or to order the government to do so violated his right to a fair trial.

<u>Id.</u> at 258.  Citing <u>Thevis</u>, 665 F.2d at 638-640, the Fifth Circuit

held that "any due process right to defense witness immunity cannot

-16-

turn on whether the government proves its case against the defendant through the testimony of immunized witnesses." Id. at 259. The court explained that

> [w]e rejected this basis in Thevis because the proffered defense testimony related to an issue which the government had established entirely through the use of non-immunized witnesses and because there was no evidence of governmental misconduct. . . . Nevertheless, we believe the balance between the government's interest in prosecuting accused felons and the accused's interest in presenting exculpatory and otherwise unobtainable evidence should not be inflexibly resolved by the fortuity that the government grants immunity to a particular witness in a particular case. If the government's prosecutorial interest outweighs a defendant's interest in presenting such evidence, as in Thevis, then the government's interest also outweighs any abstract concern with symmetry.

Id. (citing Turkish, 623 F.2d at 774-775). The court also noted that the "[a]ppellant has not, and could not, argue that defense witness immunity is one of those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and thus qualifies as a right guaranteed to a defendant under that theory." Id. at n.27 (quoting United States v. Lovasco, 97 S.Ct. 2044, 2049 (1977), and citing Turkish, 623 F.2d at 774 & n.2).

In Chagra, 669 F.2d at 258-259, the Fifth Circuit rejected the defendant's argument that after having elicited inculpatory testimony for immunized witnesses, the government's refusal to immunize the defendant's proposed witnesses violated the defendant's right to a fair trial. The court is therefore not persuaded that, absent evidence of prosecutorial abuse or

misconduct, the government's refusal to immunize any of the defendants' proposed witnesses has rendered the defendants' trial fundamentally unfair.

        (b)  Number of Witnesses

    Asserting that "[d]uring trial, the government called more than twenty witnesses, including several high-ranking former Enron executives and two former Arthur Andersen accountants[, and that] . . . the bulk of the Task Force's 'percipient witnesses' — testified pursuant to plea or cooperation agreements,"[22] defendants argue that the government or the court should level the playing field by agreeing to immunize their proposed witnesses.  Defendants argue that the government's

> selective use of its immunity power has set up a false 'Skilling against the world' construct.  During Mr. Skilling's cross-examination, the Task Force sought to ridicule Mr. Skilling that his recollection of events differed from so many other witnesses. . . It is not Mr. Skilling's word against the world.  Whalley, Pai, McMahon, Dietrich, Hodges, Buy and Duncan (and Hirko) would testify consistently with Mr. Skilling and inconsistently with certain statements made by the government's cooperators.[23]

In Garcia Abrego, 141 F.3d at 142, the Fifth Circuit rejected a similar argument, i.e., that the defendant was entitled to remedial action "based merely upon the number of witnesses that received inducements from the government in exchange for their testimony." Garcia Abrego, 141 F.3d at 152.

---

[22] Id. at pp. 1-2.

[23] Id. at p. 10.

> Like the defendants in this case, Garcia Abrego argued
>
> that the government's extensive use of incentives such as
> motions for downward departure pursuant to § 5K1.1 of the
> Sentencing Guidelines, Rule 35 reductions in sentence,
> immigration permits, cash payments, and grants of
> immunity from prosecution to motivate many government
> witnesses to testify denied him his constitutional right
> to due process.

141 F.3d at 151.  Garcia Abrego argued that "due process,'
fundamental fairness and an accused's meaningful right to some
parity in the compulsory process of witnesses will [not] tolerate
a system that permits only one side of the adversary process to
utilize . . . non-reciprocal incentives to entice witnesses." Id.
at 152.  Observing that Garcia Abrego's argument boiled down "to a
contention that the sheer number of witnesses who received some
sort of consideration from the government in exchange for their
testimony rendered his trial fundamentally unfair," Garcia Abrego,
141 F.3d at 152, and citing Thevis, 665 F.2d at 639, the court
rejected Garcia Abrego's argument.  The court explained that in
such situations a defendant's right to a fair trial is protected by
procedural safeguards:

> [t]he government must not use or encourage the use of
> perjured testimony; the government must completely and
> timely disclose the . . . [inducement] to the accused in
> accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct.
> 1194, 10 L.Ed.2d 215 (1963); the accused must be given an
> adequate opportunity to cross-examine the informant and
> the government agents about any agreement to compensate
> the witness; and the trial court should give a special
> jury instruction pointing out the suspect credibility of
> paid [or otherwise induced] witnesses.

Id. (quoting <u>United States v. Bermea</u>, 30 F.3d 1539, 1552 (5th Cir. 1994), <u>cert. denied sub nom</u> <u>Rodriquez v. United States</u>, 115 S.Ct. 1113 (1995), and <u>Garza v. United States</u>, 115 S.Ct. 1825 (1995)). <u>See also</u> <u>United States v. Cervantes-Pacheco</u>, 826 F.2d 310, 315 (5th Cir. 1987), <u>cert. denied</u>, 108 S.Ct. 749 (1988).  Finding no logical basis for departing from the principle articulated in <u>Bermea</u> and <u>Cervantes-Pacheco</u> that "it is up to the jury to evaluate the credibility of a compensated witness," the Fifth Circuit rejected Garcia Abrego's argument that the government's reliance on induced testimony denied him a fundamentally fair trial.   For these reasons the court rejects any argument that the defendants have made or are attempting to make based on the number of witnesses who received incentives from the government to testify against them.

   3.   <u>Threatening Reprisal</u>

   Defendants assert that "[f]earing Task Force reprisal and possible indictment, none [of their potential witnesses] will testify voluntarily."[24]  By making this assertion defendants appear to argue that the court should grant the motion to immunize their proposed witnesses because the government has engaged in prosecutorial misconduct by affirmatively inducing or coercing the proposed witness[es] to invoke their Fifth Amendment right not to testify.  The court rejects this argument because the defendants have failed to present any evidence showing either that the

---

[24]<u>Id.</u> at p. 3.

government coerced their proposed witnesses to assert their Fifth Amendment right not to testify, or that the witnesses' assertions of privilege are not prompted by reasonable apprehension of prosecution.[25]   The primary reason a person asserts a Fifth Amendment privilege is because the person is guilty of criminal conduct and wants to avoid incriminating himself by testifying. Given the number of people who have pleaded guilty and have been found guilty for perpetrating Enron-related crimes and the large number of alleged co-conspirators, there is a reasonable likelihood that the proposed witnesses have asserted their Fifth Amendment privilege for this reason, and not because of fear of government reprisals if they testified.

## III.  Conclusions

For the reasons explained above the court concludes that defendants have failed to present any evidence showing that the government has used its immunity privilege to unfairly skew the facts presented to the jury, thereby breaching the defendants' rights to due process.   Accordingly, the Defendants' Motion

---

[25]On December 1, 2005, the court conducted an evidentiary hearing to evaluate defendants' contention that their inability to interview potential witnesses was caused by prosecutorial misconduct.  Following the hearing the court concluded that the defendants failed to show by a preponderance of the evidence that the government substantially interfered with their ability to interview potential witnesses.  See Hearing Minutes, Docket Entry No. 556, and January 9, 2006, Memorandum Opinion and Order, Docket Entry No. 628.

Requesting Court-Ordered Defense Witness Immunity (Docket Entry No. 953) was **denied** on May 8, 2006.

**SIGNED** at Houston, Texas, on this the 23rd day of June, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE