STIPULATED FORFEITURE AND RESTITUTION SETTLEMENT AGREEMENT

As a result of his conviction on Counts 1, 2, 14, 16-20, 22-26, 31-32, 34-36 of the Superseding Indictment, Jeffrey K. Skilling ("JKS") is subject to criminal forfeiture of the proceeds of the offenses of conviction. Recognizing the numerous outstanding legal and factual issues relating to forfeiture and restitution, the parties agree to the following Settlement Agreement between JKS and Department of Justice ("DOJ") (the "Parties"):

1. There is currently pending a DOJ motion for forfeiture and money judgment ("forfeiture motion"). JKS has opposed the forfeiture motion on various grounds.

2. There is currently a post-indictment restraining order against the following JKS assets ("JKS restraining order"):

   a. Real property known as 10 North Briarwood Court, Houston, Texas;

   b. Real property known as 1999 McKinney Ave., #1008, Dallas Texas;

   c. MML Acct. #251518;

   d. Schwab Acct. #8110-6673; and

   e. Southwest Acct. #3229351.

3. There is currently an order restraining Rebecca Carter's WF Acct. #19950821 in USA v. Contents of Wells Fargo Account #W19950821, No. H-04-0628 (Judge Lynn N. Hughes).

4. There is currently on deposit with the Court a cashier's check obtained by JKS in the amount of $5 million to secure a JKS appearance bond ("$5 million bond check").

5. JKS is currently obligated to pay his counsel O'Melveny & Myers ("OMM") not less than $12.7 million for unreimbursed costs and over $20 million for unpaid fees for JKS's criminal defense ("OMM obligation").

6. Immediately upon entry of a court order in USA v. Skilling approving this Settlement Agreement ("Court Order"), the JKS restraining order will be vacated to the extent necessary to permit the release of $15.5 million to OMM in accordance with paragraph 11.a. of this agreement. All necessary notices and/or other process will be given to banks and entities served with such restraining orders to facilitate the immediate release and disposition of all assets to be released in accordance with this agreement.

7. Immediately upon entry of the Court Order, and conditioned upon the execution of the waiver described in paragraph 18 of this Agreement by Rebecca Carter, the United States will move to dismiss its complaint in USA v. Contents of Wells Fargo Account #W19950821, No. H-04-0628, attaching a copy of this Settlement Agreement, and seek to have any restraints on that account removed.

Ex. A

1

8.  Upon entry of the Court Order, all funds in JKS MML Acct. #251518 and Southwest Acct. #3229351 will remain subject to restraint pending resolution of the ancillary proceedings pursuant to 21 USC § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure. Thereafter, the funds will be held by the United States until such time, if at all, the funds are paid as restitution under the terms of this Settlement Agreement to the SEC Distribution Fund that is being overseen and supervised by Judge Melinda Harmon under the case caption <u>United States Securities and Exchange Commission v. J.P. Morgan Chase</u>, H-03-2877, further described in paragraphs 11-15 below ("SEC Distribution Fund"). All payments and deposits referenced below directed to the SEC Distribution Fund shall be paid and deposited to that fund's `Liquidity Fund' under the case number H-03-2877.

9.  Upon entry of the Court Order, the real property located at 1999 McKinney Ave., #1008, Dallas, Texas will be sold and all proceeds, net of taxes and selling expenses, will be held by the United States pending resolution of any ancillary proceedings. Thereafter, the funds shall be held by the United States until such time, if at all, the funds are paid as restitution to the SEC Distribution Fund under the terms of this Settlement Agreement. The Parties will agree to mutually acceptable terms for the prompt sale of this property. Should the parties be unable to agree to the terms of the sale, they will submit their respective proposals to the Court for resolution.

10. Upon entry of the Court Order, the real property located at 10 North Briarwood Court, Houston, Texas will be sold and all proceeds, net of taxes and selling expenses (including gift taxes), will be paid 50% ratably to JKS's three children, Kristin, Jeffrey Jr., and JT. The remaining 50% will be held by the United States pending resolution of any ancillary proceedings. Thereafter, the funds shall be held by the United States until such time, if at all, the funds are paid as restitution to the SEC Distribution Fund under the terms of this Settlement Agreement. The Parties will agree to mutually acceptable terms for the prompt sale of this property. Should the parties be unable to agree to the terms of the sale, they will submit their respective proposals to the Court for resolution.

11. Immediately upon entry of the Court Order, the assets in the JKS Schwab Acct. #8110-6673 will be liquidated and the assets will be distributed as follows:

   a.  First, $15.5 million will be paid to OMM in partial satisfaction of the OMM obligation.

   b.  Second, such amounts necessary to pay any fines, penalties, and fees ordered by the Court as part of JKS's sentence and judgment will be paid to USA. JKS specifically reserves the right to contend that fines, penalties, and fees are not warranted in view of JKS's agreement to pay restitution and apply assets covered by this stipulated forfeiture order in satisfaction of such restitution.

   c.  Third, the balance of the forfeited funds will remain subject to restraint pending resolution of any ancillary proceedings. Thereafter, the funds shall be held by the United States until such time, if at all, the funds are paid as restitution to the SEC Distribution Fund under the terms of this Settlement Agreement.

12. If and when JKS is taken into custody to serve any sentence imposed, thereby voiding the JKS appearance bond, the JKS $5 million bond check (or the proceeds therefrom) will be held by the United States until such time, if at all, the funds are paid as restitution to the SEC Distribution Fund under the terms of this Settlement Agreement; JKS hereby authorizes such transfer and endorses said check to be so deposited. The office of the Clerk of the Court is further authorized to effect any necessary endorsements to allow for negotiation of said check. If JKS is ordered to surrender to serve a sentence imposed, but fails to surrender as ordered, thereby causing forfeiture of the JKS appearance bond, or for any other reason that results in the forfeiture of the JKS appearance bond, OMM will pay the sum of $5 million to the SEC Distribution Fund; OMM hereby agrees to do so by its signature below.

13. As part of JKS's sentence and any judgment entered against him, the USA will seek an order that JKS pay restitution to Enron victims. JKS contends that restitution is not available or appropriate for various reasons. As part of this settlement, JKS and USA agree that the Court may enter a restitution order in an amount equal to the monies, assets, and proceeds forfeited and to be applied to the SEC Distribution Fund in satisfaction of the restitution order pursuant to paragraphs 8 through 12 above. This is without prejudice to USA's right to seek a restitution order in a greater amount and JKS's right to contest restitution in such greater amount.

14. All monies and other assets forfeited by JKS hereunder and the JKS $5 million bond check will be held by the United States and will not be paid to the SEC Distribution Fund and distributed unless and until the judgment in USA v. Skilling has been affirmed in full after JKS has exhausted his right of direct appeal from judgment and any ensuing petition for certiorari to the Supreme Court.

15. During the time the United States holds monies and other assets forfeited by JKS and the JKS $5 million bond check, the Parties agree as follows:

    a. The forfeited monies and other assets held by the United States will bear and accrue interest and/or dividends.

    b. If the judgment against JKS is affirmed in full after JKS has exhausted his right of direct appeal from judgment and any ensuing petition for certiorari to the Supreme Court, all monies and other assets forfeited by JKS and the JKS $5 million bond check will be available for distribution to the beneficiaries of the SEC Distribution Fund as approved by Judge Harmon.

    c. If the judgment is reversed in whole or part, JKS reserves the right to seek to have the forfeiture order vacated in whole or in part and contend that any or all monies, assets, and accumulated interest and dividends should be released to JKS as not representing proceeds of criminal activity. If the judgment is reversed in whole or part, the USA reserves the right to make any and all claims for forfeiture and restitution of the monies, assets, and accumulated interest and dividends. If the judgment is reversed in whole or in part and JKS is released from custody, or JKS is released from custody for any other reason, the United States will re-deposit with the Court the $5 million bond check (or the proceeds therefrom) to secure a JKS appearance bond and otherwise determine the

3

disposition of the check or proceeds. JKS and USA reserve their respective rights with respect thereto.

16. No part of the $15.5 million to be paid to OMM as part of this settlement will be transferred or otherwise given to JKS, any member of his family, or other third party except for payment of bills to third parties in connection with OMM's representation of JKS. OMM represents that it will make no claim to the funds and assets covered by this agreement in the forfeiture ancillary proceeding and SEC Distribution Fund.

17. Following entry of the Court Order, USA will not initiate or take any other action to restrain, delay, or impede the release, transfer, or disposition of assets or funds specified in this agreement or other terms of this Settlement Agreement. It is also agreed that there shall be no liens or other restraints on funds to be transferred under this Agreement pursuant to 18 USC § 3664 (m)(1)(B) (or any statute of comparable effect).

18. In connection with the forfeiture of the funds and assets covered by this Settlement Agreement, JKS agrees to hold the United States, its agents and employees harmless from claims of conflicting ownership in or encumbrances on the property to be forfeited. Defendant's wife, Rebecca Carter, by signing below, also agrees to waive her right, title, and interest in the property forfeited under this Settlement Agreement, and will make no claim to the funds and assets covered by this agreement in the forfeiture ancillary proceeding and SEC Distribution Fund. The execution of this waiver is a condition of this Settlement Agreement.

19. JKS agrees to take all steps necessary to transfer clear title to the Government, including the execution of general warranty deeds necessary to effect any such transfer. Defendant further agrees to testify truthfully in any judicial forfeiture proceeding necessary to effectuate the purposes of this Settlement Agreement. Defendant agrees not to seek a refund from the United States Treasury of the amount of any taxes paid in connection with the receipt of any of the funds to be forfeited and applied to the SEC Distribution Fund.

20. The Court, having reviewed the extensive briefing by the parties on this issue, is aware of the factual and legal issues involved and finds that the foregoing settlement is an appropriate and fair resolution of the forfeiture motion and the disposition of JKS's frozen assets and $5 million bond check.

21.  This settlement agreement shall become effective immediately upon entry of the Court Order.

_____          _____
Jeffrey K. Skilling                                           Department of Justice

_____
O'Melveny & Myers LLP

_____
Rebecca Carter
CC1:751100.1

5