IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA          §
                                  §
v.                                §          CRIMINAL NUMBER H-04-025-02
                                  §
JEFFREY K. SKILLING               §

## <u>MEMORANDUM OPINION AND ORDER</u>

In paragraphs 157-160 and 177, the PSR recommends that Skilling receive a two-level enhancement for obstruction of justice pursuant to Guideline Section 3C1.1 based, <u>inter alia</u>, on allegedly perjurious testimony given before the Securities and Exchange Commission (SEC) on December 6, 2001.  Guideline Section 3C1.1 provides that

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S. Sentencing Guidelines Manual § 3C1.1 (2000).  The Commentary to this section lists "committing . . . perjury" as an example of conduct capable of triggering the enhancement.  U.S. Sentencing Guidelines Manual § 3C1.3, cmt. n.4(b)(2000).  Perjury for purposes of obstruction of justice is defined as giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or

faulty memory." <u>United States v. Dunnigan</u>, 113 S. Ct. 1111, 1116 (1993), <u>abrogated on other grounds by</u> <u>United States v. Wells</u>, 117 S. Ct. 921 (1997).

Skilling objects to an enhancement for the obstruction of justice on grounds that his SEC testimony was not false, material, or willful.  The Fifth Circuit has stated that the preferred procedure for applying the two level obstruction of justice enhancement is to make a clear finding on each element of the alleged perjury.  <u>See</u> <u>United States v. Como</u>, 53 F.3d 87, 89 (5th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 714 (1996).  Factual determinations at sentencing are made according to the preponderance of the evidence standard.  <u>See</u> U.S. Sentencing Guidelines Manual § 6A1.3 (2000); <u>United States v. Mergerson</u>, 4 F.3d 337, 343 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1310 (1994) (holding that it is well established in this circuit that as a general matter the burden of proof at sentencing is by a preponderance of the evidence).

### I.   <u>Skilling's Testimony Before the SEC Was False</u>

Paragraph 158 of the PSR states that

[o]n December 6, 2001, Skilling voluntarily appeared for a deposition before the Securities and Exchange Commission and was asked under oath if he had sold or had planned to sell any stock after he resigned as CEO. He informed the SEC of the September 1[7], 2001 sale and told the SEC that his sole motivation for that sale was the effect of the events of September 11, 2001 on the stock market.  Skilling stated, "[A]nd then September 11th happened.  And then I got scared.  I

like my Enron stock but I was scared after
September 11. So, when the markets reopened that next
Monday, I sold 500,000 additional shares at $30 a
share." When asked again if there was another reason,
Skilling reiterated, "there was no other reason other
than September 11th that I sold the stock . . . Oh, I
agonized over it, absolutely agonized over it."[1]
(emphasis added)

The court finds that Skilling's testimony before the SEC that
he sold Enron stock on September 17, 2001, for "no other reason
other than [the events of] September 11th" was false because "Glenn
Ray, Skilling's broker at Schwab, testified at trial that Skilling
had attempted to sell 200,000 shares on September 6, 2001.
However, due to a paperwork glitch, the sale fell through."
(PSR ¶ 160) The falsity of Skilling's SEC testimony is also
demonstrated by Skilling's testimony at trial where, on direct
examination during the defense case, Skilling stated that he
attempted to sell stock on September 6, 2001, to create a "bull
hedge" for a short position in AES stock,[2] that after the attempted
sale fell through he contacted Enron attorney Rex Rogers and

---

[1]See Transcript of December 6, 2001, SEC Hearing, p. 462,
Exhibit D included in Exhibits to Defendant Jeffrey Skilling's
Motion in Limini to Exclude Task Force Exhibit 1901 and Any Other
Testimony or Evidence Obtained from Him During the Security and
Exchange Commission's Investigation in the Matter of Enron Corp.,
Docket Entry No. 566 (filed under seal).

[2]See Jeffrey K. Skilling's Sentencing Memorandum, p. 30
(citing Trial Tr. at 12,958:18-12,961:21, and asserting that "[t]he
undisputed evidence establishes that Mr. Skilling's September 6
broker call was not part of any 'plan' to liquidate his Enron
position, but was an attempt to create a 'bull hedge' (a common way
to spread risk throughout one's portfolio).").

requested a letter notifying his broker that he was no longer an Enron officer required to publicly disclose his stock sales,[3] that Rogers mailed the letter on September 10, 2001,[4] and that Skilling placed a $30 per share restriction on his September 17th order of sale.[5]   Accepting Skilling's trial testimony as true, the court concludes that his trial testimony shows that his SEC testimony was false because his trial testimony shows that Skilling had reasons other than the events of September 11th to sell Enron stock on September 17th, that prior to September 11th Skilling took affirmative action to enable the sale Enron of stock, and that Skilling's decision to sell Enron stock on September 17th was not unconditional but, instead, conditioned upon his ability to sell for a specific minimum price.   Accordingly, using a preponderance of the evidence standard, and based upon the evidence adduced at trial, including Skilling's testimony, the court finds that Skilling's sworn testimony to the SEC that his sale of Enron stock on September 17, 2001, was effected for no reason other than concern generated by the events of September 11, 2001, was false.

## II.   Skilling's SEC Testimony was Material

The Commentary to § 3C1.1 defines a material statement as a statement that, "if believed, would tend to influence or affect the

---

[3]See Trial Tr. at 12,955-12,957.

[4]Id.

[5]Id. at 12,952-12,953.

issue under determination." U.S. Sentencing Guidelines Manual
§ 3C1.3, cmt. n.6 (2000). Skilling argues that his SEC testimony
about the September 17, 2001, stock sale was not material because
the jury could well have believed that he had no plan to sell Enron
stock before September 11, 2001, yet still convicted him of insider
trading, and because whether he had a plan to sell or tried to sell
before September 11, 2001, has no bearing on whether he sold stock
on the basis of material non-public information as required to be
convicted of insider trading. See United States v. O'Hagan,
117 S. Ct. 2199, 2207 (1997). This argument is not persuasive,
however, because Skilling also testified before the SEC that he
made the September 17, 2001, sale for "no other reason other than
[the events of] September 11th." If that testimony were believed
Skilling should not have been indicted or convicted of insider
trading. The court finds that Skilling's SEC testimony was
material to the insider trading count for which he was convicted
and will be sentenced.

### III.  Skilling's SEC Testimony was Willful

Willful obstruction of justice by a defendant is "conscious,
deliberate, voluntary, and intentional." United States v. Greer,
158 F.3d 228, 239 (5th Cir. 1998), cert. denied, 119 S. Ct. (1999).
Although the Fifth Circuit has not explicitly held that a defendant
must have the specific intent that his actions or statements
obstruct justice, the Fifth Circuit has indicated that it defines

-5-

"willful" in accordance with the Second Circuit's opinion in United States v. Reed, 49 F.3d 895, 901 (2d Cir. 1995). See Greer, 158 F.3d at 239 (citing United States v. O'Callaghan, 106 F.3d 1221, 1223 n.5 (5th Cir. 1997) ("Reed holds that a § 3C1.1 enhancement 'implies a mens rea requirement,' 'is appropriate only if the defendant had the specific intent to obstruct justice, i.e., . . . the defendant consciously acted with the purpose of obstructing justice,' and requires the district court to 'make a specific finding of intent.")). When a defendant gives false testimony due only to confusion, mistake, or a bad memory, he has not obstructed justice. See Dunnigan, 113 S. Ct. at 1116.

Citing United States v. Adam, 296 F.3d 327, 334-335 (5th Cir. 2002), and United States v. Upton, 91 F.3d 677, 688 (5th Cir. 1996), cert. denied sub nom. Barrick v. United States, 117 S. Ct. 1818 (1997), Skilling argues that this SEC testimony could not support a § 3C1.1 adjustment because his testimony before the SEC was given before he knew of the existence of an investigation against him. Although Skilling acknowledges that prior to testifying before the SEC he received a letter stating that "the SEC was investigating possible fraudulent activities at Enron and that the Commission could disclose to criminal authorities any information it learned,"[6] Skilling argues that while he "obviously knew that an investigation into the collapse at Enron was underway,

---

[6]Jeffrey K. Skilling's Sentencing Memorandum, p. 29.

the SEC explicitly told him he was not a 'target' or 'subject' of

the investigation."[7]   Skilling argues that before giving his SEC

testimony his attorney asked the SEC attorney

> "whether it remains true today what you in essence said
> in the cover letter . . . that this is a fact-finding
> inquiry with no targets or subjects."  The SEC attorney
> responded: "Yes, this is a fact finding inquiry.  And,
> from the point of view of the [SEC], we don't have any
> target subjects.  And we have not yet made a decision
> one way or the other about what, if anything, we might
> do with Mr. Skilling."[8]

Skilling's argument that the SEC attorney's response to his

attorney's question means that the false testimony he gave before

the SEC cannot support a sentencing enhancement for obstruction of

justice is wrong under precedent established in the Fifth Circuit

as well as in other Circuit Courts of Appeals.

In <u>Adam</u> the Fifth Circuit stated that

> the enhancement for obstruction of justice "is proper
> any time the defendant is aware of the action or
> investigation against him and he conceals or attempts
> to conceal information material to the investigation,
> prosecution, or sentencing of the instant offense.

296 F.3d at 334-335 (quoting <u>United States v. Upton</u>, 91 F.3d 677,

688 (5th Cir. 1996), <u>cert. denied sub nom. Barrick v.</u>

<u>United States</u>, 117 S. Ct. 1818 (1997)).  The § 3C1.1 analysis

applied in <u>Adam</u> and in <u>Upton</u> is based on the Fifth Circuit's

holding in <u>United States v. Lister</u>, 53 F.3d 66, 71 (5th Cir. 1995),

---

[7]<u>Id.</u>

[8]<u>Id.</u> at pp. 29-30 (citing Jan. 31, 2003 SEC Trial Tr. at
13:13-22 (filed with Objections as Ex. 8).

that "the term 'willfully' should be reserved for the more serious case, where misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway."  The Fifth Circuit based its holding in <u>Lister</u> on its findings that

> the obstruction of justice enhancement involves both a temporal requirement and an awareness requirement —requirements that reflect the notion that once government action has been initiated, and an individual is aware of such action, we expect and encourage that individual to cooperate and to comply with the authorities, and that cooperation and compliance includes the cessation of any conduct that facilitates the successful completion of a crime.

<u>Id.</u>

Because it is undisputed that Skilling knew when he testified before the SEC that the SEC was investigating possible fraudulent activities at Enron, that the SEC would disclose to criminal authorities any information learned, and that no decision "one way or the other about what, if anything . . . might . . . [be done] with [him],"[9] the court concludes that both the temporal and the awareness requirements for application of the § 3C1.1 enhancement have been satisfied with regard to Skilling's SEC testimony. Skilling's SEC testimony occurred after an official, governmental investigation was underway into the fraudulent acts at Enron for which he was later convicted, and after Skilling had been informed that no decision "one way or the other" had been made about what if

---

[9]<u>Id.</u>

anything might be done with him.  Based on these undisputed facts, the court concludes that when Skilling testified before the SEC he actually knew, and was not mistaken or confused, that an investigation against him was underway.  See Lister, 53 F.3d at 71. Despite Skilling's attempts to separate his SEC testimony from the insider trading count for which he was found guilty, it is clear that his testimony before the SEC that he sold 500,000 shares of Enron stock on September 17, 2001, for "no other reason other than [the events of] September 11th," was intended to deflect the investigators' attention away from him and his September 17, 2001, stock sale.  Accordingly, the court concludes that a nexus exists between Skilling's SEC testimony and the insider trading count based on the September 17, 2001, sale of Enron stock for which the jury found him guilty.

The application of the § 3C1.1 enhancement for the obstruction of justice arising from testimony that Skilling gave before the SEC is analogous to cases in which other courts have upheld the application of an obstruction of justice enhancement based on a defendant's perjurious testimony before the SEC.  See United States v. Poirier, 321 F.3d 1024, 1035-1036 (11th Cir.), cert. denied sub nom. deVegter v. United States, 124 S. Ct. 227 (2003) (district court's failure to apply obstruction enhancement to defendants who had provided false testimony to the SEC in an effort to conceal their conduct found to be "clearly erroneous" and

-9-

to require correction on remand); <u>United States v. Bennett</u>, 252 F.3d 559, 566 (2d Cir. 2001), <u>cert. denied</u>, 252 F.3d 559 (2001) (obstruction adjustment allowed for obstruction of only an SEC investigation because "the enhancement applies to efforts to obstruct an 'official investigation' · · · which includes investigations that occur prior to indictment"); <u>United States v. Zaqari</u>, 111 F.3d 307, 328-329 (2d Cir. 1997), <u>cert. denied sub nom. Herzog v. United States</u>, 118 S.C. 445 (1997) (perjury in a civil regulatory suit held to support a § 3C1.1 adjustment in a criminal action where "the connection between the two cases is quite close" and the perjury was material to the criminal case); <u>United States v. Self</u>, 132 F.3d 1039, 1043 (4th Cir. 1997) ("[I]n the initial stages of a criminal investigation, it may be anything but clear whether the conduct being investigated violates state law, federal law, or both. Accordingly, the appropriate focus of inquiry is not whether federal officials had begun involvement with the investigation, but whether the investigation was for the instant offense.'")).

## IV.   <u>Conclusions</u>

Using a preponderance of the evidence standard, and based upon the evidence at trial, including Skilling's testimony, the court finds that Skilling's sworn testimony to the SEC that his sale of Enron stock on September 17, 2001, was effected for no reason other than concern generated by the events of September 11,

2001, constituted (1) false testimony, (2) given under oath, (3) concerning a matter material to the insider trading count based on his September 17, 2001, sale of Enron stock for which the jury found him guilty, (4) with the willful intent to provide false testimony rather than as a result of confusion, mistake, or faulty memory.   The court finds that Skilling's SEC testimony regarding his sale of Enron stock on September 17, 2001, was given willfully to obstruct or impede, or attempt to obstruct or impede, the administration of justice during the investigation of events that resulted in his conviction for insider trading in this case.

Skilling's objection to the obstruction of justice enhancement is therefore **DENIED**.

**SIGNED** at Houston, Texas, on this 23rd day of October, 2006.

SIM LAKE
UNITED STATES DISTRICT JUDGE