IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA       §
                               §
v.                             §       CRIMINAL NUMBER H-04-025-02
                               §
JEFFREY K. SKILLING            §


## MEMORANDUM OPINION AND ORDER

On October 10, 2006, Jeffrey K. Skilling filed a Motion for Bail Pending Appeal (Docket Entry No. 1120).  After carefully considering the motion, the United State's response in opposition (Docket Entry No. 1128), and Skilling's reply (Docket Entry No. 1131), the court concludes that Skilling's motion for bond pending appeal should be denied.


## I.  Background

On May 25, 2006, a jury found Skilling guilty of nineteen counts charged in the Second Superseding Indictment (SSI): conspiracy to commit securities and wire fraud (count 1), Raptors-related securities fraud (count 2), securities fraud involving financial statements filed with the SEC on March 30, 2000 (count 14), August 14, 2000 (count 16), November 14, 2000 (count 17), April 2, 2001 (count 18), May 15, 2001 (count 19), and August 14, 2001 (count 20)), securities fraud involving presentations made to securities analysts and rating agency representatives on January 22, 2001 (count 22), January 25, 2001 (count 23), March 23,

2001 (count 24), April 17, 2001 (count 25), and July 12, 2001 (count 26), false statements made to auditors in annual representation letters related to Enron's 1999 Form 10-K on March 13, 2000 (count 31), and Enron's 2000 Form 10-K on February 23, 2001 (count 32), false statements made to auditors in quarterly representation letters related to Enron's Form 10-Q for the second quarter of 2000 on August 11, 2000 (count 34), for the third quarter of 2000 on November 13, 2000 (count 35), and for the first quarter of 2001 on May 15, 2001 (count 36), and insider trading for the sale of 500,000 shares of Enron stock on September 17, 2001 (count 51).

## II.  **Standard of Review**

"A convicted defendant has no constitutional right to bail." United States v. Olis, 450 F.3d 583, 585 (5th Cir. 2006) (citing United States v. Williams, 822 F.2d 512, 517 (5th Cir. 1987)). "[A]ny putative right to bail derives from 18 U.S.C. § 3143, which 'establishes a presumption against' its being granted." Id. Title 18 U.S.C. § 3143(b) allows release pending appeal only if the defendant can show by clear and convincing evidence that (1) the defendant is not likely to flee or pose a danger to the community, (2) the appeal is not for purposes of delay, (3) the appeal raises a substantial question of law or fact, and (4) the substantial question, if decided favorably to the defendant, is

> likely to result in – (i) a reversal, (ii) an order for
> a new trial, (iii) a sentence that does not include a
> term of imprisonment, or (iv) a reduced sentence to a
> term of imprisonment less than the total of the time
> already served plus the expected duration of the appeal
> process.

18 U.S.C. § 3143(b)(1)(B).   Although the court concludes that Skilling is not likely to flee or pose a danger to the community and that his appeal is not for purposes of delay, the court concludes that Skilling has not satisfied the third and fourth requirements for release pending appeal.

In United States v. Valera-Elizondo, 761 F.2d 1020 (5th Cir. 1985), the Fifth Circuit squarely addressed the correct interpretation of "raises a substantial question of law or fact likely to result in reversal or an order for a new trial."  See 18 U.S.C. § 3143(b)(2).  Focusing upon what "substantial question" means, the Fifth Circuit adopted the interpretation of § 3143(b)(2) announced by the Third Circuit in United States v. Miller, 753 F.2d 19 (3d Cir. 1985), subject to its own additional observations and those made by the Eleventh Circuit in United States v. Giancola, 754 F.2d 898 (11th Cir. 1985).  Valera-Elizondo, 761 F.2d at 1025. The Fifth Circuit agreed with the Miller court that

> the proper interpretation of section 3143(b)(2) requires
> the making of two determinations by the court.  First,
> the court must determine that the question raised on
> appeal is substantial, that is to say a question that is
> either novel, which has not been decided by controlling
> precedent, or which is fairly doubtful.  Secondly, the
> court must determine whether that issue is sufficiently
> important to the merits that a contrary appellate ruling
> is likely to require reversal or a new trial.

<u>Valera-Elizondo</u>, 761 F.2d at 1023 (citing <u>Miller</u>, 753 F.2d at 23). The Fifth Circuit also agreed with the <u>Giancola</u> court's observation "that 'substantial question' means that the issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution." <u>Id.</u> Finally, the Fifth Circuit held that "likely" as used in § 3143(b)(2) should be assigned "its ordinary meaning of 'more likely than not,'" <u>id.</u>, and explained that the statutory requirement that the defendant demonstrate that the substantial question, if determined favorably for him on appeal, would likely result in a reversal or an order for a new trial means "reversal or an order for new trial on all counts on which imprisonment has been imposed." <u>Id.</u> (citing <u>Giancola</u>, 754 F.2d at 901, and <u>Miller</u>, 753 F.2d at 24). <u>See also</u> <u>Morison v. United States</u>, 108 S.Ct. 1837 (1988)(Rehnquist, Circuit Justice) (denying bond application for appeal to Supreme Court because petitioner had "not shown that his appeal is 'likely to result in reversal' with respect to all the counts for which imprisonment was imposed"); <u>United States v. Bilanzich</u>, 771 F.2d 292, 298 & n.6 (7th Cir. 1985) (quoting <u>United States v. Powell</u>, 761 F.2d 1227, 1233 (8th Cir. 1985) ("The substantial question must be one that would result in reversal or a new trial on all counts for which the defendant has been sentenced to prison. Otherwise, 'the reason for allowing bail on appeal, that a defendant should not be imprisoned under a legally erroneous sentence, disappears.'")).

-4-

### III.  <u>Analysis</u>

Skilling asserts that four appellate arguments raise substantial questions likely to result in the reversal of his convictions: (1) the impact of the Fifth Circuit's recent decision in <u>United States v. Brown</u>, 459 F.3d 509 (5th Cir. 2006), <u>petition for rehearing and for rehearing en banc denied</u>, No. 05-20319 (5th Cir. October 18, 2006); (2) the deliberate ignorance instruction; (3) jury bias; and (4) discovery and witness access issues.  Having carefully reviewed all of Skilling's arguments and the controlling authorities on which he relies, for the reasons stated by the United States in its response to Skilling's motion for bail pending appeal (Docket Entry No. 1128), the court is not persuaded that Skilling's deliberate ignorance, jury bias, or discovery and witness access arguments raise substantial questions likely to result in a reversal or an order for new trial on any of his convictions.  The court is persuaded, however, that the Fifth Circuit's recent decision in <u>Brown</u>, 459 F.3d at 509, raises a substantial question of law within the meaning of § 3143(b) that is likely to result in a reversal or an order for a new trial on Skilling's conviction for conspiracy charged in Count One.  Because <u>Brown</u> was decided after Skilling's trial ended, and because Skilling argues that the application of <u>Brown</u> to facts of this case raises a substantial question likely to result in reversal or an order for new trial on each of his convictions, the court discusses each of Skilling's <u>Brown</u>-based arguments.

A.   **United States v. Brown**

In <u>Brown</u> the Fifth Circuit reviewed conspiracy and wire fraud convictions returned against defendants who participated in Enron's Nigerian barge transaction.   The Nigerian barge transaction involved an agreement between executives at Enron and at Merrill Lynch to engage in a bogus sale of an interest in power-generating barges moored off the Nigerian coast.   Andrew Fastow gave Merrill Lynch executives an oral guarantee that Enron would take Merrill Lynch out of the deal in six months and that Merrill Lynch would not lose money.   The deal allowed Enron to book $12 million in earnings for the fourth quarter of 1999.   The defendants were each charged with one count of conspiracy (18 U.S.C. § 371) and two counts of wire fraud (18 U.S.C. §§ 1343 and 1346).   The indictment alleged two objects of the conspiracy:  (1) the commission of wire fraud and (2) the commission of securities fraud by falsifying Enron's books and records.   The alleged conspiracy to commit wire fraud and the substantive wire fraud counts were all based on two theories of wire fraud:  (1) a scheme to deprive Enron of money or property; and (2) a scheme to deprive Enron of its intangible right to the defendants' "honest services."

On appeal the defendants argued that "honest services" wire fraud does not extend to the type of conduct with which they were charged, and the Fifth Circuit agreed.   After reviewing the history of the wire fraud statute and prior case law, the Fifth Circuit

held that "honest services" fraud did not apply to the Nigerian barge transaction because

> where an employer intentionally aligns the interest of the employee with a specified corporate goal, where the employee perceives his pursuit of that goal as mutually benefitting him and his employer, and where the employee's conduct is consistent with that perception of the mutual interest, such conduct is beyond the reach of the honest-services theory of fraud . . .

Brown, 459 F.3d at 522.  In other words, the Brown court held that an employee deprives his employer of "honest services" when the employee seeks to promote his own self-interest instead of his employer's interest.  Because the barge transaction was intended to benefit Enron and not to secretly enrich the defendants at Enron's expense, the court held that it was outside the boundaries of 18 U.S.C. § 1346 even if it was dishonest, fraudulent, or wrongful. Skilling argues that

> [i]n the aftermath of Brown, there is no doubt that the 'honest services' issues in this case pose a 'substantial question' for appellate review . . . [and that] resolution of that question in Skilling's favor is . . . likely to result in reversal, thereby satisfying the requirements for a grant of bail pending appeal.[1]

## B.   Conspiracy Conviction (Count One)

Skilling argues that

> [f]irst and foremost, the conspiracy count (Count One) is certain to be reversed on appeal, as it is virtually identical to the conspiracy count reversed by Brown.  As in Brown, the indictment alleged three possible objects

---

[1]Defendant Jeffrey Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1120, p. 32.

underlying the conspiracy:  "honest services wire fraud,
"money or property" wire fraud, or securities fraud.  The
Court's jury instructions allowed the jury to convict on
any one of these three theories.

Citing  Yates v. United States, 77 S.Ct. 1064 (1957), overruled on

other grounds by Burks v. United States, 98 S.Ct. 2141 (1978),

Skilling argues that

because a general verdict form was used . . . all three
theories to prove the conspiracy must be legally
defensible for the conviction to stand on appeal. . .
Because the "honest services" theory was plainly
erroneous under Brown, the Count One conviction cannot
stand.[2]

In Yates the Supreme Court considered a general verdict of

guilt on a Smith Act conspiracy with two objects:  (1) advocating

the overthrow of the United States government and (2) organizing a

society of persons to so advocate.  The Court ruled that because

the Smith Act's prohibition against organization referred only to

the creation of the Communist Party, an event that occurred outside

the applicable statute of limitations, the conspiracy conviction

could not rest on that objective.  Id. at 1067-1073.  Rejecting the

government's argument that the conviction could be affirmed on the

advocacy objective, the Court held that a general verdict must be

set aside where it "is supportable on one ground, but not on

another, and it is impossible to tell which ground the jury

selected."  Id. at 1073.  In Griffin v. United States, 112 S.Ct.

466 (1991), however, the Court clarified that Yates's broad

---

[2]Id. at p. 33 (citing Brown, 459 F.3d at 523).

pronouncement applies only when there is legal error in one of the bases for conviction. The Court explained that "legal error" means "a mistake about the law," not "a mistake concerning the weight or the factual import of the evidence." <u>Id.</u> at 474. Thus, where the error in a verdict is factual, as where one basis for conviction is unsupported by sufficient evidence, a guilty verdict "'stands if the evidence is sufficient with respect to any one of the acts charged.'" <u>Id.</u> at 473 (quoting <u>Turner v. United States</u>, 90 S.Ct. 642, 654 (1970)).

The United States argues that <u>Brown</u> does not require a reversal of Skilling's conspiracy conviction because the two cases are factually distinct.[3]  As in <u>Brown</u>, the court instructed the jury in this case that it could convict Skilling of conspiracy by finding that he conspired, <u>inter alia</u>, to deprive Enron of its intangible right to honest services. Likewise, the jury returned only a general verdict making it impossible to tell on which of the various objects of the conspiracy the jury based Skilling's conviction. The court is persuaded therefore that application of <u>Brown</u> to Skilling's conspiracy conviction raises a substantial question that if resolved in his favor is likely to result in a reversal or an order for a new trial. See <u>United States v. Pettigrew</u>, 77 F.3d 1500, & n.2 (5th Cir. 1996) (distinguishing between general verdicts that rest on legally inadequate grounds

---

[3]United States' Response to Jeffrey K. Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1128, pp. 14-15.

that require reversal, and those that rest on factually inadequate grounds that do not require reversal).

**C.  Securities Fraud Convictions (Counts 2, 14, 16-20, and 22-26)**

Skilling argues that his convictions for substantive securities fraud offenses charged in Counts 2, 14, 16-20, and 22-26, are likely to be reversed on appeal because

> [f]or those counts, the jury was again permitted to convict on one of two different theories.  First, it could have found Skilling guilty by his own conduct, if it concluded that he personally committed securities fraud.  Or, because the Court gave a Pinkerton instruction, it could have found Skilling vicariously liable because of the conduct of a coconspirator. . . Again, given the general verdict, we do not know which theory the jury actually convicted on.  However, because Brown invalidates the conspiracy conviction, it also "precludes the imposition of vicarious liability upon [Skilling] for the acts of [his] alleged co-conspirators." Thus, with the Pinkerton theory foreclosed as legally invalid, the rule in Yates compels the reversal of Counts 2, 14, 16-20, and 22-26.[4]

The United States responds that

> [e]ven if Brown required reversal of Skilling's conviction on the conspiracy count, it does not require reversal of all his remaining convictions.  Unlike the defendants in Brown, Skilling was not convicted of any substantive mail or wire fraud counts that relied on the honest services provision, and Brown therefore does not directly apply to any of the substantive counts.[5]

---

[4]Defendant Jeffrey Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1120, pp. 33-34 (citing Yates, 77 S.Ct. at 1064, Brown, 459 F.3d at 518, and United States v. Kaiser, 660 F.2d 724, 732 (9th Cir. 1981) ("[b]ecause we cannot now be certain that the jury did not rely upon the vicarious liability theory, we must reverse")).

[5]United States' Response to Jeffrey K. Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1128, p. 15.

Citing <u>United States v. Olano</u>, 62 F.3d 1180, 1199 (9th Cir. 1995), <u>cert. denied</u>, 117 S.Ct. 303 (1996), the United States argues that Skilling is wrong in asserting that the court's <u>Pinkerton</u> instruction casts doubt on the validity of the substantive counts referenced in the instruction because "[s]ubstantial evidence at trial showed that Skilling affirmatively participated in the fraudulent acts that formed the basis for the securities fraud counts; thus, his convictions on those counts rested on his own conduct and not solely on the <u>Pinkerton</u> instruction."[6]  The court agrees.

The jury was instructed that Counts 2, 14, 16-20, and 22-26 charged Skilling, and only Skilling, with securities fraud.  The jury was instructed that in order to find Skilling guilty on any of these counts

> you must find that the government has proved the following elements beyond a reasonable doubt.
>
> <u>First</u>:  that the defendant knowingly did any one or more of the following . . .
>
> <u>Second</u>:  that the defendant did so in connection with the purchase or sale of the securities of Enron Corporation;
>
> <u>Third</u>:  that the defendant acted willfully and with the intent to defraud; and
>
> <u>Fourth</u>:  that the defendant used or caused to be used, any means or instruments of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange, in furtherance of the fraudulent conduct.[7]

───────────────

[6]<u>Id.</u> at pp. 15-16.

[7]Jury Instructions, Docket Entry No. 960, pp. 28-29.

Because the Brown court held that the honest services theory of wire fraud does not extend to the circumstances at issue in that case, and because the substantive charges at issue in Brown were charges for wire fraud that were based, inter alia, on the honest services theory, the Brown court reversed not only the defendants' convictions for conspiracy, but also their convictions for the substantive wire fraud offenses.  459 F.3d at 517 ("Because we hold that the honest-services theory of wire fraud does not extend to the circumstances as contended by the Government, we vacate the conspiracy and wire-fraud convictions.").  Because Counts 2, 14, 16-20, and 22-26 charge Skilling with securities fraud, and because deprivation of honest services was never offered as a basis for conviction on these or any other securities fraud counts, the Brown holding does not by itself raise a substantial question likely to require reversal or an order for new trial on Skilling's convictions for these counts.  Nor is the court persuaded that the inclusion of these securities fraud counts in its Pinkerton instruction raises a substantial question likely to result in reversal or an order for a new trial.

The court's Pinkerton instruction informed the jury that if it found a defendant guilty of the conspiracy charged in Count One and if it found

> beyond a reasonable doubt that during the time the defendant was a member of that conspiracy, other conspirators committed the [securities fraud] offenses [charged] in Counts 2 and 14, 16-20, and 22-29 in

furtherance of or as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Counts 2 and 14, 16-20, and 22-29, even though the defendant may not have participated in any of the acts which constitute the offenses described in those Counts of the Indictment.[8]

See Pinkerton v. United States, 66 S.Ct. 1180, 1184 (1946).  See also United States v. Thomas, 348 F.3d 78, 84-85 (5th Cir. 2003), cert. denied, 124 S.Ct. 1481 (2004).  While it is axiomatic that a defendant who is acquitted of conspiracy, or whose conspiracy conviction is reversed on appeal, cannot be held vicariously liable for substantive offenses committed by an alleged co-conspirator, see United States v. Rosas-Fuentes, 970 F.2d 1379, 1383 (5th Cir. 1992), Skilling has failed either to argue or to cite any evidence showing that his convictions for the offenses charged in Counts 2, 14, 16-20, and 22-26 were based on the conduct of an alleged co-conspirator as allowed by the court's Pinkerton instruction instead of on his own conduct.  Consequently, the court is not persuaded that Skilling has made a showing that the general verdicts on these counts of conviction must be set aside because they rest on two grounds, one that is legally supportable and one that is not, "and it is impossible to tell which ground the jury selected."  Yates, 77 S.Ct. at 1073.

Because Skilling has failed to cite any evidence from which the court could conclude that the jury convicted him of any

---

[8]Id. at pp. 20-21.

substantive offense based on the United States' deprivation of honest services theory, or that his convictions for the securities fraud offenses charged in Counts 2, 14, 16-20, and 22-26 were based not on his own conduct but, instead, on the conduct of a co-conspirator, the court is not persuaded that application of the Fifth Circuit's holding in <u>Brown</u> or the Supreme Court's holding in <u>Yates</u> to these convictions is capable of raising a substantial question that if resolved in his favor is likely to result in a reversal or an order for a new trial on any of these counts of conviction. <u>See</u> <u>Yates</u>, 77 S.Ct. at 1073 (requiring reversal only where it is impossible to tell on which of two conflicting grounds the jury based its decision to convict). <u>Accord</u> <u>Olano</u>, 62 F.3d at 1199 (stating that when faced with a <u>Pinkerton</u> instruction precluded by an erroneous conspiracy charge, a conviction can nevertheless be affirmed if the court finds beyond a reasonable doubt that the jury convicted the defendant based on his own conduct and not on the conduct of an alleged co-conspirator). <u>See also</u> <u>United States v. Castaneda-Cantu</u>, 20 F.3d 1325, 1335 (5th Cir. 1994) (recognizing that a <u>Pinkerton</u> charge can be superfluous).

**D.   False Statement Convictions (Counts 31-32, 34-36)**

Skilling argues that the false statements to auditors convictions in Counts 31-32 and 34-36 are also likely to be reversed because

> although the Court's <u>Pinkerton</u> instruction did not apply
> to these counts, the Court gave a related instruction on
> aiding and abetting . . . Given the close similarities
> between this instruction and the <u>Pinkerton</u> instruction,
> and given that the broad conspiracy allegation was the
> over-arching factual foundation of the Task Force's case,
> there is a strong likelihood that the invalid conspiracy
> count had a prejudicial spillover effect on Counts 31-32
> and 34-36.[9]

Skilling cites no authority for this argument.

As noted in <u>United States v. Bullock</u>, 451 F.2d 884 (5th Cir.
1971), the aiding and abetting statute, 18 U.S.C. § 2,

> is an alternative charge in every count, whether explicit
> or implicit, and the rule is well-established, both in
> this circuit and others, that one who has been indicted
> as a principal may be convicted on evidence showing that
> he merely aided and abetted the commission of the
> offense.

<u>Id.</u> at 888.  <u>See also</u> <u>United States v. Walker</u>, 621 F.2d 163, 166-
167 (5th Cir. 1980), <u>cert. denied</u>, 101 S.Ct. 1707 (1981).
Moreover, in <u>Nye & Nissen v. United States</u>, 69 S.Ct. 766 (1949),
the Supreme Court held that aiding and abetting had a broader
application than the rule announced in <u>Pinkerton</u>, 66 S.Ct. at 1180.
In <u>Nye and Nissan</u> Justice Douglas found that although there was not
enough evidence to convict the defendant of the substantive counts,
there was circumstantial evidence wholly adequate to support the
jury's finding that the defendant aided and abetted in the
commission of the offenses:

---

[9]Defendant Jeffrey Skilling's Motion for Bail Pending Appeal,
Docket Entry No. 1120, p. 34.

>We see therefore no reason to exculpate him as an aider and abettor.  There was no inadequacy in the charge to the jury on that theory.  Nor was the submission in conflict with <u>Pinkerton</u> . . . The rule of that case does service where the conspiracy was one to commit offenses of the character described in the substantive counts.  Aiding and abetting has a broader application.  It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy.  And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy.  <u>Pinkerton</u> . . . is narrow in its scope.  Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts which one assists another in performing.  The fact that a particular case might conceivably be submitted to the jury on either theory is irrelevant.  It is sufficient if the proof adduced and the basis on which it was submitted were sufficient to support the verdict.

69 S.Ct. at 770.  For these reasons the court is not persuaded that Skilling's argument that the "close similarities" between the aiding and abetting and the <u>Pinkerton</u> instructions[10] raises a substantial question likely to result in a reversal or an order for a new trial on these counts.

**E.   Insider Trading Conviction (Count 51)**

Asserting that the conspiracy charged in Count One was the inside information on which Skilling allegedly traded the 500,000 shares of Enron stock on September 17, 2001, Skilling argues that "the insider trading conviction in Count 51 is also infirm in light

---

[10]Reply in Support of Defendant Jeffrey Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1131, p. 22.

of <u>Brown</u>."[11]   Asserting that the United States made this explicit by telling the jury in closing argument "you can conclude, based on the evidence of the conspiracy that's been presented to you, at key periods in time whether Mr. Skilling had information that he used to sell his stock,"[12] Skilling argues that "the failure of Count One also undermines the jury's conviction on Count 51."[13]   Because Skilling does not argue that the jury was improperly instructed on the insider trading counts, and because <u>Yates</u> requires a general verdict to be set aside only where it "is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected," 77 S.Ct. at 1073, the court is not persuaded that the United States' reference to the conspiracy in closing argument raises a substantial question likely to result in a reversal or an order for new trial on his conviction for insider trading charged in Count 51.   Even assuming without deciding that the United States' reference to the conspiracy in closing argument presented the jury an impermissible basis for convicting Skilling of insider trading charged in Count 51, in light of the jury's decision to convict Skilling for securities fraud charged in Counts 2, 14, 16-20, and 22-26 and for making false statements to auditors

---

[11]Defendant Jeffrey Skilling's Motion for Bail Pending Appeal, Docket Entry No. 1120, p. 35.

[12]<u>Id.</u> at p. 36 (quoting Trial Tr. 18,253:9-15).

[13]<u>Id.</u>

charged in Counts 31-32 and 34-36, the court is not persuaded that the jury could possibly have based its decision to convict him on Count 51 solely on the United States' reference to the infirm conspiracy in its closing argument.

## IV.   Conclusions and Order

For the reasons explained above, the court concludes that Skilling has failed to satisfy the statutory requirements for release pending appeal. Accordingly, Jeffrey K. Skilling's Motion for Bail Pending Appeal (Docket Entry No. 1120) is **DENIED.**

**SIGNED** at Houston, Texas, on this 23rd day of October, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE